**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | |
|---|---|
| **In re:** | : |
| | :    **Chapter 11** |
| **FAIRPOINT COMMUNICATIONS, INC.,** *et al.*, | : |
| | :    **Case No. 09-16335 (BRL)** |
|     **Debtors.** | : |
| | :    **(Joint Administration Requested)** |
| | : |

------------------------------------------------------------ x

## INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING DEBTORS TO USE PREPETITION COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (IV) SCHEDULING FINAL HEARING

Upon the motion, dated October 26, 2009 (the "Motion"), of FairPoint Communications,

Inc. ("FairPoint Communications") and its affiliated debtors, each as debtor and debtor-in-

possession (collectively, the "Debtors" or "FairPoint") in the above-captioned cases (the

"Cases") for interim and final orders under sections 105, 361, 362, 363, 364(c)(1), 364(c)(2),

364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

(as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the local bankruptcy rules for

the Southern District of New York (the "Local Bankruptcy Rules"), seeking:

(a) authorization (i) for FairPoint Communications and FairPoint Logistics, Inc.

(together with FairPoint Communications, the "Borrowers") to obtain up to $75,000,000 in

principal amount of postpetition financing, with a subfacility for the issuance of letters of credit

in the amount of $30,000,000 (collectively, the "DIP Financing"), all on the terms and conditions

set forth in this Interim Order and the Debtor-in-Possession Credit Agreement, dated as of

October 27, 2009 (substantially in the form attached to this Interim Order as <u>Exhibit A</u>, and as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "<u>DIP Agreement</u>"; together with all agreements, documents, instruments and/or amendments delivered in connection therewith, including the Budget annexed hereto as <u>Exhibit B</u>, the "<u>DIP Documents</u>"), among the Borrowers, Bank of America, N.A. ("<u>BofA</u>"), as administrative agent (in such capacity, the "<u>DIP Agent</u>") for itself and a syndicate of other financial institutions (together with the DIP Agent and the issuing bank for the letters of credit, the "<u>DIP Lenders</u>"), (ii) for each of the debtors in these Cases identified as guarantors on Schedule 1 hereto (collectively, the "<u>Guarantors</u>"; the Guarantors and the Borrowers shall be referred to herein collectively as the "<u>DIP Credit Parties</u>") to guarantee the Borrowers' obligations in respect of the DIP Financing, and (iii) for each of the debtors in these Cases identified as pledgors on Schedule 2 hereto (collectively, the "<u>Pledgors</u>") to pledge certain equity interests as collateral security for the DIP Credit Parties' obligations in respect of the DIP Financing;

(b)     authorization for the DIP Credit Parties and the Pledgors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c) authorization for the Debtors to (i) use the Prepetition Collateral (as defined in paragraph 3(d) below) pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, and (ii) provide adequate protection to the lenders (collectively, the "<u>Prepetition Secured Lenders</u>" and, together with the Prepetition Administrative Agent (as defined below), any Letter of Credit Issuer, and any Lender, or its Affiliate (as defined in the Prepetition Credit Agreement) that are owed Obligations under any

Credit Document or any Hedging Agreement (as each such term is defined in the Prepetition Credit Agreement) (the "Prepetition Secured Parties") pursuant to the Credit Agreement, dated as of March 31, 2008 (as heretofore amended, restated, modified or supplemented from time to time, the "Prepetition Credit Agreement"; together with all other documentation executed and delivered in connection with any of the foregoing, the "Prepetition Loan Documents"), among FairPoint Communications, as the borrower, FairPoint Broadband, Inc., MJD Ventures, Inc., MJD Services Corp., S T Enterprises, Ltd., FairPoint Carrier Services Inc., and FairPoint Logistics, Inc., as guarantors, BofA, as administrative agent (in such capacity, the "Prepetition Administrative Agent") Morgan Stanley Senior Funding, Inc., as syndication agent, the Prepetition Secured Lenders, and Deutsche Bank Securities Inc., as co-documentation agents, Banc of America Securities LLC and Morgan Stanley Senior Funding, Inc., as joint lead arranger, and Banc of America Securities LLC, Morgan Stanley Senior Funding, Inc., Deutsche Bank Securities Inc. and Wachovia Capital Markets, LLC, as joint book running managers; and

(d)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") (i) authorizing the Borrowers, on an interim basis, to borrow and obtain letters of credit under this Interim Order and the DIP Agreement up to $20,000,000, (ii) authorizing the Debtors to use the Prepetition Collateral and (iii) granting adequate protection to the Prepetition Secured Parties; and

(e)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") on the Motion to be held before this Court to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, the transactions described in the foregoing clauses (a) through (d) pursuant to the Final Order;

The Interim Hearing having been held by the Court on October 27, 2009 to consider the relief sought in the Motion, and upon the record of the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1. *Petition Date/Disposition/Jurisdiction.* On October 26, 2009 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York. The Cases are currently jointly administered. The Motion is granted in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c) and (d) and the Local Bankruptcy Rules.

2. *Notice.* Notice of the Motion, the relief requested therein and the relief sought at the Interim Hearing was served by the Debtors by either electronic mail, facsimile or overnight mail to: (a) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn: Andrew D. Velez-Rivera; (b) the creditors holding the five largest secured claims against FairPoint's estates (on a consolidated basis); (c) the creditors holding the 50 largest unsecured claims against FairPoint's estates (on a consolidated basis); (d) Kaye Scholer LLP, 425 Park Avenue, New York NY 10022, Attn: Margot B. Schonholtz, Esq. and Mark F. Liscio, Esq., attorneys to Bank of America, N.A. as administrative agent for

FairPoint's prepetition secured lenders; (e) U.S. Bank National Association, 60 Livingston Avenue, EP-MN-WS3C, St. Paul, MN 55107, Attn: Rick Prokosch, indenture trustee for FairPoint's senior noteholders; (f) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Kristopher M. Hansen, Esq., attorneys to the *ad hoc* committee of FairPoint's senior noteholders; (g) the United States Attorney for the Southern District of New York, 86 Chambers Street, New York, NY 10007, Attn: Preet Bharara, Esq.; (h) the Internal Revenue Service, 290 Broadway, New York, NY 10007, Attn: District And Regional Directors; (i) the Securities and Exchange Commission, 233 Broadway, New York, NY 10279 (j) the Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554; and (k) Cohen, Weiss and Simon LLP, 330 West 42nd Street, 25th Floor, New York, NY. 10036-6976, attorneys to the International Brotherhood of Electrical Workers, AFL-CIO, CLC and the Communications Workers of America, Attn: Bruce H. Simon. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof, complies with Bankruptcy Rules 4001(c) and (d) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 18 below) the Debtors admit, stipulate, and agree that:

(a)      as of the Petition Date, FairPoint Communications and the debtors that are Guarantors (as defined in the Prepetition Loan Documents; together with FairPoint Communications as the borrower under the Prepetition Credit Agreement, the "Prepetition Credit Parties") were justly and lawfully indebted and liable, without defense,

counterclaim or offset of any kind, to (i) LCPI (as defined in the Prepetition Credit Agreement) in the aggregate principal amount of approximately $29,695,000, (ii) the RF Lenders (as defined in the Prepetition Credit Agreement) in an aggregate principal amount of approximately $120,305,000, (iii) the A Term Lenders (as defined in the Prepetition Credit Agreement) in an aggregate principal amount of approximately $491,575,000, (iv) the Initial B Term Lenders and the Delayed-Draw B Term Lenders (as such terms are defined in the Prepetition Credit Agreement) in an aggregate principal amount of approximately $1,323,875,000, (v) the Letter of Credit Issuer in an aggregate principal amount of approximately $17,893,000, in each case in respect of loans made, letters of credit issued or other financial accommodations made by the Prepetition Secured Parties pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, and (iv) holders of Interest Rate Obligations under Secured Interest Rate Agreements (as each such term is defined in the Prepetition Pledge Agreement (as defined below)) in amounts yet to be determined, plus, in each case, accrued and unpaid interest thereon and costs and expenses including, without limitation, attorneys' fees, agent's fees, other professional fees and disbursements and other obligations owing under the Prepetition Loan Documents (collectively, the "Prepetition Indebtedness");

(b)     the Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Prepetition Credit Parties, enforceable in accordance with its terms, and no portion of the Prepetition Indebtedness or any payments made to the Prepetition Secured Lenders or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as defined in

the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(c)        each Debtor hereby forever waives and releases any and all Claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Secured Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law; and

(d)        pursuant to a certain (i) Pledge Agreement dated as of March 31, 2008 (as heretofore amended, restated, modified or supplemented from time to time, the "<u>Prepetition Pledge Agreement</u>"), (ii) Subsidiary Guaranty dated as of March 31, 2008, (iii) Deposit Agreement dated as of March 31, 2008, (iv) Intercompany Subordination Agreement dated as of March 31, 2008, (v) Amendment, Waiver, Resignation and Appointment Agreement dated as of January 21, 2009, and (vi) Acknowledgment and Ratification Agreement dated as of January 21, 2009 (in each case as heretofore amended, restated, modified, ratified or supplemented from time to time, together with any and all other security agreements, pledge agreements, mortgages, fixture filings, transmitting utility filings, deeds of trust, financing statements, assignments or other security documents, the "<u>Prepetition Collateral Documents</u>"), (I) the Prepetition Credit Parties and the Pledgors have granted valid, binding, perfected, enforceable, first priority liens upon and security interests in the property described in the Prepetition Collateral Documents (collectively, the "<u>Prepetition Collateral</u>") to the Prepetition Administrative Agent for the benefit of the Prepetition Secured Parties, and (II) the Prepetition Administrative Agent's

first priority liens upon and security interests in the Prepetition Collateral, for the benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

4. *Findings Regarding the DIP Financing*.

(a) Good cause has been shown for the entry of this Interim Order.

(b) The DIP Credit Parties have an immediate need to obtain the DIP Financing and to use the Prepetition Collateral in order to, among other things, preserve the value of the DIP Credit Parties' businesses, permit the orderly continuation of their businesses and for the other purposes set forth in the DIP Documents. The DIP Credit Parties' use of the proceeds of the DIP Financing and the DIP Credit Parties' and the Pledgors' use of the Prepetition Collateral is necessary to ensure that the DIP Credit Parties' and the Pledgors' have sufficient working capital and liquidity to preserve and maintain the value of their estates.

(c) The DIP Credit Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The DIP Credit Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the DIP Credit Parties and the Pledgors granting the DIP Liens (as defined in paragraph 7 below) and the Superpriority Claims (as defined in paragraph 6

below) under the terms and conditions set forth in this Interim Order and the DIP Documents.

(d)     The terms of the DIP Documents and the use of the Prepetition Collateral pursuant to this Interim Order and the DIP Agreement are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Prepetition Collateral have been the subject of extensive negotiations conducted in good faith and at arms'-length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Administrative Agent, and all of the DIP Credit Parties' and the Pledgors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all loans made to, guaranties issued by and letters of credit issued for the account of, the DIP Credit Parties pursuant to the DIP Agreement and (ii) all other "Obligations" of the DIP Credit Parties under the DIP Documents, this Interim Order or in respect of overdrafts and related liabilities arising from treasury, depository and cash management services, or in connection with any automated clearing house transfers of funds, owing to the DIP Agent or any DIP Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent, the DIP Lenders and their respective affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  The DIP Credit Parties' may experience a significant reduction of the number of customers or vendors willing to do business with them due to a perceived lack of adequate liquidity, thereby significantly reducing the value of the DIP Credit Parties' estates. Consummation of the DIP Financing and the use of the Prepetition Collateral in accordance with this Interim Order and the DIP Documents are in the best interest of the Debtors' estates.

5.     *Authorization of the DIP Financing and the DIP Documents*.

(a)     The DIP Credit Parties and the Pledgors are hereby authorized to enter into the DIP Documents and, in the case of (A) the Borrowers, to borrow thereunder up to an aggregate principal amount of $20,000,000, of which up to $20,000,000 may be used for letters of credit (plus interest, fees and other expenses provided for in the DIP Documents), pending entry of the Final Order, all in accordance with the terms of this Interim Order, the DIP Agreement and the other DIP Documents, and (B) the Guarantors, to guaranty such borrowing, the obligations with respect to any letters of credit and all other DIP Obligations.

(b)     In furtherance of the foregoing and without further approval of this Court, each DIP Credit Party and each Pledgor is authorized and directed to perform all acts and to execute and deliver all instruments and documents and to pay all fees and expenses that the DIP Agent determines to be reasonably required or necessary for the DIP Credit Parties' and the Pledgors' performance of their obligations under the DIP Documents, including without limitation:

(i)        the execution, delivery and performance of the DIP Documents;

(ii)       the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the DIP Credit Parties, the Pledgors, the DIP Agent and the requisite DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications (A) shorten the Maturity Date (as defined in the DIP Agreement) on terms and conditions other than those set forth in the DIP Agreement, (B) increase the Commitments (as defined in the DIP Agreement) or the rate of interest payable on the loans, or (C) change any Event of Default (as defined in the DIP Agreement), add any covenants or amend the covenants therein in any such case to be materially more restrictive; provided, further, that copies of any amendments, waivers, consents or other modifications to or under the DIP Documents shall be provided by the Debtors to counsel to the Committee (as defined in paragraph 6(b) below);

(iii)      the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Documents (including, without limitation the Letter Agreement among the DIP Agent, Banc of America Securities LLC and FairPoint Communications dated October 25, 2009 (the "Engagement Letter")) and the DIP Documents and costs and expenses as may be due from time to time under the DIP Documents (including, without limitation, the Engagement Letter), all as provided in the DIP Documents and all of which constitute DIP Obligations; and

(iv)      the performance of all other acts required under or in connection with the DIP Documents.

(c)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the DIP Credit Parties and the Pledgors, enforceable against the DIP Credit Parties and the Pledgors in accordance with the terms of this Interim Order and the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(d)     The Debtors and the DIP Lenders have agreed upon a form of budget (the "Budget"), annexed hereto Exhibit B, projecting cash flow for thirteen weeks (the "Budget Period").  On a monthly basis, the Debtors will provide to the DIP Lenders an updated Budget for the Budget Period in substantially the same format as the previous budget.

6.     *Superpriority Claims.*

(a)     Except to the extent expressly set forth in this Interim Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against each of the DIP Credit Parties with priority over any and all administrative expenses, adequate protection claims and all other claims against each of the DIP Credit Parties, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and

507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Claims (as defined in paragraph 13(a) below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the DIP Credit Parties and all proceeds thereof, including, without limitation (subject to entry of the Final Order), all proceeds or other amounts received in respect of the DIP Credit Parties' claims and causes of action arising under state or federal law under sections 502(d), 541, 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code (collectively, the "Causes of Action"), and any proceeds or other amounts received in respect thereof and property received thereby whether by judgment, settlement or otherwise.

(b)     For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930 of title 28 of the United States Code; (ii) fees and disbursements incurred by a chapter 7 trustee (if any) not to exceed $75,000; and (iii) after the occurrence and during the continuance of an Event of Default under the DIP Documents, the payment of allowed professional fees and disbursements incurred by the Debtors or the official committee of unsecured creditors appointed in the Cases (the "Committee") in an aggregate amount incurred after the Event of Default not in excess of

$7,500,000 (plus all unpaid professional fees and expenses allowed by this Court that were incurred prior to the occurrence of such Event of Default) (regardless of when allowed by this Court)), <u>provided</u> that (w) no portion of the Carve Out shall be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation or any threatened litigation against the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, (x) cash or other amounts on deposit in the Letter of Credit Account (as defined in the DIP Agreement) shall not be subject to the Carve Out, (y) so long as an Event of Default shall not have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court and payable under Sections 328, 330 and 331 of the Bankruptcy Code, and (z) nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

7.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution by the DIP Credit Parties or the Pledgors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any Collateral (as defined in this paragraph 7), the following security interests and liens are hereby granted by the DIP Credit Parties and the Pledgors to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "<u>Collateral</u>"), subject only to the Carve Out (all such liens and security interests granted to the DIP Agent, for

its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "DIP Liens"):

(a)     First Lien On Unencumbered Property.     Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the DIP Credit Parties, whether existing on or as of the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, enforceable and unavoidable liens or are not subject to valid, enforceable and unavoidable liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing; provided, however, that such lien and security interest shall not include FCC licenses and PUC authorizations to the extent (but only to the extent) that any DIP Credit Party is prohibited from granting a lien and security interest therein pursuant to applicable law, but such lien and security interest shall include, to the maximum extent permitted by law, all rights incident or appurtenant to the FCC licenses and the PUC authorizations and the right to receive all proceeds derived from or in

connection with the sale, assignment or transfer of the FCC licenses and the PUC authorizations. Subject only to and effective upon entry of the Final Order, the Unencumbered Property shall include the proceeds of any Causes of Action and any property received or recovered thereby whether by judgment, settlement or otherwise.

(b) <u>Liens Junior To Certain Existing Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the DIP Credit Parties (other than the property described in clauses (a) and (c) of this paragraph 7, as to which the DIP Liens will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected, enforceable and unavoidable liens in existence immediately prior to the Petition Date or to valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders are immediately junior only to such valid, perfected and unavoidable liens.

(c) <u>Liens Priming Prepetition Secured Lenders' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Administrative Agent (for the benefit of itself and the Prepetition Secured Parties)

(including, without limitation, the Adequate Protection Liens (as defined in paragraph 13(b) below)), but shall not be senior to any valid, perfected, enforceable and unavoidable security interests in and liens of other parties, if any, on the Prepetition Collateral existing as of the Petition Date or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Administrative Agent (for the benefit of itself and the other Prepetition Secured Parties) become subject after the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(d)     <u>Liens Senior To Certain Other Liens</u>.  The DIP Liens and the Adequate Protection Liens shall not be, (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the DIP Credit Parties or the Pledgors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the DIP Credit Parties or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code or otherwise.

8.     *Protection of DIP Lenders' Rights*.  So long as there are any DIP Obligations or the DIP Lenders have any Commitment (as defined in the DIP Agreement), the Prepetition Administrative Agent and the other Prepetition Secured Parties shall take no action to foreclose upon or recover in connection with the liens granted pursuant to the Prepetition Loan Documents, this Interim Order or otherwise exercise remedies against any Collateral of the DIP Credit Parties or the Pledgors without the prior written consent of the DIP Agent.

9.     *Remedies after Event of Default.*  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise (i) immediately upon the occurrence of an Event of Default (as defined in the DIP Agreement), all rights and remedies under the DIP Documents, other than those rights and remedies against the Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and the giving of five business days' prior written notice to the Debtors (with a copy to counsel for the Committee and to the United States Trustee for the Southern District of New York), all rights and remedies against the Collateral provided for in the DIP Documents and this Interim Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender or any affiliate thereof).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any of the other the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Interim Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

10.    *Limitation on Charging Expenses Against Collateral*.    Subject to and effective upon entry of the Final Order, notwithstanding anything to the contrary contained herein, except to the extent of the Carve Out, (a) no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Administrative Agent, as the case may be, (b) no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or the other Prepetition Secured Parties and (c) nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or the other Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise.

11.    *Payments Free and Clear*.    Any and all payments or proceeds remitted (a) to the DIP Agent on behalf of the DIP Lenders or (b) without prejudice to the right of any other party (but subject to the limitations thereon described in paragraph 18 below), to the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties, in each case, pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

12.     *Use of Prepetition Collateral.*  The DIP Credit Parties and the Pledgors are hereby authorized to use the Prepetition Collateral during the period from the Petition Date through and including the Maturity Date under the DIP Agreement for the same purposes as set forth in and in accordance with the terms and conditions of this Interim Order and the DIP Documents, <u>provided</u> that, the Prepetition Secured Parties are granted adequate protection as hereinafter set forth.

13.     *Adequate Protection.*   The Prepetition Administrative Agent and the other Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral in an amount equal to the Collateral Diminution (as defined below).  As used in this Interim Order "<u>Collateral Diminution</u>" shall mean an amount equal to the diminution of the value of any of the Prepetition Collateral upon which any of the Prepetition Secured Parties have valid, perfected, enforceable and unavoidable liens or security interests from and after the Petition Date for any reason provided for in the Bankruptcy Code, including, without limitation, the priming of the Prepetition Administrative Agent's security interests in and liens on the Prepetition Collateral by the DIP Liens pursuant to the DIP Documents and this Interim Order, the depreciation, sale, loss or use of such Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, whether in accordance with the terms and conditions of this Interim Order, the DIP Agreement or otherwise.  As adequate protection for any Collateral Diminution, the Prepetition Administrative Agent and the Prepetition Secured Parties are hereby granted the following:

(a)     <u>Adequate Protection Claims</u>.  Allowed superpriority administrative claims as provided in section 507(b) of the Bankruptcy Code, with priority in payment

over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "<u>Adequate Protection Claims</u>"), which Adequate Protection Claims shall include any and all adequate protection claims granted to the Prepetition Secured Parties pursuant to this Interim Order and shall only have recourse to and only be payable from all prepetition and postpetition property of the DIP Credit Parties and the equity interests pledged by the Pledgors including, without limitation, the proceeds recovered in respect of Causes of Action.  The Adequate Protection Claims shall be subject and subordinate only to (i) the Carve Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Interim Order or the DIP Agreement, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash and the Commitments have been terminated.

(b)      <u>Adequate Protection Liens</u>.   As security for the payment of the amount of any Collateral Diminution, the Prepetition Administrative Agent (for itself and for the benefit of the Prepetition Secured Parties) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the DIP Credit Parties or the Pledgors of security agreements, pledge agreements, mortgages, financing statements or other agreements) (i) a valid, perfected replacement

security interest in and lien on all of the Prepetition Collateral and (ii) a valid, perfected security interest in and lien on all of the Collateral including, without limitation, the proceeds or property recovered in respect of Causes of Action (the "Adequate Protection Liens"), subject and subordinate only to (x) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, (y) the DIP Liens and (z) the Carve Out. The Adequate Protection Liens shall include all security interests and liens granted to the Prepetition Administrative Agent for the benefit of the Prepetition Secured Parties pursuant to this Interim Order.

(c)     Fees And Expenses.  As additional adequate protection, subject to section 506(b) of the Bankruptcy Code, the DIP Credit Parties shall pay in cash:  (i) the fees and all reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants) payable to or incurred by the Prepetition Administrative Agent under and pursuant to the Prepetition Credit Agreement arising prior to the Petition Date; and (ii) on a current basis, the fees and all reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) payable to or incurred by the Prepetition Administrative Agent under and pursuant to the Prepetition Credit Agreement arising subsequent to the Petition Date.  The payment of the fees, expenses and disbursements set forth in this paragraph 13(c) of this Interim Order (including professional fees and expenses of Kaye Scholer LLP, FTI Consulting, Inc. and any other professionals or advisors retained by or

on behalf of the Prepetition Administrative Agent) shall be made within twenty (20) business days after the receipt by the Debtors, the Committee and the United States Trustee (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors, the Committee and the United States Trustee shall preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors, the Committee or the United States Trustee files with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Administrative Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

(d)     Information.  The Debtors shall promptly provide to the Prepetition Administrative Agent copies of any written financial information, periodic reporting or other information that is provided to, or required to be provided to, the DIP Agent, the DIP Lenders or the Financial Advisor (as defined in the DIP Agreement).

14.     *Reservation of Rights of Prepetition Parties*.  Under the circumstances and given that the adequate protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant to this Interim Order is without prejudice to the right of the Prepetition Secured Parties to seek modification of the grant of adequate

protection provided hereby so as to provide different or additional adequate protection, provided, however, that any such additional or modified adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under this Interim Order and the DIP Documents.

15.     *Perfection of DIP Liens and Adequate Protection Liens*.  The DIP Agent and the Prepetition Administrative Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders, or the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.  The Prepetition Administrative Agent and Prepetition Secured Parties shall not file any such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the security interests and liens granted thereto hereunder, unless the DIP Agent on behalf of the DIP Lenders shall theretofore have done so.  The DIP Credit Parties and the Pledgors shall execute and deliver to the DIP Agent and the Prepetition Administrative Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Administrative Agent may reasonably request to more fully evidence, confirm,

validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date. Pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more parties, or requires the payment of any fees or obligations to any governmental entity, in order for the DIP Credit Parties or any Pledgor to pledge, grant, sell, or otherwise transfer any such interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting the DIP Agent for the benefit of the DIP Lenders a senior security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Borrowers or any Guarantor in favor of the DIP Agent for the benefit of the DIP Lender in accordance with the terms of the DIP Documents.

16.     *Preservation of Rights Granted Under the Order.*

(a)     No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order or the DIP Documents to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the other Prepetition Secured Parties, shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), the Commitments or the Adequate Protection Claims remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the DIP Credit Parties' and the Pledgors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations and the Adequate Protection Claims shall have been indefeasibly paid in full in cash, (i) the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement if any of the Debtors seeks, or if there is entered, any modification of this Interim Order without the prior written consent of the DIP Agent and the Prepetition Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Administrative Agent or (ii) it shall constitute an Event of Default under the DIP Agreement if any order is entered converting or dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, the Adequate Protection Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all Adequate Protection Claims shall have been indefeasibly paid in full in cash (and that such Superpriority Claims, Adequate Protection Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Claims incurred prior to the actual receipt of written notice by the DIP Agent or

the Prepetition Administrative Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations or any Adequate Protection Claims incurred by the DIP Credit Parties to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Administrative Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all DIP Obligations and all Adequate Protection Claims.

(d) Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Credit Parties and the Pledgors have waived any discharge as to any remaining DIP Obligations or

Adequate Protection Claims. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Adequate Protection Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, all Adequate Protection Claims and all Prepetition Indebtedness are indefeasibly paid in full in cash, and the Commitments have been terminated.

17. *Non-Debtor Guarantees.* Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantors, if any, to the Prepetition Secured Parties with respect to the Prepetition Indebtedness owed by the Prepetition Credit Parties to the Prepetition Secured Parties.

18. *Effect of Stipulations on Third Parties.* The Debtors' admissions, stipulations and releases contained in this Interim Order including, without limitation, paragraph 3 of this Interim Order: (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including any Committee, for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than a date that is 60 days (or such later date as has been agreed to by the Prepetition Administrative Agent in its sole discretion) after the appointment of the Committee, (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition

Indebtedness or the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly filed as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding: (a) the Debtors' admissions stipulations and releases contained in paragraph 3 of this Interim Order shall be binding on all parties in interest, including the Committee; (b) the obligations of the Prepetition Credit Parties under the Prepetition Loan Documents shall constitute allowed claims for all purposes in these Cases, and any subsequent Chapter 7 case(s); (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Indebtedness and the Prepetition Secured Parties' security interests in and liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' admissions, stipulations and releases contained in paragraph 3 of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Interim Order shall vest or confer any person (as defined in the Bankruptcy

Code), including the Committee, with standing or authority to pursue or commence any such adversary proceeding or contested matter.

19. *Limitation on Use of DIP Financing Proceeds and Collateral*.  The DIP Credit Parties shall use the proceeds of the DIP Financing solely as provided in this Interim Order and in the DIP Documents.  Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Agreement, Collateral, Prepetition Collateral or the Carve Out may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation against any of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any other Prepetition Secured Party or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any other Prepetition Secured Party or asserting any defense, claim, counterclaim, or offset with respect to the DIP Obligations or the Prepetition Indebtedness or the security interests in or liens on the Collateral or the Prepetition Collateral, (b) to prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Administrative Agent's assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Loan Documents, this Interim Order (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or the other Prepetition Secured Parties under this Interim Order or under the DIP Documents or the Prepetition Loan Documents, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $75,000 of

the Loans under the DIP Agreement, Collateral, Prepetition Collateral or the Carve Out may be used by the Committee to investigate the claims and liens of the Prepetition Secured Parties.

20.     *Exculpation.*  Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the DIP Credit Parties and the Pledgors.

21.     *Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

22.     *Retention of Jurisdiction.*  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

23.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Interim Order, as the case may be, including all findings herein, shall be binding upon all

parties in interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the other Prepetition Secured Parties, any Committee appointed in these cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent, the other Prepetition Secured Parties and the Debtors and their respective successors and assigns, provided that, the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

24. *Limitation of Liability*. The Debtors shall seek in the Final Order, in addition to the protections offered to the DIP Agent, the Prepetition Administrative Agent and the other Prepetition Secured Parties in this Interim Order, the following provision: "In determining to make any loan or other extension of credit under the DIP Agreement or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent, the Prepetition Administrative Agent, the DIP Lenders and the Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United

States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute)."

25.  *Master Proof of Claim.*  In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition Administrative Agent is authorized to file in the Debtors' lead chapter 11 case (*In re FairPoint Communications, Inc.* (Case No. 09-16335 (BRL)) a single, master proof of claim on behalf of the Prepetition Secured Parties on account of any and all of their respective claims arising under the Prepetition Loan Documents and hereunder (the "Master Proof of Claim") against each of the Prepetition Credit Parties and each of the Pledgors.  Upon the filing of the Master Proof of Claim against each of the Prepetition Credit Parties and each of the Pledgors, the Prepetition Administrative Agent and each Prepetition Secured Party, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Prepetition Credit Parties and each of the Pledgors of any type or nature whatsoever with respect to the Prepetition Loan Documents, and the claim of each Prepetition Secured Party (and each of their respective successors and assigns), named in the Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases.  The Prepetition Administrative Agent shall not be required to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 25 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or their successors in interest) to vote separately on any plan of reorganization proposed in these

Cases.  The Prepetition Administrative Agent shall not be required to file with the Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by each of the Prepetition Credit Parties and each of the Pledgors to the Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel for the Prepetition Administrative Agent.

26.  *No Impact on Certain Contracts or Transactions*.  No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 or 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Interim Order.

27.  *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28.  *Extraordinary Provisions*.  The following constitute "extraordinary provisions" in the Interim DIP Order and DIP Agreement under the Southern District of New York General Order No. M-274.

(a)  *Cross Collateralization*.  Neither this Interim Order nor the DIP Agreement contemplates or implements any "cross-collateralization."

(b)  *"Rollups*."  Neither this Interim Order nor the DIP Agreement contemplates or implements a rollup.

(c)     *Indemnification of any entity.*  DIP Term Sheet, Indemnity, pp. 12-13; Interim Order, ¶ 20.

(d)     *Any provision that would limit the Court's power or discretion in a material way, or would interfere with the exercise of the fiduciary duties, or restrict the rights and powers, of the trustee, debtor-in-possession, or a committee appointed under § 1102 or § 1114 of the Bankruptcy Code, or any fiduciary of the estate, in connection with the operation, financing, use or sale of the business or property of the estate, but excluding any agreement to repay postpetition financing in connection with a plan or to waive any right to incur liens that prime or are pari passu with liens granted under § 364.*  DIP Term Sheet, Purpose/Use of Proceeds, pp. 2-3; Interim Order ¶¶18-19.

(e)     *Release, waiver or limitation on rights under Section 506(c).*  DIP Term Sheet, Financing Orders, pp. 11-12; Interim Order, ¶ 10.

(f)     *Liens granted on claims arising under Chapter 5.*  Subject only to and effective upon entry of the Final Order, the Unencumbered Property shall include the proceeds of any Causes of Action and any property received or recovered thereby whether by judgment, settlement or otherwise, Interim Order ¶ 7(a).

(g)     *Any limitation on the lender's obligation to fund certain activities of the trustee, debtor-in-possession, or a committee appointed under §1102 of §1114 of the Bankruptcy Code.*  DIP Term Sheet, Purpose/Use of Proceeds, pp. 2-3; Interim Order ¶ 19.

(h)     *Events of Default.*  The DIP Agreement contains Events of Default which are set forth in Section 8 of the DIP Agreement and which are reproduced in full on Schedule 3 attached hereto ("Events of Default").

(i) *Waiver or Modification of the Automatic Stay*. DIP Term Sheet, Remedies, pp. 9-10; Interim Order, ¶ 9.

29. *PUCs.* Notwithstanding anything to the contrary herein, nothing in this Interim Order, including, without limitation, any provisions in the Interim Order, the DIP Agreement or any related documents limiting the use of the proceeds of the DIP Financing and/or specifying that such proceeds may not be used for payments of fines, fees, penalties or other payments to the state utilities regulators and/or the states in such capacity (collectively, the "<u>PUCs</u>") or customer rebates payable on account of Service Quality Index (SQI) measures established by the PUCs shall (i) constitute a finding or a ruling regarding the effect of non-payment by the Debtors of such fines, fees, penalties or payments to the PUCs, or customer rebates payable on account of Service Quality Index (SQI) measures established by the PUCs; (ii) enjoin or otherwise limit the authority of the PUCs, if any, to enforce any statute, rule or order providing for, among other things, the payment of such fines, fees, penalties, payments, or customer rebates payable on account of Service Quality Index (SQI) measures established by the PUCs; or (iii) constitute a finding or ruling that the Court has or does not have the jurisdiction or authority to authorize or permit the Debtors to not pay or otherwise provide for payment of such fines, fees, penalties, payments, or customer rebates payable on account of Service Quality Index (SQI) measures established by the PUCs.

30. *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

31. *Final Hearing.* The Final Hearing will be held by this Court on November 18, 2009 at 10:00 a.m. (prevailing Eastern time). The Debtors shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties

having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Committee. Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon (a) Paul, Hastings, Janofsky & Walker, LLP, Park Avenue Tower, 75 East 55th Street, New York, NY 10022, Attn: Luc Despins, Esq. and James T. Grogan, Esq., attorneys for the Debtors; (b) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attention: Margot B. Schonholtz, Esq. and Mark F. Liscio, Esq., Attorneys for the DIP Agent and the Prepetition Agent; and (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than November 11, 2009, at 4:00 p.m. (prevailing Eastern time).

Dated: New York, New York
      October 28, 2009

                                       /s/Burton R. Lifland_____
                                        United States Bankruptcy Judge

## Schedule 1 - Guarantors

Berkshire Cellular, Inc.
Berkshire Net, Inc.
Berkshire New York Access, Inc.
C & E Communications Ltd.
C-R Communications, Inc.
C-R Long Distance, Inc.
Comerco, Inc.
Commtel Communications Inc.
El Paso Long Distance Company
Elltel Long Distance Corp.
FairPoint Broadband, Inc.
FairPoint Carrier Services, Inc.
FairPoint Communications Solutions Corp. - - New York
FairPoint Communications Solutions Corp. – Virginia
Fremont Broadband, LLC
Fretel Communications, LLC
Germantown Long Distance Company
GIT-Cell, Inc.
GITCO Sales, Inc.
GTC Communications, Inc.
GTC Finance Corporation
MJD Services Corp.
MJD Ventures, Inc.
Orwell Communications, Inc.
Peoples Mutual Long Distance Company
Peoples Mutual Services Company
Quality One Technologies, Inc.
Ravenswood Communications, Inc.
S T Computer Resources, Inc.
S T Enterprises, Ltd.
Taconic Technology Corp.
Telephone Service Company
UI Communications, Inc.
UI Telecom, Inc.
Unite Communications Systems, Inc.
Utilities, Inc.
Yates City Telephone Company

## Schedule 2 - Stock Pledgors

Berkshire Cellular, Inc.
Comerco, Inc.
C-R Communications, Inc.
Enhanced Communications of Northern New England Inc.
FairPoint Broadband, Inc.
FairPoint Carrier Services, Inc.
FairPoint Communications, Inc.
FairPoint Logistics, Inc
GTC Communications, Inc.
MJD Services Corp.
MJD Ventures, Inc.
Ravenswood Communications, Inc.
S T Enterprises, Ltd.
St. Joe Communications, Inc.
Unite Communications Systems, Inc.
Utilities, Inc.

## Schedule 3

Events of Default.  Upon the occurrence of any of the following specified events (each, an "Event of Default"):

1.      Payments.  The Borrowers shall (i) default in the payment when due of any principal of the Loans or (ii) default, and such default shall continue for three or more Business Days, in the payment when due of any interest on the Loans or any Fees or any other amounts owing hereunder or under any other Credit Document; or

2.      Representations, etc.  Any representation, warranty or statement made by any Credit Party herein or in any other Credit Document or in any statement or certificate delivered or required to be delivered pursuant hereto or thereto shall prove to be untrue in any material respect on the date as of which made or deemed made; or

3.      Covenants.  Any Credit Party shall (a) default in the due performance or observance by it of any term, covenant or agreement contained in Section 6.05, 6.09, 6.11, 6.14, 6.15 or 7, or (b) default in the due performance or observance by it of any term, covenant or agreement (other than those referred to in Section 8.01, 8.02 or clause (a) of this Section 8.03) contained in this Agreement or in any other Credit Document and such default shall continue unremedied for a period of at least 20 days after written notice to the Borrowers by the Administrative Agent or the Required Lenders; or

4.      Default Under Other Agreements.  (a) Any Borrower or any of its Subsidiaries shall (i) default in any payment with respect to any Indebtedness (other than the Obligations and Indebtedness created or incurred prior to the Petition Date) beyond the period of grace, if any, applicable thereto or (ii) default in the observance or performance of any agreement or condition relating to any such Indebtedness or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event shall occur or condition exist, the effect of which default or other event or condition is to cause, or to permit the holder or holders of such Indebtedness (or a trustee or agent on behalf of such holder or holders) to cause, any such Indebtedness to become due prior to its stated maturity; or (b) any such Indebtedness of a Borrower or any of its Subsidiaries shall be declared to be due and payable (or shall be required to be prepaid as a result of a default thereunder or of an event of the type that constitutes an Event of Default) prior to the stated maturity thereof; provided that it shall not constitute an Event of Default pursuant to this Section 8.04 unless the aggregate principal amount of all Indebtedness referred to in clauses (a) and (b) above (without duplication) exceeds $10,000,000 in the aggregate at any one time; or

5.      ERISA.  An event which meets all of the requirements under (a), (b) and (c) of this Section:  (a) Any Plan or Multiemployer Plan shall fail to satisfy the minimum funding standard required for any plan year or part thereof under Section 412 of the Code or Section 302 of ERISA or a waiver of such standard or extension of any amortization period is sought or granted under Section 412 of the Code or Section 303 or 304 of ERISA, a Reportable Event (other than the commencement of the Chapter 11 Cases) shall have occurred, a contributing sponsor (as defined in Section 4001 (a)(13) of ERISA) of a Plan subject to Title IV of ERISA shall be subject to the advance reporting requirement of PBGC Regulation Section 4043.61

(without regard to subparagraph (b)(1) thereof) and an event described in subsection .62, .63, .64, .65, .66, .67 or .68 of PBGC Regulation Section 4043 shall be reasonably expected to occur with respect to such Plan within the following 30 days, any Plan which is subject to Title IV of ERISA shall have had or is likely to have a trustee appointed to administer such Plan, any Plan or Multiemployer Plan which is subject to Title IV of ERISA is, shall have been or is likely to be terminated or to be the subject of termination proceedings under ERISA, any Plan shall have an Unfunded Current Liability, a contribution required to be made with respect to a Plan or Multiemployer Plan has not been timely made, any Borrower or any Subsidiary or any ERISA Affiliate has incurred or is likely to incur any liability to or on account of a Plan or Multiemployer Plan under Section 409, 502(i), 502(1), 515, 4062, 4063, 4064, 4069, 4201, 4204 or 4212 of ERISA or Section 401(a)(29), 4971 or 4975 of the Code or on account of a group health plan (as defined in Section 607(1) of ERISA or Section 4980B(g)(2) of the Code) under Section 4980B of the Code, or any Borrower or any Subsidiary has incurred or is likely to incur liabilities pursuant to one or more employee welfare benefit plans (as defined in Section 3(1) of ERISA) that provide benefits to retired employees or other former employees (other than as required by Section 601 of ERISA) or Plans; (b) there shall result from any such event or events the imposition of a lien, the granting of a security interest, or a liability or a material risk of incurring a liability; and (c) such lien, security interest or liability, individually, or in the aggregate, in the opinion of the Required Lenders, has had, or is reasonably likely to have, a Material Adverse Effect; or

      6.          Security Documents.  Any Security Document shall cease to be in full force and effect, or shall cease to give the Collateral Agent the Liens, powers and privileges purported to be created thereby in favor of the Collateral Agent; or

      7.          Credit Documents.  (i) Any provision of any Credit Document, at any time after its execution and delivery and for any reason other than as expressly permitted hereunder or thereunder or satisfaction in full of all the Obligations, ceases to be in full force and effect; or any Credit Party or any other Debtor contests in any manner the validity or enforceability of any provision of any Credit Document; or any Credit Party denies that it has any or further liability or obligation under any Credit Document, or purports to revoke, terminate or rescind any provision of any Credit Document; or (ii) the Subsidiary Guaranty given by the Guarantors or any provision thereof shall cease to be in full force and effect, or any Guarantor thereunder or any Person acting by or on behalf of such Guarantor shall deny or disaffirm such Guarantor's obligations under its Subsidiary Guaranty, or any Guarantor shall default in the due performance or observance of any term, covenant or agreement on its part to be performed or observed pursuant to its Subsidiary Guaranty; or

      8.          Judgments.  One or more judgments or decrees shall be entered against any Borrower or any of its Subsidiaries involving a liability (to the extent not paid or covered by insurance) in excess of $20,000,000 in the aggregate for all such judgments and decrees for the Borrowers and their Subsidiaries and all such judgments and decrees in excess of such amount shall not have been vacated, discharged or stayed or bonded pending appeal within 60 days from the entry thereof; or

      9.          Change of Control.  Any Change of Control occurs; or

10.     **Dissolution or Liquidation.**     Any Credit Party voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or files a motion with the Bankruptcy Court seeking authorization to dissolve or liquidate (except to the extent permitted by Section 7.02(a)); or

11.     **Final Order; Interim Order.**     The Bankruptcy Court fails to enter the Final Order within forty-five (45) days of the entry of the Interim Order (with such changes as the Administrative Agent may agree to), or the Bankruptcy Court reverses, vacates or stays the effectiveness of either the Interim Order or the Final Order; or

12.     **Certain Orders.**     An order with respect to any of the Chapter 11 Cases shall be entered by the Bankruptcy Court (or any of the Credit Parties shall file an application or motion for entry of an order) (i) appointing a trustee under Section 1104 of the Bankruptcy Code, (ii) appointing an examiner with enlarged powers (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business under Section 1106(b) of the Bankruptcy Code, or (iii) dismissing or converting the Chapter 11 Cases to a Chapter 7 case; or

13.     **Non-Compliance with any Financing Order.**     Any Credit Party fails or neglects to comply with any provision of any Financing Order; or

14.     **Filing of Unapproved Plan.**     (i) An order shall be entered by the Bankruptcy Court confirming a plan of reorganization in any of the Chapter 11 Cases which does not (x) contain a provision for the Termination of the DIP Financing on or before the effective date of such plan and (y) provide for the continuation of the Liens and priorities in favor of the Collateral Agent until such effective date, (ii) any Person shall file a plan of reorganization in any of the Chapter 11 Cases which does not (x) contain a provision for the Termination of the DIP Financing on or before the effective date of such plan and (y) provide for the continuation of the Liens and priorities in favor of the Collateral Agent until such effective date or (iii) any Credit Party (or by any party with the support of any of the Credit Parties) shall have filed a plan of reorganization that violates this Section 8.14 in the Chapter 11 Cases; or

15.     **Entry of Unapproved Order.**     An order with respect to the Chapter 11 Case shall be entered by the Bankruptcy Court (i) to revoke, reverse, stay for a period in excess of ten (10) days, vacate or rescind any provision of any Financing Order, (ii) to modify, supplement or amend any provision of any Financing Order without the consent of the Administrative Agent or (iii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to any of the Credit Parties, equal or superior to the priority of the Lenders in respect of the Obligations, except for allowed administrative expenses having priority over the Obligations only to the extent set forth in the definition of Carve Out, or (iv) to grant or permit the grant of a Lien on the Collateral (other than a Permitted Lien) or (v) an order shall be entered by the Bankruptcy Court dismissing the Chapter 11 Cases which does not contain a provision for the Termination of the DIP Financing upon such dismissal; or

16.     **Relief from the Automatic Stay.**     The Bankruptcy Court enters an order or orders granting relief from the automatic stay applicable under Section 362 of the Bankruptcy

Code for any reason to any Person with respect to assets of any Credit Party where the aggregate value of the property subject to all such order or orders is greater than $10,000,000; or

17.    Unenforceability of the Interim Order, Final Order or Credit Documents. Any provision of the Interim Order, the Final Order, this Agreement or any other Credit Document shall for any reason cease to be valid or binding or enforceable against any of the Credit Parties (other than, in the case of the Interim Order, by virtue of the Final Order superseding it), or any of the Credit Parties shall so state in writing; or any of the Credit Parties shall commence or join in any legal proceeding to contest in any manner that the Interim Order, the Final Order, this Agreement or any other Loan Document constitutes a valid and enforceable agreement or any of the Credit Parties shall commence or join in any legal proceeding to assert that it has no further obligation or liability under the Interim Order, the Final Order, this Agreement or any other Credit Document; or

18.    Motion against the Lenders or the Prepetition Agent.  Any of the Credit Parties shall seek to, or shall support (whether by way of motion or other pleadings filed with the Bankruptcy Court or any other writing executed by any Credit Party or by oral argument) any other Person's motion to, (1) disallow in whole or in part any of the Obligations arising under this Agreement or any other Credit Document, (2) disallow in whole or in part any of the Indebtedness owed by the Credit Parties under the Prepetition Credit Agreement or any other "Credit Document" (as defined in the Prepetition Credit Agreement), (3) challenge the validity and enforceability of the Liens or security interests granted under any of the Credit Documents or in any Financing Order in favor of the Collateral Agent or (4) challenge the validity and enforceability of the Liens or security interests granted under the Prepetition Credit Agreement and related documents or in any Financing Order in favor of the Prepetition Agent or Prepetition Lenders; or

19.    Prohibited Payment.  Any of the Credit Parties shall make any payment (as adequate protection or otherwise), or application for authority to pay, on account of any claim or Indebtedness arising prior to the Petition Date other than those payments in respect of "adequate protection obligations" permitted pursuant to the terms of the Financing Orders and payments authorized by the Bankruptcy Court in respect of (x) any such payments required and/or permitted in the "First Day Orders" reasonably satisfactory to the Administrative Agent and (y) accrued payroll and related expenses as of the Petition Date; or

20.    Other Bankruptcy Matters.    (i) An order shall have been entered modifying the adequate protection obligations granted in any Financing Order without the prior written consent of the Administrative Agent, (ii) an order shall have been entered by the Bankruptcy Court avoiding or requiring disgorgement by the Administrative Agent or any of the Lenders of any amounts received in respect of the Obligations, (iii) a motion or other request shall be filed with the Bankruptcy Court seeking authority to use any cash proceeds of any of the Collateral without the consent of the Required Lenders and the Administrative Agent or (iv) any Debtor shall file a motion or other request with the Bankruptcy Court seeking any financing under Section 364(d) of the Bankruptcy Code secured by any of the Collateral that does not require the Termination of the DIP Financing; or

21.     Failure to Conduct Business.  If any Credit Party is enjoined, restrained or in any way prevented by court order (other than an order of the Bankruptcy Court approved by the Required Lenders) from continuing to conduct all or any material part of its business affairs; or

22.     Failure to File Plan.  The Borrowers shall fail to (a) file, within forty-five (45) days after the Petition Date, a plan of reorganization in the Chapter 11 Cases that contains a provision for the Termination of the DIP Financing on the date of effectiveness of such plan and (b) obtain entry of a confirmation order from the Bankruptcy Court with respect to a plan of reorganization in the Chapter 11 Cases that contains a provision for the Termination of the DIP Financing by July 31, 2010;

then, and in any such event, and at any time thereafter, notwithstanding the provisions of Section 362 of the Bankruptcy Code, but subject to the Financing Orders, if any Event of Default shall then be continuing, the Administrative Agent may, or upon the written request of the Required Lenders, shall, take any or all of the following actions, without further order of or application to the Bankruptcy Court and without prejudice to the rights of the Administrative Agent, any Letter of Credit Issuer or any Lender to enforce its claims against any Credit Party, except as otherwise specifically provided for in this Agreement:  (i) declare the Total Commitment terminated, whereupon the Commitment of each Lender shall forthwith terminate immediately and any Fees shall forthwith become due and payable without any other notice of any kind; (ii) declare the principal of and any accrued interest in respect of all Loans and all Obligations owing hereunder (including Unpaid Drawings) to be, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrowers; (iii) enforce, as Collateral Agent (or direct the Collateral Agent to enforce), any and all of the Liens and rights created pursuant the Security Documents; (iv) terminate any Letter of Credit which may be terminated in accordance with its terms; (v) direct the Borrowers to pay (and the Borrowers hereby agree upon receipt of such notice they will pay) to the Collateral Agent at the Payment Office such additional amounts of cash and/or Cash Equivalents, to be held in a cash collateral account as security for the Borrowers' reimbursement obligations in respect of Letters of Credit then outstanding equal to the aggregate Stated Amount of all Letters of Credit then outstanding (less any amount thereof as to which Section 1A.01(c) Arrangements are in place); and (vi) apply any cash collateral held by the Administrative Agent as provided in Section 3.02(A)(a) to the repayment of the Obligations; provided, that with respect to items (iii) and (vi) above, the Administrative Agent shall provide the Borrowers (with a copy to counsel for any Committee appointed in the Chapter 11 Cases and the United States Trustee for the Southern District of New York with five (5) Business Days prior written notice.

Upon the occurrence and during the continuance of an Event of Default, the automatic stay arising pursuant to Bankruptcy Code Section 362 shall be vacated and terminated in accordance with the Interim Order or the Final Order, as applicable, so as to permit the Administrative Agent, the Collateral Agent and the Lenders full exercise of all of their rights and remedies based on the occurrence of an Event of Default, including, without limitation, all of their rights and remedies with respect to the Collateral.  With respect to the Administrative Agent's, the Collateral Agent's and Lenders' exercise of their rights and remedies, the Credit Parties agree, waive and, release, and shall be enjoined from attempting to contest, delay, or otherwise dispute

the exercise by the Administrative Agent, the Collateral Agent and the Lenders of their rights and remedies before the Bankruptcy Court or otherwise.