Luc A. Despins, Esq.
James T. Grogan, Esq.
PAUL HASTINGS JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re:                                  :    Chapter 11
                                        :
FAIRPOINT COMMUNICATIONS, INC., et al.,:    Case No. 09-16335 (BRL)
                                        :
            Debtors.                    :    (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**NOTICE OF HEARING ON DEBTORS' APPLICATION FOR ENTRY OF ORDER,**
**UNDER BANKRUPTCY CODE SECTIONS 327(a) AND 328(a), AUTHORIZING**
**EMPLOYMENT AND RETENTION OF ROTHSCHILD INC. AS**
**<u>FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEBTORS</u>**

  **PLEASE TAKE NOTICE** that upon the annexed Application, dated October 28, 2009

(the "<u>Application</u>"), of FairPoint Communications, Inc. ("<u>FairPoint Communications</u>") and its

affiliated debtors, as debtors in possession (collectively, "<u>FairPoint</u>"), for an order, under

Bankruptcy Code sections 327(a) and 328(a), authorizing the employment and retention of

Rothschild Inc. as financial advisor to FairPoint, a hearing will be held before the Honorable

Burton R. Lifland, United States Bankruptcy Judge, in Room 623 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, on November 18, 2009 at 10:00 a.m. (Eastern Time), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (a) Paul, Hastings, Janofsky & Walker LLP, attorneys for FairPoint, 75 East 55th Street, New York, NY 10022, Attn: Luc A. Despins, Esq. and James T. Grogan, Esq.; (b) FairPoint, c/o FairPoint Communications, Inc., 521 East Morehead Street, Suite 500, Charlotte, NC 28202, Attn: Susan L. Sowell, Esq.; (c) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn: Andrew D. Velez-Rivera; (d) Kaye Scholer LLP, 425 Park Avenue, New York NY 10022, Attn: Margot B. Schonholtz, Esq. and Mark F. Liscio, Esq., attorneys to Bank of America, N.A. as administrative agent for FairPoint's prepetition secured lenders; (e) U.S. Bank National Association, 60 Livingston Avenue, EP-MN-WS3C, St. Paul, MN 55107, Attn: Rick Prokosch, indenture trustee for FairPoint's senior noteholders; (f) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Kristopher M. Hansen, Esq., attorneys to the ad hoc committee of FairPoint's senior noteholders; (g) the United States Attorney for the Southern District of New York, 86 Chambers Street, New York, NY

10007, Attn: Preet Bharara, Esq.; (h) the Internal Revenue Service, 290 Broadway, New York,

NY 10007, Attn: District And Regional Directors; (i) the Securities and Exchange Commission,

233 Broadway, New York, NY 10279 (j) the Federal Communications Commission, 445 12th

Street, SW, Washington, DC 20554; and (k) Cohen, Weiss and Simon LLP, 330 West 42nd

Street, 25th Floor, New York, NY. 10036-6976, Attn: Bruce H. Simon, so as to be received no

later than November 11, 2009 at 4:00 p.m. (Eastern Time) (the "Objection Deadline").  If no

objections are timely filed and served with respect to the Application, FairPoint may, on or after

the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the

proposed order annexed to the Application, which order may be entered with no further notice or

opportunity to be heard offered to any party.


Dated: October 28, 2009
      New York, New York

    __/s/ Luc A. Despins_____
    Luc A. Despins, Esq.
    James T. Grogan, Esq.
    PAUL HASTINGS JANOFSKY &
    WALKER LLP
    Park Avenue Tower
    75 E. 55th Street, First Floor
    New York, NY 10022
    Telephone:  (212) 318-6000
    Facsimile:   (212) 319-4090

    *Proposed Counsel to the Debtors*
    *and Debtors in Possession*

Luc A. Despins, Esq.
James T. Grogan, Esq.
PAUL HASTINGS JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
|  |  |
|---|---|
| **In re:** | : |
|  | : **Chapter 11** |
|  | : |
| **FAIRPOINT COMMUNICATIONS, INC.,** *et al.*,: | **Case No. 09-16335 (BRL)** |
|  | : |
| **Debtors.** | : **(Jointly Administered)** |
|  | : |

------------------------------------------------------------x

**DEBTORS' APPLICATION FOR ENTRY OF ORDER, UNDER BANKRUPTCY**
**CODE SECTIONS 327(a) AND 328(a), AUTHORIZING EMPLOYMENT**
**AND RETENTION OF ROTHSCHILD INC. AS**
**FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEBTORS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

FairPoint Communications, Inc. ("FairPoint Communications") and its affiliated debtors,

as debtors in possession (collectively, "FairPoint"), respectfully represent:

## BACKGROUND

### General

1.      On October 26, 2009 (the "Petition Date"), FairPoint commenced voluntary cases

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

FairPoint continues to operate its business and manage its properties as debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      FairPoint has requested that its chapter 11 cases be consolidated for procedural purposes only and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FairPoint's Businesses

3.      FairPoint is a leading provider of communications services to residential and business customers in rural and small urban communities located in eighteen states.  FairPoint operates the seventh largest local telephone company in the United States, based on the number of access lines, with approximately 1.7 million access line equivalents (including voice access lines and high speed data lines, which include digital subscriber lines, or DSL, wireless broadband and cable modem) in service as of June 30, 2009.

4.      FairPoint Communications is the direct or indirect parent company of each of the other debtors in these chapter 11 cases.  FairPoint Communications was founded in 1991 and currently owns and operates thirty-three local exchange carriers ("LECs") located throughout the United States.  Many of these local telephone companies have served their communities for more than 75 years.  Through its LECs, FairPoint Communications offers its customers a broad array of services including, but not limited to, local telephone services, long distance services, data and Internet services, cable television and video services in certain markets, enhanced telephone services, billing and collection services, and telephone directory services.

5.      As of the date hereof, FairPoint has approximately 4,140 employees, including approximately 2,700 who are represented by labor unions.  For the year ended December 31, 2008, FairPoint had revenues of approximately $1.3 billion on a consolidated basis.  As of June 30, 2009, FairPoint's unaudited consolidated financial statements reflected assets with a book value totaling approximately $3.236 billion and liabilities totaling approximately $3.234 billion.

6.       FairPoint's primary goal is to effect a restructuring of its balance sheet that will result in a viable capital structure to enable FairPoint to achieve long-term profitability.  To this end, FairPoint has reached an agreement with certain of its prepetition secured lenders (the "Steering Committee Lenders") under that certain credit agreement, dated as of March 31, 2008 (as modified, amended or supplemented from time to time) regarding the terms of a comprehensive financial restructuring that will result in the conversion of more than $1.7 billion of debt into equity.  In addition, certain of the Steering Committee Lenders have agreed to provide FairPoint with a $75 million postpetition credit facility to provide FairPoint with ample working capital during these chapter 11 cases. Through these, among other efforts, FairPoint believes that it will successfully de-lever its balance sheet and emerge from chapter 11 as a healthy and viable enterprise.

7.       Additional information regarding FairPoint's business, capital structure, and the circumstances leading to this chapter 11 filing is set forth in the Declaration of Alfred C. Giammarino Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First Day Motions (the "First Day Declaration"), which is incorporated herein by reference and filed contemporaneously herewith.

## JURISDICTION

8.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.       By this application ("Application"), FairPoint seeks the entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and

Local Rules 2014-1 and 2016-1 authorizing the employment and retention of Rothschild as its

financial advisor and investment banker in accordance with the terms and conditions set forth in

that certain engagement letter and joinder letter, each dated as of May 12, 2009, by and between

FairPoint and Rothschild (together, the "Engagement Letter"), copies of which are attached

hereto as Exhibit C and incorporated by reference herein.

### Rothschild's Qualifications

10.     Rothschild is a member of one of the world's leading independent investment

banking groups, with more than forty (40) offices in more than thirty (30) countries, including an

office located at 1251 Avenue of the Americas, New York, New York 10020.  Rothschild has

expertise in domestic and cross-border restructurings, mergers and acquisitions, and other

financial advisory services, and with particular experience in providing high-quality financial

advisory services to financially troubled companies.  Rothschild is an experienced bankruptcy

and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes

and secured creditors in a variety of industries.  Rothschild is highly qualified to advise on

strategic alternatives and its professionals have extensive experience in deals involving complex

financial and operating restructurings.  Moreover, Rothschild is a member of the Financial

Industry Regulatory Authority and the Securities Investor Protection Corporation.

11.     Rothschild and its professionals have extensive experience working with

financially troubled companies from a variety of industries in complex financial restructurings,

both out-of-court and in chapter 11 cases.  Rothschild's business reorganization professionals

have served as financial and strategic advisors in numerous cases, including, among others:  *In re

Sea Launch Co., LLC,* No. 09-12153 (BLS) (Bankr. D. Del. Aug. 8, 2009); *In re Sun-Times

Media Group, Inc.,* No. 09-11092 (CSS) (Bankr. D. Del. May 11, 2009); *In re Tronox Inc.,* No.

09-10156 (ALG) (Bankr. S.D.N.Y. Apr. 7, 2009); *In re PPI Holdings, Inc.,* No. 08-13289 (KG) (Bankr. D. Del. Feb. 4, 2009); *In re Recycled Paper Greetings Inc.*, Case No. 09-10002 (Bankr. D. Del. January 2, 2009); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (Bankr. E.D.VA. November 10, 2008); *In re VeraSun Energy Corporation*, Case No. 08-12606 (Bankr. D. Del. October 31, 2008); *In re Motor Coach Industries International, Inc.*, Case No. 08-12136 (Bankr. D. Del. September 15, 2008); *In re BHM Technologies*, Case No. 08-04413 (Bankr. W.D. Mich. May 19, 2008); *In re Hilex Poly Co. LLC*, Case No. 08-10890 (Bankr. D. Del. May 6, 2008); *In re Werner Holding Co., Inc.,* No. 06-10578 (KJC) (Bankr. D. Del. June 12, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. November 30, 2005); *In re Solutia Inc.*, Case No. 03-17949 (Bankr. S.D.N.Y. March 11, 2005); *In re International Wire*, Case No. 04-11991 (Bankr. S.D.N.Y. July 1, 2004); *In re WestPoint Stevens, Inc.,* No. 03-13532 (RDD); *In re Viasystems Group, Inc.*, Case No. 02-14867 (Bankr. S.D.N.Y. November 21, 2002); *In re Guilford Mills, Inc.*, Case No. 02-40667 (Bankr. S.D.N.Y. June 26, 2002); *In re James River Coal Company*, Case No. 03-04095 (Bankr. M.D. Tenn. May 23, 2003); *In re Superior TeleCom Inc., et al.*, Case No. 03-10607 (Bankr. D. Del. April 10, 2003); *In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. December 9, 2002); *In re Mpower Holding Corporation*, Case No. 02-11046 (Bankr. D. Del. April 29, 2002); *In re Thermadyne Holdings Corp.*, Case No. 01-52840 (Bankr. E.D. Miss. April 29, 2002); *In re Special Metals Corp.*, Case No. 02-10335 (Bankr. E.D.KY. March 27, 2002); *In re Federal-Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del. February 5, 2002); *In re Comdisco*, Case No. 01-24795 (Bankr. N.D. Ill. Oct. 23, 2001); *In re The Finova Group*, Case No. 01-00697 (Bankr. D. Del. June 25, 2001); *In re Globe Manufacturing Corp.*, Case No. 01-70115 (Bankr. N.D. Ala. March 22, 2001); *In re Heartland Steel*, Case No. 01-80081 (S.D. Ind. March 12, 2001); *In re Trans World Airlines, Inc.*, Case No.

01-0056 (Bankr. D. Del. January 26, 2001); *In re Crown Vantage, Inc.*, Case No. 00-41584 (Bankr. N.D. Cal. June 20, 2000); *In re Geneva Steel Holdings Corporation*, Case No. 99-21130 (Bankr. D. Utah May 17, 2000); *In re Service Merchandise*, Case No. 99-02649 (Bankr. M.D. Tenn. May 3, 2000); *In re Key Plastics*, Case No. 00-44478 (Bankr. E.D. Mich. April 26, 2000); *In re Thorn Apple Valley*, Case No. 99-43645 (E.D. Mich. March 23, 1999); *In re Today's Man*, Case No. 96-00117 (Bankr. D. Del. April 17, 1997); *In re Edison Brothers*, Case No. 95-01354 (Bankr. D. Del. April 10, 1996).

12.     In light of the size and complexity of these chapter 11 cases, the resources, capabilities and experience of Rothschild in advising FairPoint is crucial to the success of these chapter 11 cases. An experienced investment bank and financial advisor, such as Rothschild, fulfills a critical service that complements the services provided by FairPoint's other professionals. As discussed in detail below, Rothschild will concentrate its efforts on serving as FairPoint's financial advisor and investment banker in these chapter 11 cases and, more specifically, in formulating strategic alternatives and assisting FairPoint in its efforts with regard to a restructuring, financing, and/or sale (or any combination thereof). For the aforementioned reasons, FairPoint requires the services of a capable and experienced financial advisor and investment banker such as Rothschild.

13.     Prior to the Petition Date, on May 12, 2009, FairPoint engaged Rothschild to provide general investment banking and financial advice in connection with FairPoint's efforts to pursue an out-of-court restructuring of all or a significant portion of FairPoint's outstanding indebtedness, and to prepare for the commencement of these chapter 11 cases after such effort failed.

14. In rendering prepetition services to FairPoint in connection with these matters, Rothschild has worked closely with FairPoint's management and other retained professionals and has become well acquainted with FairPoint's business operations, capital structure, key stakeholders, financing documents and other material information. Accordingly, Rothschild has developed significant expertise regarding FairPoint that will assist it in rendering strategic advice and facilitating FairPoint's efforts to maximize value in these chapter 11 cases.

15. Rothschild's capabilities and experience in providing advice to FairPoint is integral to FairPoint's restructuring efforts and will complement the services to be provided by FairPoint's other restructuring professionals. For all of the foregoing reasons, FairPoint needs the services of a highly capable financial advisor with a deep bench of experience such as Rothschild.

## Services to Be Provided

16. Subject to further order of this Court and consistent with the Engagement Letter, FairPoint requests the employment and retention of Rothschild to render the following financial advisory and investment banking services to FairPoint, as necessary and requested by FairPoint:

     a. identify, propose and/or initiate potential Recapitalization Transactions (as defined in the Engagement Letter);

     b. review and analyze FairPoint's financial condition and the operating and financial strategies of FairPoint;

     c. review and analyze the business plans and financial projections prepared by FairPoint including, but not limited to, testing assumptions and comparing those assumptions to historical FairPoint and industry trends;

     d. evaluate FairPoint's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for FairPoint;

     e. analyze FairPoint's financial liquidity and evaluate and propose alternatives, if any, to improve such liquidity;

f.   prepare financial models which demonstrate the financial impact of any proposed Recapitalization Transaction on the FairPoint's existing shareholders and the long term cash flow impact of any proposed Recapitalization Transaction on FairPoint;

g.   review and analyze the terms and conditions of FairPoint's existing credit documents and tax sharing agreements in connection with evaluating any proposed Recapitalization Transaction or alternative transaction;

h.   assist FairPoint and its other professionals in reviewing the terms of any proposed Recapitalization Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Recapitalization Transaction;

i.   determine a range of values for FairPoint and any securities that FairPoint offers or proposes to offer in connection with a Recapitalization Transaction;

j.   advise FairPoint on the risks and benefits of considering a Recapitalization Transaction with respect to FairPoint's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of FairPoint

k.   review, analyze and provide recommendations regarding any proposals FairPoint receives from third parties in connection with a Recapitalization Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

l.   advise, assist and/or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, public utility commissions, and claimants against FairPoint and/or their respective representatives in connection with a Recapitalization Transaction, in each case, at the direction of FairPoint;

m.   assist with the preparation and review of presentations, documents and other materials for FairPoint's board of directors, creditor groups and other interested parties (including, but not limited to, any public utility commissions);

n.   advise FairPoint with respect to, and attend, meetings of FairPoint's board of directors, creditor groups, official constituencies and other interested parties, as necessary;

o. participate in hearings before the Court and provide relevant testimony with respect to various matters described in the Engagement Letter and issues arising in connection with any proposed plan of reorganization; and

p. render such other financial advisory and investment banking services as may be agreed upon by Rothschild and FairPoint.

17. The services that Rothschild will provide to FairPoint are necessary to enable FairPoint to maximize the value of its estates. FairPoint believes that the services will not duplicate the services that other professionals will be providing to FairPoint in these chapter 11 cases. Specifically, Rothschild will carry out unique functions and will use reasonable efforts to coordinate with FairPoint's other retained professionals to avoid the unnecessary duplication of services.

<u>**Disinterestedness of Professionals**</u>

18. To the best of FairPoint's knowledge, information and belief, Rothschild has no connection with, and holds no interests adverse to, FairPoint, its creditors, or any other parties-in-interest, or their respective attorneys or accountants, in the matters for which Rothschild is sought to be retained, except as otherwise disclosed in the Declaration of Neil A. Augustine in Support of Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Rothschild Inc. as Financial Advisor and Investment Banker to the Debtors (the "Augustine Declaration") as attached hereto as <u>Exhibit D</u>. The Augustine Declaration, executed on behalf of Rothschild in accordance with Bankruptcy Code section 327(a) and Bankruptcy Rule 2014, is filed contemporaneously herewith and incorporated herein by reference.

19. In reliance on the Augustine Declaration, and except as set forth therein, FairPoint believes that: (a) Rothschild has no connection with FairPoint, their affiliates, their creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee or any other party with an

actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (b) Rothschild is not a creditor, equity security holder or insider of FairPoint; (c) none of Rothschild's professionals is, or was within two years of the Petition Date, a director, officer or employee of FairPoint; and (d) Rothschild neither holds nor represents an interest materially adverse to FairPoint, its estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in FairPoint, or for any other reason. Therefore, FairPoint believes that Rothschild is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

20.    FairPoint submits that the appointment of Rothschild on the proposed terms and conditions as set forth herein is in the best interest of FairPoint, its creditors and all parties-in-interest.

## Professional Compensation

21.    Rothschild intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with FairPoint's chapter 11 cases, subject to the Court's approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and any other applicable procedures and orders of the Court and consistent with the proposed compensation as set forth in the Engagement Letter (the "Compensation Structure"). Additionally, as FairPoint is seeking approval of the Compensation Structure under section 328(a) of the Bankruptcy Code, FairPoint submits that Rothschild's compensation should not be subject to further review

pursuant to section 330 of the Bankruptcy Code and, concomitantly, should not be deemed to constitute a "bonus" or "fee enhancement" under applicable law.

22.     In consideration of the services to be provided by Rothschild, and as more fully described in the Engagement Letter, subject to this Court's approval, FairPoint has agreed to pay Rothschild in cash under the Compensation Structure as follows:

a. *Monthly Fee* – A monthly fee in an amount equal to $200,000 per month.

b. *Recapitalization Fee* – A fee with respect to any Recapitalization Transaction equal to $8 million.

c. *New Capital Fee* – A fee with respect to any new capital raise equal to (i) 1.00% of the face amount of any senior secured debt raised; (ii) 2.00% of the face amount of any junior secured debt raised; (iii) 3.00% of the face amount of any senior or subordinated unsecured debt raised; and (iv) 5.00% of any equity or convertible capital raised.

d. *Other Services* – To the extent FairPoint requests Rothschild to perform additional services not contemplated by the Engagement Letter, such services and the fees for such services shall be mutually agreed upon by Rothschild and FairPoint, in writing, in advance.

e. *Fee Credits* – A credit against the Recapitalization Fee calculated as such:  (a) 50% of the Monthly Fees paid in excess of $600,000, but less than or equal to $1.2 million, plus 100% of Monthly Fees paid in excess of $1.2 million, but less than or equal to $2.4 million, plus 50% of Monthly Fees paid in excess of $2.4 million; and (b) 50% of any New Capital Fee paid; provided that the total credit does not exceed the Recapitalization Fee.

23.     In addition to the fees described above, FairPoint agrees to reimburse Rothschild for all out-of-pocket expenses reasonably incurred by Rothschild in connection with the matters contemplated by the Engagement Letter, including, without limitation, reasonable fees, disbursements, and charges of Rothschild's counsel.  Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research, and courier services. FairPoint believes that the Compensation Structure is comparable to those generally charged by investment banking firms of similar

stature to Rothschild for comparable engagements, both in and out of bankruptcy proceedings, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of the transactions and services contemplated by FairPoint and Rothschild in the Engagement Letter.

24.     The hours worked, the results achieved, and the ultimate benefit to FairPoint for the work performed by Rothschild in connection with its engagement may vary and FairPoint and Rothschild have taken this into account in setting the above fees.  The Compensation Structure described above was established to reflect the difficulty of the extensive assignment and the challenging nature of the engagement.  Further, the Compensation Structure is consistent with Rothschild's normal and customary billing practices for cases of this size and complexity which require the level of services to be provided.

25.     Rothschild's restructuring capabilities, mergers and acquisitions expertise as well as its capital markets knowledge, and financing skills, some or all of which may be required by FairPoint during the term of Rothschild's engagement hereunder, were important factors to FairPoint in determining the Compensation Structure.  Accordingly, Rothschild and FairPoint believe the Compensation Structure is both reasonable and market-based.

26.     FairPoint is advised by Rothschild that it is not the general practice of investment banking and financial services firms to keep detailed time records similar to those customarily kept by attorneys.  Notwithstanding the foregoing, Rothschild intends to file fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and any applicable orders of this Court.  Such applications will include time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of

time spent on each date by each such individual in rendering services on behalf of FairPoint. Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (1/10) increments or provide or conform to a schedule of hourly rates for its professionals, Rothschild should be excused from compliance with such requirements and should be required only to maintain such time records in half-hour (1/2) increments. Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rothschild's applications for compensation and expenses will be paid by FairPoint, pursuant to the terms of the Engagement Letter, upon approval by this Court.

27.     As set forth in the Augustine Declaration, Rothschild has not shared or agreed to share any of its compensation from FairPoint with any other persons, other than a managing director, professional, or employee of Rothschild, as permitted by section 504 of the Bankruptcy Code.

28.     FairPoint does not owe Rothschild any fees for services performed or expenses incurred pursuant to the Engagement Letter prior to the Petition Date. According to Rothschild's records, during the 90 days before commencement of the chapter 11 cases, Rothschild received $1,150,239.62 for professional services performed and expenses incurred (including $50,000 in estimated expenses incurred but not yet invoiced as of the date hereof). To the extent such estimated expenses exceed actual expenses incurred, such excess shall be applied to subsequent invoices.

**Indemnification**

29.     As part of the overall compensation payable to Rothschild under the terms of the Engagement Letter, FairPoint has agreed to certain indemnification and contribution obligations as described in the Engagement Letter and Exhibit A thereto (the "Indemnification

Obligations"). More specifically, the Indemnification Obligations provide that FairPoint will indemnify and hold Rothschild harmless against liabilities arising out of or in connection with its retention by FairPoint, except for any liability for losses, claims, damages, or liabilities incurred by FairPoint that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful or intentional misconduct, or fraud of Rothschild.

30. FairPoint and Rothschild believe the Indemnification Obligations are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 cases. *See, e.g.*, *In re Tronox Inc.,* Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. April 7, 2009); *In re Motor Coach Industries International, Inc.,* Case No. 08-12136 (Bankr. D. Del. September 15, 2008); *In re VeraSun Energy Corporation*, Case No. 08-12606 (Bankr. D. Del. October 31, 2008); *In re Recycled Paper Greetings Inc.,* No. 09-10002 (KG) (Bankr. D. Del. Jan. 2, 2009); *In re New Century TRS Holdings, Inc.,* No. 07-10416 (KJC) (Bankr. D. Del. Apr. 25, 2007); *In re Calpine Corp.,* No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); *In re FLYi, Inc.,* No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); *In re Foamex Int'l, Inc.,* No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); *In re Collins & Aikman Corp.,* No. 05-55927 (SWR) (Bankr. E.D. Mich. July 18, 2005); *In re Snyders Drug Store, Inc.*, Case No. 03-44577 (Bankr. N.D. Ohio Sept. 30, 2003 and Oct. 8, 2003); *In re Republic Engineered Prods. Holdings, Inc.*, Case No. 03-55118 (Bankr. N.D. Ohio Dec. 3, 2003); *In re Oakwood Homes Corp.,* No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); *In re NTELOS, Inc.,* No. 03-32094 (DOT) (Bankr. E.D. Va. Apr. 16, 2003); *In re U.S. Airways, Inc.,* No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); *In re United Artists Theatre Co.,* No. 00-3514 (SLR) (Bankr. D. Del. Nov. 14, 2000);

*In re Phar-Mor, Inc.*, Case No. 01-44007 (Bankr. N.D. Ohio Oct. 11, 2001); *In re LTV Steel, Inc.*, Case No. 00-43866 (Bankr. N.D. Ohio Feb. 20, 2001).

31.     The terms and conditions of the Engagement Letter, including the Indemnification Obligations contained in Exhibit A attached thereto, were negotiated by FairPoint and Rothschild at arm's length and in good faith. FairPoint respectfully submits that the Indemnification Obligations contained in the Engagement Letter and Exhibit A attached thereto, viewed in conjunction with the other terms of Rothschild's proposed retention, are reasonable and in the best interests of FairPoint, its estates, and all parties in interest. Accordingly, as part of this Application, FairPoint requests that this Court approve the Indemnification Obligations.

## BASIS FOR THE RELIEF REQUESTED

32.     Section 327 of the Bankruptcy Code provides that a debtor may, with the court's approval, employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a); *In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998). As discussed above, Rothschild meets the disinterestedness standard of section 327(a) of the Bankruptcy Code.

33.     Moreover, FairPoint seeks the Court's approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, *inter alia*, that FairPoint "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code expressly authorizes fee arrangements such as the Compensation Structure proposed here.

34.     In fact, similar fixed and contingency fee arrangements in a variety of other chapter 11 cases have been approved by courts in this Circuit.  *See*, *e.g.*, *In re Tronox Inc.,* Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. April 7, 2009); *In re Northwest Airlines Inc.*, Case No. 05-17930 (Bankr. S.D.N.Y. Jul. 20, 2006); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. May 2, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); *In re Tower Auto, Inc.*, Case No. 05-10578 (Bankr. S.D.N.Y. June 15, 2005); *In re Solutia, Inc.*, Case No. 03-17949 (Bankr. S.D.N.Y. Apr. 22, 2004); *In re Parmalat U.S.A. Corp.*, Case No. 04-11139 (Bankr. S.D.N.Y. Apr. 22, 2004); *In re Adelphia Comm. Corp.*, Case No. 02-41729 (Bankr. S.D.N.Y. Dec. 12, 2003); *In re Worldcom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. Jan. 14, 2003).

35.     Here, the Compensation Structure is designed to compensate Rothschild reasonably given the challenging nature of the work and the scope of the assignment under the Engagement Letter.  Additionally, the proposed Compensation Structure comports with fee arrangements frequently employed by Rothschild and similar leading investment banking firms that are not compensated on an hourly basis.  FairPoint thus believes that the Engagement Letter is reasonable and should be approved pursuant to section 328(a) of the Bankruptcy Code.

36.     Rothschild nevertheless intends to apply for compensation from professional services rendered and reimbursement of expenses incurred in connection with the chapter 11 cases, subject to this Court's approval and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and in accordance with the proposed compensation set forth in the Engagement Letter.

**NOTICE**

37.     No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases.  FairPoint has provided notice of this Motion by either electronic mail, facsimile or overnight mail to: (a) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn: Andrew D. Velez-Rivera; (b) the creditors holding the five largest secured claims against FairPoint's estates (on a consolidated basis); (c) the creditors holding the 50 largest unsecured claims against FairPoint's estates (on a consolidated basis); (d) Kaye Scholer LLP, 425 Park Avenue, New York NY 10022, Attn: Margot B. Schonholtz, Esq. and Mark F. Liscio, Esq., attorneys to Bank of America, N.A. as administrative agent for FairPoint's prepetition secured lenders; (e) U.S. Bank National Association, 60 Livingston Avenue, EP-MN-WS3C, St. Paul, MN  55107, Attn: Rick Prokosch, indenture trustee for FairPoint's senior noteholders; (f) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Kristopher M. Hansen, Esq., attorneys to the *ad hoc* committee of FairPoint's senior noteholders; (g) the United States Attorney for the Southern District of New York, 86 Chambers Street, New York, NY 10007, Attn: Preet Bharara, Esq.; (h) the Internal Revenue Service, 290 Broadway, New York, NY 10007, Attn: District And Regional Directors; (i) the Securities and Exchange Commission, 233 Broadway, New York, NY 10279 (j) the Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554; and (k) Cohen, Weiss and Simon LLP, 330 West 42nd Street, 25th Floor, New York, NY. 10036-6976, Attn: Bruce H. Simon.

38.     No previous request for the relief sought herein has been made by FairPoint to this or any other court.

**WHEREFORE**, FairPoint respectfully requests entry or an order, substantially in the form attached hereto as <u>Exhibit B</u>, (a) authorizing FairPoint to employ and retain Rothschild as its financial advisor and investment banker <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date, (b) approving the terms of the Engagement Letter, and (c) granting such other and further relief as is just.

Dated: October 28, 2009
      New York, New York

On behalf of FairPoint Communications,
Inc. and its direct and indirect subsidiaries
listed in Exhibit A below:

By: <u>/s/ Shirley J. Linn</u>
Name: Shirley J. Linn
Title: Executive Vice President

## EXHIBIT A

BE Mobile Communications, Incorporated
Bentleyville Communications Corporation
Berkshire Cable Corp.
Berkshire Cellular, Inc.
Berkshire Net, Inc.
Berkshire New York Access, Inc.
Berkshire Telephone Corporation
Big Sandy Telecom, Inc.
Bluestem Telephone Company
C & E Communications, Ltd.
Chautauqua & Erie Communications, Inc.
Chautauqua and Erie Telephone Corporation
China Telephone Company
Chouteau Telephone Company
Columbine Telecom Company
Comerco, Inc.
Commtel Communications Inc.
Community Service Telephone Co.
C-R Communications, Inc.
C-R Long Distance, Inc.
C-R Telephone Company
El Paso Long Distance Company
Ellensburg Telephone Company
Elltel Long Distance Corp.
Enhanced Communications of Northern New England Inc.
ExOp of Missouri, Inc.
FairPoint Broadband, Inc.
FairPoint Carrier Services, Inc.
FairPoint Communications Missouri, Inc.
FairPoint Communications Solutions Corp. – New York
FairPoint Communications Solutions Corp. – Virginia
FairPoint Logistics, Inc.
FairPoint Vermont, Inc.
Fremont Broadband, LLC
Fremont Telcom Co.
Fretel Communications, LLC
Germantown Long Distance Company
GIT-CELL, Inc.
GITCO Sales, Inc.
GTC Communications, Inc.
GTC Finance Corporation
GTC, Inc.
Maine Telephone Company
Marianna and Scenery Hill Telephone Company

Marianna Tel, Inc.
MJD Services Corp.
MJD Ventures, Inc.
Northern New England Telephone Operations LLC
Northland Telephone Company of Maine, Inc.
Odin Telephone Exchange, Inc.
Orwell Communications, Inc.
Peoples Mutual Long Distance Company
Peoples Mutual Services Company
Peoples Mutual Telephone Company
Quality One Technologies, Inc.
Ravenswood Communications, Inc.
Sidney Telephone Company
ST Computer Resources, Inc.
ST Enterprises, Ltd.
ST Long Distance, Inc.
St. Joe Communications, Inc.
Standish Telephone Company
Sunflower Telephone Company, Inc.
Taconic Technology Corp.
Taconic TelCom Corp.
Taconic Telephone Corp.
Telephone Operating Company of Vermont LLC
Telephone Service Company
The Columbus Grove Telephone Company
The El Paso Telephone Company
The Germantown Independent Telephone Company
The Orwell Telephone Company
UI Communications, Inc.
UI Long Distance, Inc.
UI Telecom, Inc.
Unite Communications Systems, Inc.
Utilities, Inc.
Yates City Telephone Company
YCOM Networks, Inc.

**EXHIBIT B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                          :
In re:                                    :    **Chapter 11**
                                          :
**FAIRPOINT COMMUNICATIONS, INC.,** *et al.*,:  **Case No. 09-16335 (BRL)**
                                          :
        **Debtors.**                      :    **(Jointly Administered)**
                                          :
------------------------------------------------------------x

### ORDER UNDER BANKRUPTCY CODE SECTIONS 327(a) AND 328(a) AUTHORIZING EMPLOYMENT AND RETENTION OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEBTORS

Upon the application (the "Application") of FairPoint Communications, Inc.

("FairPoint Communications") and its affiliated debtors, as debtors in possession (collectively,

"FairPoint") for the entry of an order authorizing FairPoint to employ and retain Rothschild Inc.

("Rothschild") as its financial advisor and investment banker nunc pro tunc to October 26, 2009

(the "Petition Date"); it appearing that the relief requested is in the best interests of FairPoint's

estates, its creditors, and other parties in interest; the Court having jurisdiction to consider the

Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); venue being proper before this Court pursuant to 28 U.S.C. §§

1408 and 1409; the Court having reviewed the Application and the Augustine Declaration and

being satisfied based on the representations made therein that (a) Rothschild does not hold or

represent an interest adverse to FairPoint's estates and (b) Rothschild is a "disinterested person"

as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the

Bankruptcy Code; and the Court having found that the relief requested in the Application is in

the best interest of FairPoint's estates, its creditors, and other parties in interest; and the Court

having found that the terms and conditions of Rothschild's employment, including the compensation structure set forth in the Engagement Letter (as defined herein), are reasonable as required by section 328(a) of the Bankruptcy Code; and due and proper notice of the Application having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED:

1.   The Application is granted as set forth herein, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date;

2.   Pursuant to section 328(a) of the Bankruptcy Code, FairPoint is authorized, as of the Petition Date, to employ and retain Rothschild as its financial advisor and investment banker in accordance with the terms and conditions set forth in that certain engagement letter dated as of May 12, 2009, by and between FairPoint and Rothschild (the "<u>Engagement Letter</u>"), a copy of which is attached as <u>Exhibit C</u> to the Application and incorporated by reference herein;

3.   Except as ordered in the following paragraph, FairPoint shall be bound by the compensation and expense reimbursement provisions of the Engagement Letter and all such compensation and reimbursement of expenses shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review, including under section 330 of the Bankruptcy Code;

4.   Notwithstanding anything to the contrary set forth above, the United States Trustee retains all rights to object to Rothschild's fee applications on all grounds, including but not limited to the reasonableness standard provided for in section 330 of the Bankruptcy Code, provided, however, that the number of hours expended by Rothschild shall not be the determinant of such reasonableness;

5. Rothschild's fee application shall include, among other things, time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of FairPoint in one-half hour increments, but shall be excused from keeping time in one-tenth of an hour increments;

6. None of the fees hereunder shall constitute a "bonus" or "fee enhancement" under applicable law;

7. FairPoint shall be bound by the indemnification, contribution, reimbursement, and exculpation provisions of the Engagement Letter and will indemnify and hold harmless Rothschild and its affiliates, and their respective directors, officers, members, agents, employees, and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons"), pursuant to the Engagement Letter; provided, however, that in no event shall Rothschild be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

8. In no event shall Rothschild be indemnified if FairPoint or a representative of the estate, asserts a claim for, and a court determines by final order that such claim order arose out of, Rothschild's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct;

9. FairPoint is hereby authorized to take all actions needed to effectuate the relief granted pursuant to this order in accordance with the Application;

10. Notwithstanding the possible applicability of Rules 6004(h) and 7062 of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry;

11. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7;

12. To the extent that this Order is inconsistent with the Engagement Letter or the Application, this Order shall govern; and

13. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order;

Date: _____, 2009
     New York, New York

                               _____
                               UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT C

## Engagement Letter

As of May 12, 2009

Alfred C. Giammarino
Executive Vice President and Chief Financial Officer
FairPoint Communications, Inc.
521 East Morehead Street, Suite 250
Charlotte, North Carolina 28202



Dear Mr. Giammarino:

This letter (the "Agreement") will confirm the terms and conditions of the agreement among FairPoint Communications, Inc. ("FairPoint") together with its direct and indirect subsidiaries (collectively, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as exclusive financial advisor and investment banker to the Company in connection with a possible restructuring of certain liabilities of the Company.

<u>Section 1</u>      <u>Services to be Rendered</u>.  In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Recapitalization Transaction (as defined below) or any series or combination of Recapitalization Transactions, Rothschild will perform the following services as requested by the Company:

(a)      identify, propose and/or initiate potential Recapitalization Transactions;

(b)      review and analyze the Company's financial condition and the operating and financial strategies of the Company;

(c)      review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d)      evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(e)      analyze the Company's financial liquidity and evaluate and propose alternatives, if any, to improve such liquidity;

(f)      prepare financial models which demonstrate the financial impact of any proposed Recapitalization Transaction on the Company's existing shareholders and the long term cash flow impact of any proposed Recapitalization Transaction on the Company;

(g)      review and analyze the terms and conditions of the Company's existing credit documents and tax sharing agreements in connection with evaluating any proposed Recapitalization Transaction or alternative transaction;

(h)      assist the Company and its other professionals in reviewing the terms of any proposed Recapitalization Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Recapitalization Transaction;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com



(i)     determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Recapitalization Transaction;

(j)     advise the Company on the risks and benefits of considering a Recapitalization Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(k)     review, analyze and provide recommendations regarding any proposals the Company receives from third parties in connection with a Recapitalization Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(l)     advise, assist and/or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, public utility commissions, Verizon Communications Inc., or claimants against the Company and/or their respective representatives in connection with a Recapitalization Transaction, in each case, at the direction of the Company;

(m)     assist with the preparation and review of presentations, documents and other materials for the Company's Board of Directors, creditor groups and other interested parties (including, but not limited to, any public utility commissions and Verizon Communications Inc.);

(n)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(o)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(p)     render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

As used herein, the term "Recapitalization Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against FairPoint, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects material changes in any of the Company's outstanding indebtedness and/or other liabilities (whether on or off balance sheet) including, without limitation, any exchange, repurchase (other than open market repurchases conducted by

the Company from time to time) or forgiveness of any material portion thereof; (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in the ordinary course of business, any material portion of the assets or operations of the Company (except for certain of the Company's assets, which assets were held by the Company prior to its merger with Northern New England Spinco Inc., for which the Company is currently in discussions or has previously provided financial or other operational data pursuant to confidentiality agreements and for which the Company has not requested that Rothschild provide services hereunder) or (y) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company; (c) other than in the ordinary course of business, any acquisition, directly or indirectly, by the Company, whether in a single transaction, multiple transactions or a series of transactions, any outstanding or newly-issued shares of another person's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of another person, for the purpose of effecting a recapitalization or change of control of the other person; (d) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction, whether or not pursuant to a Plan; or (e) any transaction substantially similar to any of the foregoing.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Recapitalization Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

<u>Section 2</u>     <u>Information Provided by the Company.</u>

(a)     The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information

and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)     The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company; or (ii) the Company's reliance on such information.

(c)     All Information which is non-public information concerning the Company, regardless of the manner or medium in which it is furnished, by or on behalf of the Company, whether before or after the date of this Agreement, together with analyses, compilations, studies or other documents or records prepared by Rothschild's or any of Rothschild's affiliates or any of their respective directors, employees, agents, consultants, accountants, attorneys, or advisors (collectively, and as used with respect to any party, "Representatives") to the extent the same contain or are generated from such information (collectively, "Confidential Information") which is given to Rothschild by the Company or its Representatives will be used by Rothschild and its Representatives solely in the course of the performance of the services hereunder and will be treated confidentially by Rothschild and its Representatives for so long as it remains non public; provided, that Confidential Information may be provided to Rothschild's Representatives who need to know such information for the purpose of providing the services hereunder (it being understood that such Representatives shall be informed by Rothschild of the confidential nature of such information and shall be directed by Rothschild to treat such information confidentially). Except as otherwise required by law or judicial or regulatory process (provided that under such circumstances, if permitted by such law or judicial or regulatory process, the Company is given prompt prior written notice of such requirement or request and the scope of such disclosure is, at the Company's expense, limited to the maximum extent possible), Rothschild and its Representatives will not disclose any Confidential Information to a third party without FairPoint's consent. Rothschild agrees that it shall be responsible for any breach of this Agreement by any of its Representatives.

Section 3    Application for Retention of Rothschild.  In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code.  The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon.  Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications.  In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the New Capital Fee, the Debt Purchase Fee, the Recapitalization Fee, the Work Fee and the Credit Facility



Amendment Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4     Fees of Rothschild.   As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)     Commencing as of the date hereof, whether or not a Recapitalization Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month.  The initial Monthly Fee shall be pro-rated based on the commencement of services as of the date hereof.  The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

(b)     A recapitalization fee (the "Recapitalization Fee") payable in cash upon the consummation of a Recapitalization Transaction equal to $8.0 million; provided, that in connection with any Recapitalization Transaction solely involving FairPoint's 13.125% Senior Notes due 2018 (the "Bonds"), the Recapitalization Fee payable hereunder shall equal (i) $5.0 million in the event that such Recapitalization Transaction is consummated "out-of-court"; (ii) $4.5 million in the event that such Recapitalization Transaction is consummated as part of a "pre-packaged" Plan in which the necessary votes were solicited and obtained in order to confirm a Plan prior to the commencement of a Bankruptcy Case; (iii) $4.0 million in the event that such Recapitalization Transaction is consummated as part of any "pre-negotiated" or "pre-arranged" Plan conceived prior to the commencement of a Bankruptcy Case; and (iv) $3.5 million upon the consummation of any other Recapitalization Transaction solely involving the Bonds; provided, further that in the event that the Company determines to attempt to consummate a Recapitalization Transaction involving the Bonds pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended (a "3(a)(9) Transaction"), Rothschild will be paid a fee equal to $5.0 million (the "Work Fee") payable prior to the commencement of such 3(a)(9) Transaction, which Work Fee shall be in lieu of all rights of Rothschild to receive a Recapitalization Fee

(c)     A credit facility amendment fee (the "Credit Facility Amendment Fee") equal to $750,000 in connection with a transaction that solely involves a material amendment to the Credit Agreement, dated March 31, 2008, among FairPoint, Northern New England Spinco Inc., Bank of America, N.A, as syndication agent, Morgan Stanley Senior Funding, Inc. and Deutsche Bank Securities Inc., as co-documentation agents, and Lehman Commercial Paper Inc., as administrative agent and lenders party thereto, as amended (the "Credit Agreement"). For avoidance of doubt, (i) any modification to the Credit Agreement which primarily permits the Bonds to improve their position in the overall capital structure of the Company shall not constitute a material amendment to the Credit Agreement and (ii) no Recapitalization Fee shall be payable nor shall a Recapitalization Transaction occur solely upon a material amendment to the Credit Agreement.

(d)    A debt purchase fee (the "Debt Purchase Fee") equal to 1.0% of the face amount of any outstanding debt of the Company purchased pursuant to any tender offers and/or Plan (a "Debt Purchase"). The Debt Purchase Fee shall be payable upon the closing of the transaction by which the debt purchase relates. For avoidance of doubt, no Debt Purchase Fee will be payable with respect to any open market purchases by the Company of its debt securities.

(e)    A new capital fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any new senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any new junior secured debt raised; (iii) 3.0% of the face amount of any new senior or subordinated unsecured debt raised and (iv) 5.0% of any new equity capital, or capital convertible into equity, raised each, (a "New Capital Raise"). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, any New Capital Raise for which a New Capital Fee shall be payable hereunder must provide for new capital to be made available to the Company and the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company; provided, however, that (i) the portion of any financing which consists simply of elevating existing pre-bankruptcy indebtedness to priority post-bankruptcy indebtedness status pursuant to a debtor-in-possession financing agreement shall not be deemed to be a New Capital Raise and (ii) existing obligations which are converted to any other obligation of the Company shall not be deemed a New Capital Raise.

(f)    To the extent the Company requests that Rothschild perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Section 5    Credit.    Rothschild shall credit against the Recapitalization Fee or Work Fee, as applicable, to the extent not otherwise credited hereunder: (a) 50% of the Monthly Fees paid in excess of $600,000, but less than or equal to $1.2 million, plus 100% of Monthly Fees paid in excess of $1.2 million, but less than or equal to $2.4 million, plus 50% of Monthly Fees paid in excess of $2.4 million (the "Monthly Fee Credit"); (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"); (c) 100% of any Debt Purchase Fees paid (the "Debt Purchase Fee Credit"); and (d) 100% of any Credit Facility Amendment Fee paid (the "Credit Facility Amendment Fee Credit") provided that the sum of any Monthly Fee Credit, New Capital Fee Credit, Debt Purchase Fee Credit and Credit Facility Amendment Fee Credit shall not exceed the Recapitalization Fee or Work Fee, as applicable. In no event shall the aggregate amount of fees

payable under clauses (b) through (e) of Section 4 above, net of any applicable credits (including, without limitation, all credits applicable to Monthly Fees), exceed $10 million.

Section 6    Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court).  Reasonable expenses shall also include, but not be limited to, reasonable expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.  If a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such reasonable expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7    Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein.   Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8    Term.  The term of Rothschild's engagement shall commence on the date hereof and shall extend until the consummation of a Recapitalization Transaction.   This Agreement may be terminated by either the Company or Rothschild by providing thirty (30) days advance notice in writing.  If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(b) hereof); provided, that the final Monthly Fee will be pro-rated for any incomplete monthly period of service.  Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A.  The Company must act in good faith when making any determination to terminate this Agreement and shall not terminate this Agreement for the primary purpose of avoiding paying any of the fees payable to Rothschild hereunder.

Section 9    Miscellaneous.

(a)   Administrative Expense Priority.   In a Bankruptcy Case of FairPoint Communications, Inc.  or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and

shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)     *Survival, Successors & Assigns*.  Sections 2(c) and 4 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement.  The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns.  The Company shall use its best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)     *Benefit of Agreement; No Reliance by Third Parties*.  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild.  In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild or as otherwise provided in this Agreement.  Similarly, Rothschild agrees that it will not, and will not permit any of its affiliates to, make any public reference to the Company except with the prior written consent of FairPoint or as otherwise provided in this Agreement.

(d)     *Nature of Relationship*.  The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company.  The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)     *Rothschild Affiliates*. Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment



banking institutions located worldwide (the "Affiliated Entities"). None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities be provided access to any Confidential Information described in Section 2(c) hereof or provide services to the Company in connection with the matters contemplated hereby. Rothschild agrees that it shall establish and maintain appropriate "firewalls" and/or "ethical walls" designed to ensure that no Confidential Information shall be disclosed between and with respect to the Affiliated Entities and Rothschild's employees, agents, consultants or advisors working on a Recapitalization Transaction and that such "firewalls" or "ethical walls" shall be established and maintained in accordance with Rothschild's internal policies and procedures and federal and state securities laws. The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities. Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f) *Public Announcements*. The Company acknowledges that Rothschild may, after written consent from FairPoint, which consent will not be unreasonably withheld, at its option and expense, after announcement of a Recapitalization Transaction, New Capital Raise or Debt Purchase place announcements and advertisements or otherwise publicize such transaction in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such transaction(s). The Company further consents to Rothschild's use or display of the Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities. Rothschild agrees that it will not, and will not permit any of its affiliates to, make any public reference to the Company prior to the announcement of a Recapitalization Transaction, except with the prior written consent of FairPoint.

(g) *CHOICE OF LAW: JURISDICTION*. THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK

OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. FAIRPOINT CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT ITS CHIEF FINANCIAL OFFICER SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(h)     *Waiver of Jury Trial*. Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim between the parties upon, arising out of or in connection with this Agreement or any Recapitalization Transaction, Debt Purchase or New Capital Raise. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(i)     *Entire Agreement*. This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(j)     *Authority*. Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(k)     *Counterparts*. This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to



this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(l)  *Notices.*  Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth above, Attn: Alfred C. Giammarino, with a copy to Shirley J. Linn, Executive Vice President and General Counsel and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Neil A. Augustine, with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.

If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____
Neil A. Augustine
Managing Director

By: _____
Christopher R. Lawrence
Co-Head of Investment Banking

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct and indirect subsidiaries:

FAIRPOINT COMMUNICATIONS, INC.

By: _____
Name: Eugene B. Johnson
Title: Chief Executive Office

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Recapitalization Transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or

(<u>b</u>) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, at its option, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild (which consent will not be unreasonably withheld, delayed or conditioned), settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (<u>i</u>) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (<u>ii</u>) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (<u>x</u>) the Company has failed promptly to assume the defense and employ counsel or (<u>y</u>) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; <u>provided</u> that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel in connection with any such Action in the same jurisdiction. No Indemnified Party will, without the prior written consent of the Company (which consent will not be unreasonably withheld, delayed or conditioned), settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not the Company is a party thereto) subject to the provisions of this Exhibit A.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (<u>a</u>) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (<u>b</u>) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided

by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its commercially reasonable efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

As of May 12, 2009

Alfred C. Giammarino
Executive Vice President and Chief Financial Officer
FairPoint Communications, Inc.
521 East Morehead Street, Suite 250
Charlotte, North Carolina 28202



Dear Mr. Giammarino:

This letter shall serve to acknowledge and confirm that FairPoint Communications, Inc. (the "Company') is jointly and severally obligated, together with its direct and indirect subsidiaries listed on Exhibit A attached hereto, for all obligations arising under the engagement letter, dated as of May 12, 2009, between Rothschild Inc. and the Company (as such engagement letter may be amended or supplemented from time to time).

Please acknowledge and confirm your agreement with the foregoing by signing this letter in the space designated below and returning it to me for our file.

Very truly yours,

ROTHSCHILD INC.

By: _____
Neil A. Augustine
Managing Director

Accepted and Agreed to as of the date first
written above on behalf of itself and
its direct and indirect subsidiaries
listed on Exhibit A attached hereto:

FAIRPOINT COMMUNICATIONS, INC.

By: _____
Name:
Title:

Attachment

384405

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Neil A. Augustine
Managing Director
Telephone 212 403-5411
Facsimile 212 403-3734
Email neil.augustine@rothschild.com

※ R

## Exhibit A

BE Mobile Communications, Incorporated
Bentleyville Communications Corporation
Berkshire Cable Corp.
Berkshire Cellular, Inc.
Berkshire Net, Inc.
Berkshire New York Access, Inc.
Berkshire Telephone Corporation
Big Sandy Telecom, Inc.
Bluestem Telephone Company
C & E Communications, Ltd.
Chautauqua & Erie Communications, Inc.
Chautauqua and Erie Telephone Corporation
China Telephone Company
Chouteau Telephone Company
Columbine Telecom Company
Comerco, Inc.
Commtel Communications Inc.
Community Service Telephone Co.
C-R Communications, Inc.
C-R Long Distance, Inc.
C-R Telephone Company
El Paso Long Distance Company
Ellensburg Telephone Company
Elltel Long Distance Corp.
Enhanced Communications of Northern New England Inc.
ExOp of Missouri, Inc.
FairPoint Broadband, Inc.
FairPoint Carrier Services, Inc.
FairPoint Communications Missouri, Inc.
FairPoint Communications Solutions Corp. – New York
FairPoint Communications Solutions Corp. – Virginia
FairPoint Logistics, Inc.
FairPoint Vermont, Inc.
Fremont Broadband, LLC
Fremont Telcom Co.

❀ R

Fretel Communications, LLC
Germantown Long Distance Company
GIT-CELL, Inc.
GITCO Sales, Inc.
GTC Communications, Inc.
GTC Finance Corporation
GTC, Inc.
Maine Telephone Company
Marianna and Scenery Hill Telephone Company
Marianna Tel, Inc.
MJD Services Corp.
MJD Ventures, Inc.
Northern New England Telephone Operations LLC
Northland Telephone Company of Maine, Inc.
Odin Telephone Exchange, Inc.
Orwell Communications, Inc.
Peoples Mutual Long Distance Company
Peoples Mutual Services Company
Peoples Mutual Telephone Company
Quality One Technologies, Inc.
Ravenswood Communications, Inc.
Sidney Telephone Company
ST Computer Resources, Inc.
ST Enterprises, Ltd.
ST Long Distance, Inc.
St. Joe Communications, Inc.
Standish Telephone Company
Sunflower Telephone Company, Inc.
Taconic Technology Corp.
Taconic TelCom Corp.
Taconic Telephone Corp.
Telephone Operating Company of Vermont LLC
Telephone Service Company
The Columbus Grove Telephone Company
The El Paso Telephone Company
The Germantown Independent Telephone Company

The Orwell Telephone Company
UI Communications, Inc.
UI Long Distance, Inc.
UI Telecom, Inc.
Unite Communications Systems, Inc.
Utilities, Inc.
Yates City Telephone Company
YCOM Networks, Inc.

# <u>EXHIBIT D</u>

## Augustine Declaration

Luc A. Despins, Esq.
James T. Grogan, Esq.
PAUL HASTINGS JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                            :

**In re:**                              :     **Chapter 11**
                            :

**FAIRPOINT COMMUNICATIONS, INC.,** *et al.*,:  **Case No. 09-16335 (BRL)**
                            :

          **Debtors.**            :     **(Jointly Administered)**
                            :
-------------------------------------------------------------x

**DECLARATION OF NEIL A. AUGUSTINE IN SUPPORT OF DEBTORS'**
**APPLICATION FOR ENTRY OF ORDER, UNDER BANKRUPTCY**
**CODE SECTIONS 327(a) AND 328(a), AUTHORIZING EMPLOYMENT**
**AND RETENTION OF ROTHSCHILD INC. AS**
**FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEBTORS**

Neil A. Augustine makes the declaration under 28 U.S.C. § 1746 and states:

1.       I am over the age of 18 and competent to testify.  I am a Managing Director of

the firm Rothschild Inc. ("Rothschild"), an international investment banking firm with more than

forty (40) offices in more than thirty (30) countries, including an office located at 1251 Avenue

of the Americas, New York, New York 10020.  I am duly authorized to make this declaration on

behalf of Rothschild and in support of the Application (the "Application") of FairPoint

Communications, Inc. ("FairPoint Communications") and its affiliated debtors, as debtors in

possession (collectively, "FairPoint") for entry of an order authorizing FairPoint to employ and

2

retain Rothschild as financial advisor and investment banker for FairPoint in connection with its chapter 11 cases. I submit this affidavit in compliance with sections 105, 327, 328 and 1107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and to provide the disclosure required under Rule 2014(1), 2016 and 5002 of the Federal Rules of Bankruptcy procedure (the "Bankruptcy Rules"). Unless otherwise stated in this declaration, I have personal knowledge of the matters set forth herein.

## Rothschild's Qualifications

2.  Rothschild is a member of one of the world's leading independent investment banking groups, with more than forty (40) offices in more than thirty (30) countries, including an office located at 1251 Avenue of the Americas, New York, New York 10020. Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, and other financial advisory services, and with particular experience in providing high-quality financial advisory services to financially troubled companies. Rothschild is an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes and secured creditors in a variety of industries. Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings. Moreover, Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

3.  Rothschild and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Rothschild's business reorganization professionals have extensive experience in advising debtors, creditors, and other constituents in chapter 11 cases and have served as financial and strategic advisors in numerous cases, including, among

others:  Atlantic Express Transportation Group, Barney's, Inc., Bedford Fair Industries, BHM Technologies Holdings, Inc., Bradlees', Inc., Cadence Innovation LLC, Circuit City Stores, Inc., Comdisco, Inc., Crown Vantage, Inc., Delphi Corporation, Edison Brothers Stores, Inc., Federal Mogul Corp., Friedman's, Inc., Geneva Steel Company, Globe Manufacturing, Guilford Mills, Inc., Heartland Steel, HomePlace, Inc., Hilex Poly Co. LLC, International Wire Group, James River Coal Company, Key Plastics LLC, La Roche Industries, Inc., Leiner Health Products, Inc., Milacron Inc., Motor Coach Industries, Inc., Mpower Holdings Corp., New World Pasta Company, Northwest Airlines, Inc., Oxford Automotive, Inc., Pacific Gas & Electric Company, PPI Holdings, Inc., Recycled Paper Greetings, Inc., Remy Worldwide Holdings, Inc., Sea Launch Co., LLC, Service Merchandise Corp., Special Metals Corporation, Solutia, Inc., Superior Telecom Inc., Sun-Times Media Group, Inc., The FINOVA Group Inc., Thermadyne Holdings Corp., Thorn Apple Valley, Inc., Tower Automotive, Trans World Airlines, Today's Man, Inc., Tronox Inc., UAL Corporation, VeraSun Energy Corporation, Viasystems Group, Inc., Visteon Corp., WestPoint Stevens, Inc., Werner Holding Company, Wilcox & Gibbs, Inc. and Zenith Electronics, Inc.

4.      In light of the size and complexity of these chapter 11 cases, the resources, capabilities and experience of Rothschild in advising FairPoint is crucial to the success of these chapter 11 cases.  An experienced investment bank and financial advisor, such as Rothschild, fulfills a critical service that complements the services provided by FairPoint's other professionals.  As discussed in detail below, Rothschild will concentrate its efforts on serving as FairPoint's financial advisor and investment banker in these chapter 11 cases and, more specifically, in formulating strategic alternatives and assisting FairPoint in its efforts with regard to a restructuring, financing, and/or sale (or any combination thereof).  For the aforementioned

reasons, FairPoint requires the services of a capable and experienced financial advisor and investment banker such as Rothschild.

5.     Prior to the Petition Date, on May 12, 2009, FairPoint engaged Rothschild to provide general investment banking and financial advice in connection with FairPoint's efforts to pursue an out-of-court restructuring of all or a significant portion of FairPoint's outstanding indebtedness, and to prepare for the commencement of these chapter 11 cases after such effort failed.

6.     In rendering prepetition services to FairPoint in connection with these matters, Rothschild has worked closely with FairPoint's management and other retained professionals and has become well acquainted with FairPoint's business operations, capital structure, key stakeholders, financing documents and other material information.  Accordingly, Rothschild has developed significant expertise regarding FairPoint that will assist it in rendering strategic advice and facilitating FairPoint's efforts to maximize value in these chapter 11 cases.  I believe that Rothschild and the professionals it employs are uniquely qualified to advise FairPoint in the matters for which Rothschild is proposed to be employed.

7.     Rothschild's capabilities and experience in providing advice to FairPoint is integral to FairPoint's restructuring efforts and will complement the services to be provided by FairPoint's other restructuring professionals.  For all of the foregoing reasons, FairPoint needs the services of a highly capable financial advisor with a deep bench of experience such as Rothschild.

## Professional Compensation

8.     Rothschild has rendered and shall continue to render financial advisory services to FairPoint in accordance with the terms and conditions set forth in that certain engagement letter

dated as of May 12, 2009, by and between FairPoint and Rothschild (the "Engagement Letter") attached to the Application as Exhibit C and incorporated by reference herein. Accordingly, I make this declaration in support of an order authorizing such employment and retention.

9.     All of the services that Rothschild will provide to FairPoint will be at the request of FairPoint and shall be rendered in compliance with customary market practice of the financial advisory and investment banking profession.

10.     Rothschild will seek compensation for professional services rendered and reimbursement of expenses incurred as described in the Application and the Engagement Letter in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and the guidelines established by the Office of the United States Trustee for the Southern District of New York (the "Trustee Guidelines"). Further, as Rothschild seeks approval of the proposed compensation terms set forth in the Engagement Letter under section 328(a) of Bankruptcy Code, Rothschild believes that its compensation should not be subject to any additional review under section 330 of the Bankruptcy Code and should not be deemed to constitute a "bonus" or "fee enhancement" under applicable law.

11.     Rothschild also intends to file fee applications for the allowance of compensation for services provided and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, and any applicable orders of this Court. Rothschild has made FairPoint aware that it is not the typical practice of Rothschild's investment banking professionals to maintain detailed time records similar to those ordinarily kept by attorneys and other professionals who are

compensated on an hourly basis. Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rothschild's applications for compensation and expenses will be paid by FairPoint, pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

12.     When submitting its fee application Rothschild will include a general description of the services provided to FairPoint, the approximate time spent in rendering such services and a listing of the individuals who performed such services.

13.     FairPoint does not owe Rothschild any fees for services performed or expenses incurred pursuant to the Engagement Letter prior to the Petition Date. According to Rothschild's records, during the 90 days before commencement of the chapter 11 cases, Rothschild received $1,150,239.62 for professional services performed and expenses incurred  (including $50,000 in estimated expenses incurred but not yet invoiced as of the date hereof).  To the extent such estimated expenses exceed actual expenses incurred, such excess shall be applied to subsequent invoices.

### Rothschild's Disinterestedness

14.     In connection with Rothschild's proposed employment and retention by FairPoint, Rothschild undertook a conflicts analysis to determine whether it had any conflicts or other relationships that might cause it to represent or hold any interest adverse to FairPoint's estates. In connection with this inquiry, Rothschild obtained from FairPoint and/or its representatives the names of individuals and entities that may be parties-in-interest in these chapter 11 cases (the "Interested Parties"), a copy of which is attached hereto as Schedule 1.

15.     To the best of my knowledge and belief, Rothschild has not represented any Interested Parties in connection with matters relating to FairPoint, its estates, assets, or

businesses and will not represent other entities which are creditors of, or have other relationships to, FairPoint in matters relating to these chapter 11 cases except as set forth herein and in Schedule 2 attached hereto.

16.     Rothschild provides financial advice and investment banking services to an array of clients in the areas of restructuring and distressed debt.  As a result, Rothschild has represented, and may in the future represent, certain Potential Parties in Interest in matters unrelated to these chapter 11 cases, either individually or as part of representation of a committee of creditors or interest holders.  To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these representations are adverse to FairPoint's interests.

17.     To the best of my knowledge and belief, neither Rothschild nor I, nor any other employee of Rothschild that will work on FairPoint's engagement has any connection with or holds any interest adverse to FairPoint, its estates or the Potential Parties in Interest in matters related to Rothschild retention in these chapter 11 cases, except (i) as set forth in Schedule 2 and (ii) as otherwise set forth below:

    (a) Before the commencement of these cases, Rothschild rendered prepetition services to FairPoint.  As noted above, although Rothschild's records indicate that it is not owed any amounts in respect of prepetition services provided to FairPoint, it is possible that certain expenses that were incurred by Rothschild, and that are reimbursable under the terms of the Engagement Letter, were not yet reflected on Rothschild's books and records as of the Commencement Date and were in excess of $50,000 in estimated expenses identified in paragraph 13 above.  Upon entry of the Order approving the Application, Rothschild will waive any claim for such unreimbursed expenses in excess of amounts paid to Rothschild pre-petition.

    (b) Rothschild is a large investment banking firm and has likely provided services unrelated to FairPoint for companies and individuals that have conducted business in the past and/or currently conduct business with FairPoint, and who may be creditors of FairPoint.  To the best of my knowledge, information and belief, Rothschild's services to these parties

were and are wholly unrelated to FairPoint, its estates or these chapter 11 cases.

(c) As part of its practice, Rothschild appears in numerous cases, proceedings, and transactions involving many different professionals, some of which may represent claimants and parties in interest in FairPoint's chapter 11 cases. Furthermore, Rothschild has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to FairPoint herein in matters upon which Rothschild is to be engaged.

(d) Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). However, none of the Affiliated Entities is being retained in connection with this engagement and none of the professionals or employees of the Affiliated Entities will provide services to FairPoint in connection with this engagement. None of the professionals or employees of Rothschild has discussed or will discuss FairPoint's cases with any professional or employee of the Affiliated Entities. Thus, there has not been and will not be any flow of information between Rothschild and any Affiliated Entity with respect to any matter pertaining to FairPoint or its chapter 11 cases. Rothschild can make no representation as to the disinterestedness of the professionals or employees of the Affiliated Entities in respect of FairPoint's chapter 11 cases.

18. To the best of my knowledge, no individual assignment referenced on Schedule 2 currently accounts for more than 1.00% of Rothschild's gross annual revenues.

19. To the best of my knowledge, information, and belief, except as described herein, Rothschild has not been retained to assist any entity or person other than FairPoint on matters relating to these chapter 11 cases.

20. If any new relevant facts or relationships are discovered or arise during the pendency of these chapter 11 cases, Rothschild will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit as required by Bankruptcy Rule 2014.

21. I am not related or connected to and, to the best of my knowledge, no other professional of Rothschild who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York who handle bankruptcy cases, or any employee in the Office of the United States Trustee for the Southern District of New York.

22. To the best of my knowledge, Rothschild has no agreement with any other entity to share with such entity any compensation received by Rothschild in connection with FairPoint's bankruptcy cases.

23. Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of Rothschild, I, nor any employee of Rothschild who will work on the engagement holds or represents any interest adverse to FairPoint or its estates, and Rothschild is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14), as modified by § 1107(b) of the Bankruptcy Code, in that Rothschild, and its professionals and employees who will work on the engagement:

    (a) are not creditors, equity security holders, or insiders of FairPoint;

    (b) were not, within two years before the date of filing of FairPoint's chapter 11 petitions, a director, officer, or employee of FairPoint; and

    (c) do not have an interest materially adverse to the interest of FairPoint's estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in FairPoint, or for any other reason.

I hereby declare, pursuant to 28 U.S.C. § 1746, and under the penalty of perjury, that the foregoing is true and correct.

Date: October 26, 2009                                ROTHSCHILD INC.


                                                      _/s/ Neil A. Augustine_____
                                                      By:   Neil A. Augustine
                                                      Title: Managing Director

# **SCHEDULE 1**

## List of Interested Parties

BE Mobile Communications, Incorporated
Bentleyville Communications Corporation
C-R Communications, Inc.
Berkshire Cable Corp.
Berkshire Cellular, Inc.
Berkshire Net, Inc.
Berkshire New York Access, Inc.
Berkshire Telephone Corporation
Big Sandy Telecom, Inc.
Bluestem Telephone Company
C & E Communications, Ltd.
Chautauqua & Erie Communications, Inc. (d/b/a C& E Teleadvantage)
Chautauqua and Erie Telephone Corporation
China Telephone Company
Chouteau Telephone Company
Columbine Telecom Company (f/k/a Columbine Acquisition Corp.)
Comerco, Inc.
Commtel Communications Inc.
Community Service Telephone Co.
C-R Long Distance, Inc.
C-R Telephone Company
El Paso Long Distance Company
Ellensburg Telephone Company
Elltel Long Distance Corp.
Enhanced Communications of Northern New England Inc.
ExOp of Missouri, Inc.
FairPoint Broadband, Inc.
FairPoint Carrier Services, Inc. (f/k/a FairPoint Communications Solutions Corp., f/k/a FairPoint Communications Corp.)
FairPoint Communications, Inc. (f/k/a MJD Communications, Inc.)
FairPoint Communications Missouri, Inc.
FairPoint Communications Solutions Corp. – New York
FairPoint Communications Solutions Corp. – Virginia
FairPoint Logistics, Inc. (f/k/a MJD Capital Corp.)
FairPoint Vermont, Inc.
Fremont Broadband, LLC
Fremont Telcom Co.
Fretel Communications, LLC
Germantown Long Distance Company
GIT-CELL, Inc.
GITCO Sales, Inc.
GTC Communications, Inc. (f/k/a TPG Communications, Inc.)
GTC Finance Corporation (f/k/a TPGC Finance Corporation)
GTC, Inc.
Maine Telephone Company

Marianna and Scenery Hill Telephone Company
Marianna Tel, Inc.
MJD Services Corp.
MJD Ventures, Inc.
Northern New England Telephone Operations LLC
Northland Telephone Company of Maine, Inc.
Odin Telephone Exchange, Inc.
Orwell Communications, Inc.
Peoples Mutual Long Distance Company
Peoples Mutual Services Company
Peoples Mutual Telephone Company
Quality One Technologies, Inc.
Ravenswood Communications, Inc.
Sidney Telephone Company
ST Computer Resources, Inc.
ST Enterprises, Ltd.
ST Long Distance, Inc.
St. Joe Communications, Inc.
Standish Telephone Company
Sunflower Telephone Company, Inc.
Taconic Technology Corp.
Taconic TelCom Corp.
Taconic Telephone Corp.
Telephone Operating Company of Vermont LLC
Telephone Service Company
The Columbus Grove Telephone Company
The El Paso Telephone Company
The Germantown Independent Telephone Company
The Orwell Telephone Company
UI Communications, Inc.
UI Long Distance, Inc.
UI Telecom, Inc.
Unite Communications Systems, Inc.
Utilities, Inc.
Yates City Telephone Company
YCOM Networks, Inc.

## Current and Former Trade Names

C&E Teleadvantage
FairPoint Communications
FairPoint Communications Solutions Corp.
FairPoint Communications Long Distance
FairPoint Internet
FairPoint Long Distance
FairPoint New England

FairPoint Utilities
GTCom
MJD Capital Corp
STE/NE Acquisition Corp.

**<u>Secured Creditors</u>**

Bank of America, N.A.
CoBank, ACB
Deutsche Bank Trust Company Americas
Lehman Commercial Paper Inc.
Merrill Lynch Capital Corporation
Morgan Stanley Senior Funding Inc.
Wachovia Bank, National Association
AIM FLOATING RATE FUND
AIMCO CLO SERIES 2005 A
AIMCO CLO SERIES 2006 A
ALADDIN FLEXIBLE INVESTMENT FUND SPC SERIES 2008 1
ALADDIN FLEXIBLE INVESTMENT FUND SPC SERIES 2007 1
ALLSTATE LIFE INSURANCE COMPANY
AMERICAN EXPRESS COMPANY RETIREMENT PLAN
AMERIPRISE FINANCIAL RETIREMENT PLAN
AMMC CLO IV LIMITED
AMMC CLO V LIMITED
AMMC CLO VI LIMITED
ANCHORAGE CAPITAL MASTER OFFSHORE LTD
AVENUE CLO FUND LTD
AVENUE CLO II LTD
AVENUE CLO III LTD
AVENUE CLO IV LTD
AVENUE CLO V LTD
AVENUE CLO VI LTD
BACCHUS US 2006 1 LTD
BANK OF AMERICA TRADE
BARCLAYS BANK PLC
BLT 18 LLC
BOSTON HARBOR CLO 2004-1 LTD
CALLIDUS DEBT PARTNERS CLO FUND IV LTD
CALLIDUS DEBT PARTNERS CLO FUND VI LTD
CFIP MASTER FUND LTD
CHATHAM ASSET HIGH YIELD MASTER FUND LTD
CHATHAM ASSET LEVERAGED LOAN OFFSHORE FUND, LTD
CHGO LOAN FUNDING LTD
CONFLUENT 4 LIMITED
CREDIT SUISSE LOAN FUNDING LLC
CUNA MUTUAL INSURANCE SOCIETY

DEBELLO INVESTORS LLC
DELAWARE PUBLIC EMPLOYEES RETIREMENT SYSTEM
DIVERSIFIED CREDIT PORTFOLIO LTD
DRYDEN IX SENIOR LOAN FUND 2005 PLC
DRYDEN VII LEVERAGED LOAN CDO 2004
DRYDEN VIII LEVERAGE LOAN CDO 2005
DRYDEN XI LEVERAGED LOAN CDO 2006
DRYDEN XVI LEVERAGED LOAN CDO 2006
DRYDEN XVIII LEVERAGED LOAN 2007 LIMITED
DRYDEN XXI LEVERAGED LOAN CDO LLC
DUANE STREET CLO I LTD
DUANE STREET CLO II LTD
DUANE STREET CLO III LTD
DUANE STREET CLO IV LTD
DUKE UNIVERSITY LONG TERM POOL
EATON VANCE FLOATING RATE INCOME TRUST
EATON VANCE INSTITUTIONAL SENIOR LOAN FUND
EATON VANCE SENIOR FLOATING-RATE TRUST
EATON VANCE VT FLOATING-RATE INCOME FUND
EVERGREEN HIGH INCOME FUND
EVERGREEN INCOME ADVANTAGE FUND
EVERGREEN MULTI SECTOR INCOME FUND
EVERGREEN VA HIGH INCOME FUND
FIDELITY CENTRAL INV PORTFOLIOS LLC FIDELITY FLOATING RATE CENTRAL
INVESTMENT PORTFOLIO
FLOATING RATE SENIOR LOAN FUNDING I LLC (f/k/a) WB LOAN FUNDING 4 LLC
FUSION FUNDING LIMITED
GALLATIN CLO II 2005-1 LTD
GALLATIN CLO III 2007 1 LTD (f/k/a) GALLATIN CLO III 2006 1 LTD
GANNETT PEAK CLO I LTD
GENERAL ELECTRIC CAPITAL CORPORATION
GLOBAL SENIOR LOAN INDEX FUND I BV
GOLDMAN SACHS CREDIT PARTNERS LP
GRACIE CREDIT OPPORTUNITIES MASTER FUND LP
GRAYSON & CO
GRAYSTON CLO II 2004-1 LTD
GREYROCK CDO LTD
GULF STREAM COMPASS CLO 2003-1 LTD
GULF STREAM COMPASS CLO 2004-1 LTD
GULF STREAM COMPASS CLO 2005-II LTD
HALBIS DISTRESSED OPPORTUNITIES MASTER FUND LTD
HARBOURVIEW CLO 2006 1
IG PUTNAM US HIGH YIELD INCOME FUND
IKB CAPITAL CORPORATION
INTERPOLIS PENSIOENEN GLOBAL HIGH YIELD POOL
INVESCO LIQUID LEVERAGED LOAN FUND LP

JANUS ADVISER SERIES HIGH YIELD FUND
JANUS CAPITAL FUNDS PLC JANUS US HIGH YIELD FUND (f/k/a) JANUS WORLD
FUNDS PLC HIGH YIELD FUND
JANUS HIGH YIELD FUND
JERSEY STREET CLO LTD
JOHN HANCOCK FUNDS II SPECTRUM INCOME FUND
JOHN HANCOCK TRUST SPECTRUM INCOME TRUST
JP MORGAN WHITEFRIARS INC
JP MORGAN CHASE BANK NATIONAL ASSOCIATION F/K/A JPMORGAN CHASE
BANK NA
KEYBANK NATIONAL ASSOCIATION
LANDMARK III CDO LIMITED
LANDMARK IV CDO LIMITED
LANDMARK IX CDO LTD
LANDMARK V CDO LIMITED (f/k/a) LANDMARK V CDO LTD
LANDMARK VI CDO LIMITED
LANDMARK VII CDO
LANDMARK VIII CLO LTD
LOAN FUNDING V LLC
LOOMIS SAYLES BOND FUND
LOOMIS SAYLES CLO I LTD
LOOMIS SAYLES INSTITUTIONAL HIGH INCOME FUND A SERIES OF LOOMIS
SAYLES FUND I
LOOMIS SAYLES HIGH INCOME FUND A SERIES OF LOOMIS SAYLES FUND II
LOOMIS SAYLES LEVERAGED SENIOR LOAN FUND LTD
LOOMIS SAYLES MULTI STRATEGY MASTER ALPHA LTD
LOOMIS SAYLES SENIOR LOAN FUND LLC
LOOMIS SAYLES STRATEGIC INCOME FUND
LOOMIS SAYLES US HIGH YIELD BOND TRUST
LUCENT TECHNOLOGIES INC MASTER PENSION TRUST
MALIBU CBNA LOAN FUNDING LLC
MAPS CLO FUND I LLC
MAPS CLO FUND II LTD
MARLBOROUGH STREET CLO LTD
METROPOLITAN LIFE INSURANCE COMPANY
MORGAN STANLEY SENIOR FUNDING INC
MOUNTAIN CAPITAL CLO III LTD
MOUNTAIN CAPITAL CLO IV LTD
MOUNTAIN CAPITAL CLO V LTD
NATIONWIDE DEFINED BENEFITS MASTER TRUST
NATIONWIDE INDEMNITY COMPANY
NATIXIS LOOMIS SAYLES SENIOR LOAN FUND (f/k/a) IXIS  LOOMIS SAYLES
SENIOR LOAN FUND
NAVIGATOR CDO 2004 LTD
NAVIGATOR CDO 2005 LTD
NAVIGATOR CDO 2006 LTD

NEPTUNE FINANCE CCS LTD
NEW MEXICO EDUCATIONAL RETIREMENT BOARD
NOB HILL CLO II LIMITED
NOB HILL CLO LTD
OAKTREE LOAN FUND 2X CAYMAN LP
OAKTREE LOAN FUND LP
OAKTREE SENIOR LOAN FUND LP
OAKTREE TT MULTI STRATEGY FUND LP
OCONNOR CAPITAL STRUCTURE OPPORTUNITY MASTER LIMITED
OCONNOR CREDIT OPPORTUNITY MASTER LTD
OHCCF CBNA LOAN FUNDING LLC
OLYMPIC CLO I LTD
OPPENHEIMER MASTER LOAN FUND LLC
OPPENHEIMER SENIOR FLOATING RATE FUND
PAULSON CREDIT OPPORTUNITIES MASTER LTD
PAX WORLD HIGH YIELD BOND FUND
PEQUOT SPECIAL OPPORTUNITIES FUND III LP
PORTILLO FUNDING
POST LEVERAGED LOAN MASTER FUND LP
POST TOTAL RETURN MASTER FUND LP
PPM MONARCH BAY FUNDING LLC
PRIMUS CLO II LTD
PRINCIPAL INVESTORS FUND INC BOND AND MORTGAGE SECURITIES FUND
PRINCIPAL LIFE INSURANCE COMPANY
PRINCIPAL LIFE INSURANCE COMPANY D/B/A BOND & MORTGAGE SEPARATE
ACCOUNT
PRONATIONAL INSURANCE CO.
PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY
PUBLIC EDUCATION EMPLOYEE RETIREMENT SYSTEM OF MISSOURI, THE
PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI THE
PUTNAM ASSET ALLOCATION FUNDS BALANCED PORTFOLIO (f/k/a) PUTNAM
ASSET ALLO FUNDS BAL PUTNAM INVES. MGT. LLC
PUTNAM ASSET ALLOCATION FUNDS CONSERVATIVE PORTFOLIO (f/k/a) PUTNAM
ASSET ALLOCATION CONSERVATIVE
PUTNAM ASSET ALLOCATION FUNDS GROWTH PORTFOLIO (f/k/a) PUTNAM ASSET
ALLOCATION FUND
PUTNAM CAPITAL SPECTRUM INSTITUTIONAL PORTFOLIO
PUTNAM DIVERSIFIED INCOME TRUST
PUTNAM DIVERSIFIED INCOME TRUST CAYMAN MASTER FUND
PUTNAM FLOATING RATE INCOME FUND
PUTNAM HIGH YIELD ADVANTAGE FUND
PUTNAM HIGH YIELD TRUST
PUTNAM MASTER INTERMEDIATE INCOME TRUST
PUTNAM PREMIER INCOME TRUST
PUTNAM RETIREMENT ADVANTAGE GAA BALANCED PORTFOLIO
PUTNAM RETIREMENT ADVANTAGE GAA CONSERVATIVE PORTFOLIO

PUTNAM RETIREMENT ADVANTAGE GAA GROWTH PORTFOLIO
PUTNAM TOTAL RETURN TRUST
PUTNAM VARIABLE TRUST - PVT DIVERSIFIED INCOME FUND
PUTNAM VARIABLE TRUST PUTNAM VT HIGH YIELD FUND
PUTNAM VT GLOBAL ASSET ALLOCATION FUND
RIVERSOURCE BALANCED FUND A SERIES OF RIVERSOURCE INVESTMENTS
SERIES INC.
RIVERSOURCE DIVERSIFIED BOND FUND A SERIES OF RIVERSOURCE
DIVERSIFIED INCOME SERIES INC.
RIVERSOURCE GLOBAL BOND FUND A SERIES OF RIVERSOURCE GLOBAL SERIES
INC.
RIVERSOURCE HIGH YIELD BOND FUND A SERIES OF RIVERSOURCE HIGH YIELD
INCOME SERIES
RIVERSOURCE INCOME OPPORTUNITIES FUND A SERIES OF RIVERSOURCE BOND
SERIES INC.
RIVERSOURCE VARIABLE PORTFOLIO BALANCED FUND A SERIES OF
RIVERSOURCE VARIABLE PORTFOLIO MAN
RIVERSOURCE VARIABLE PORTFOLIO DIVERSIFIED BOND FUND A SERIES OF
RIVERSOURCE VARIABLE PORTFOLIO INCO
RIVERSOURCE VARIABLE PORTFOLIO GLOBAL BOND FUND A SERIES OF
RIVERSOURCE VARIABLE PORTFOLIO INCO
RIVERSOURCE VARIABLE PORTFOLIO HIGH YIELD BOND FUND A SERIES OF
RIVER SOURCE VARIABLE PRTFL INC SER INC.
RIVERSOURCE VARIABLE PORTFOLIO HIGH YIELD BOND FUND A SERIES OF
RIVERSOURCE VARIABLE SERIES TRUST
RIVERSOURCE VARIABLE PORTFOLIO INCOME OPPORTUNITIES FUND A SERIES
OF RIVERSOURCE VARIABLE SERIES
ROYAL MAIL PENSION PLAN
SARATOGA CLO I LIMITED
SENIOR DEBT PORTFOLIO BY BOSTON MANAGEMENT & RESEARCH (f/k/a) SENIOR
DEBT PORTFOLIO
SERVES 2006 1 LTD.
SILVER LAKE CREDIT FUND LP
SILVER OAK CAPITAL LLC
STATE BOARD OF ADMINISTRATION OF FLORIDA BY PRINCIPAL GLOBAL
INVESTORS LLC
STICHTING DEPOSITARY APG FIXED INCOME CREDITS POOL
STICHTING PENSIOENFONDS VOOR FYSIOTHERAPEUTEN
STRUCTURED ENHANCED RETURN VEHICLE TRUST SERIES 1998-1
SUNRISE PARTNERS LIMITED PARTNERSHIP
SYMPHONY CLO I LTD.
SYMPHONY CLO VI LTD.
T ROWE PRICE HIGH YIELD FUND INC.
T ROWE PRICE INSTITUTIONAL HIGH YIELD FUND
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
THRIVENT FINANCIAL FOR LUTHERANS

TMCT LLC
TPG CREDIT OPPORTUNITIES FUND LP
TPG CREDIT OPPORTUNITIES INVESTORS LP
TPG CREDIT STRATEGIES FUND LP
UBS AG STAMFORD BRANCH
USAA MUTUAL FUND TRUST INC USAA HIGH YIELD OPPORTUNITIES FUND
VERITAS CLO I LTD.
VERITAS CLO II LTD.
VIRGINIA RETIREMENT SYSTEM
WATCH TOWER CLO 1 PLC
WEXFORD CATALYST INVESTORS LLC
WEXFORD SPECTRUM INVESTORS LLC
WHITNEY CLO I LTD.
WIND RIVER CLO I LTD.
WIND RIVER CLO II TATE INVESTORS LTD (f/k/a) WIND RIVER CLO II LTD
YORK CAPITAL MANAGEMENT LP
YORKVILLE CBNA LOAN FUNDING LLC
ZOHAR II 2005 1 LIMITED (f/k/a) ZOHAR II CDO 2005 1 (f/k/a) ZOHAR II CDO 2004-1

**Significant Stockholders**

Barclays Global Investors N.A., et al.

**Bondholders**

Amalgamated Bank
Banc of America Securities, L.L.C.
Barclay's Capital, Inc./Fixed Income
BNP Paribas Securities Corp.
Brown Brothers Harriman & Co.
Citibank, N.A.
Citigroup Global Markets, Inc.
Citigroup Global Markets, Inc./Salomon Brothers
Comerica Bank
Credit Suisse Securities (USA) L.L.C.
Deutsche Bank Securities Inc.
E*Trade Securities, LLC
First Clearing L.L.C.
Goldman, Sachs & Co.
HNB National Bank
Ingalls & Snyder, L.L.C.
J.P. Morgan Clearing Corp.
JPMorgan Chase Bank, National Association
Lehman Brothers Inc.
M&I Marshall & Ilsley Bank
Merrill Lynch

Morgan Stanley & Co. Incorporated
Morgan Stanley & Co. Incorporated/Retail
Northern Trust Company (The)
PNC Bank, N.A.
Raymond James & Associates, Inc.
SSB-Trust Custody
SunTrust Bank
SunTrust Bank - DTC #2971
The Bank of New York Mellon
The Bank of New York Mellon/ Mellon Trust of New England, National Association
U.S. Bank N.A.
UBS Financial Services Inc.
Union Bank of California, N.A.
Wachovia Bank, N.A.
Wells Fargo Bank, National Association

**Indenture Trustees**

U.S. Bank National Association

**Bank Accounts**

American National Bank
Bank of America
Bank of Commerce
Bank of Idaho
BNY Mellon
Border Trust
Branch Banking and Trust
Capital City Bank
Carter Bank and Trust
Community Bank of Raymore
Fidelity Investments
First Bank
First National Bank of Germantown
First Southwest Bank
HSBC Bank USA, N.A.
Kearney Commercial Bank
Key Bank
National City Bank
National Union Bank of Kinderhook
Northwest Savings Bank
RBC Centura
Southtrust Bank (now Wachovia)
Sunflower Bank
TDBank North

Union Bank Company
Wachovia

**Insurers**

ACE American Insurance Co.
Allied World Assurance Company
Allied World Insurance
American Casualty Company (CNA)
Arch Insurance Company
Arch Insurance Group
Axis
AXIS Insurance Company
Axis Insurance Company
AXIS Surplus Ins. Co.
Beazley Insurance Company
Catlin Group Limited
Endurance Specialty Holdings
Hiscox
Illinois Union Insurance Co. (ACE)
Indemnity Ins. Co. of North America (ACE)
Iron Shore
Ironshore Specialty Insurance Co.
Landmark American
Lexington Ins. Co (AIG)
Liberty Mutual
National Union Fire Ins. Co (AIG)
PESLIC
Tokio Marine & Nichido Fire Ins. Co.
Westport Insurance Corporation
XL
XL Insurance
XL Insurance America, Inc.
XL Specialty Insurance Company

**Escrow Account Bank**

Branch Banking and Trust
Chase Manhattan Bank
Wachovia NA

**Insurance Administrators**

Sedegwick Claims Management Service Inc.
Travelers
Arrowpoint FKA Royal Indemnity

**Letters of Credit**

ACE
Travelers
Verizon

**Insurance Broker**

Beecher Carlson
Marsh USA, Inc.
Wells Fargo Insurance Services (FKA) Wachovia Insurance Services Inc.

**Current and Former Directors**

Franklin K. Bynum, Jr.
Patricia Garrison-Corbin
D. Brett Ellis
Alfred G. Giammarino
Thomas F. Gilbane Jr.
Thomas E. Griffin
David L. Hauser
Eugene B. Johnson
Robert A. Kennedy
Claude C. Lilly
Robert S. Lilien
Shirley J. Linn
Jane E. Newman
Peter G. Nixon
Susan L. Sowell
Michael R. Tuttle
Kent. R. Weldon

**Director Affiliates & Former Employers of Directors**

American Institute of Certified Public Accountants
Blumenthal Center for the Performing Arts
Cable Investments, Inc.
CDT Holdings PLC
Citizens Advisors
Coastal Broadcasting Corporation
College Foundation of the University of Virginia
College of Business and Behavioral Science at Clemson University
Crescent Resources, LLC
Custom Buildings Products, Inc.
Delancey Capital Group, LP

Duke Capital Partners, LLC
Duke Energy Corporation
DukeNet Communications, Inc.
Economics Club of New York
eMarkets, Inc.
Endurance Business Media, Inc.
Enpro Industries, Inc.
Erie Family Life Company
Erie Insurance Company
Erie Insurance Group
Exeter Trust Company
Federal Reserve Bank of Richmond
Foundation of the University of North Carolina at Charlotte, Inc.
Gilbane Building Company
Gilbane Development Company
Gilbane Inc.
Global Relief Technologies, Inc.
JC&A, Inc.
John F. Kennedy School of Government at Harvard University
Kelso & Company
LPGA Commissioner's Advisory Council
Lumina Foundation
Merchants Bancshares, Inc.
Merchants Bank
Michael Foods, Inc.
Morgan Stanley & Co. Incorporated
New Hampshire Charitable Foundation
Nortek, Inc.
North Carolina Association of Certified Public Accountants
North Carolina Zoological Society
Organization for the Promotion and Advancement of Small Telecommunications Companies
P.G. Corbin & Company, Inc.
P.G. Corbin Asset Management, Inc.
P.G. Corbin Group
Prep for Prep
Robinson, Bradshaw & Hinson, P.A.
Senior Aide to the President of the United States
State of Georgia
The Presbyterian Church (PCUSA)
THL-PMPL Holding Corp.
Thomas H. Lee Equity Fund
Thomas H. Lee Partners, L.P.
TIAA CREF Trust Company FSB
Trilogy Capital Partners, LLC
United States Naval Academy
United States Telecom Association

United Way of Chittendon County, Vermont
University of Maine, Orono
University of New Hampshire in Durham, New Hampshire
University of New Hampshire Whittemore School of Business and Economics
University of North Carolina at Charlotte Business School
University of North Carolina at Charlotte
University of North Carolina at Charlotte Belk College of Business Administration
Vermont Bar Foundation
Vermont's Flynn Center for the Performing Arts

## Current and Former Officers (up to 3 years)

Jeffrey W. Allen
John P. Crowley
Rose B. Cummings
D. Brett Ellis
Gary C. Garvey
Alfred C. Giammarino
Thomas E. Griffin
David L. Hauser
Jeffery J. Heins
Lisa R. Hood
Eugene B. Johnson
Walter E. Leach, Jr.
Shirley J. Linn
Patrick L. Morse
Peter G. Nixon
David M. Remele
Susan L. Sowell
Vicky L. Weatherwax
James K. Weigert

## Professionals

Paul Hastings Janofsky & Walker LLP
BMC Group, Inc.
AlixPartners LLC
Ernst & Young LLP

## Other Professionals

BARRY HJORT, ESQ.
BLOOSTON MORDKOFSKY
BOND, SCHOENECK & KING PLLC
BRYDON SWEARENGEN & ENGLAND
DAY PITNEY LLP

DEVINE MILLIMET & BRANCH, PA
DEWEY & LEBOEUF LLP
DOWNS RACHLIN MARTIN PLLC
DUDLEY WILLIAMS & ASSOCIATES
FINDLEY DAVIES
FISCHER & DORITY, P.C.
FOLEY HOAG LLP
FORD & HARRISON LP
FRED WILLIAMSON & ASSOC INC.
GERETY LAW OFFICE
GIVENS PURSLEY LLP
GRAHAM & DUNN PC
GREER & WALKER LLP
HUNTON & WILLIAMS LLP
JAMES M. CAPLINGER, CHTD.
JSI INC.
KATTEN MUCHIN ROSENMAN LLP
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL PLLC
KIESLING
KIMBERLY K. ARGENBRIGHT, P.C.
LATHAM & WATKINS LLP
LATHROP & GAGE LLP
LAW OFFICES OF SUSAN BAHR PC
MCLANE, GRAF, RAULERSON & MIDDLETON
MEYER CAPEL, PC
MITTEL ASEN, LLC
MOORE & VAN ALLEN
MOSS ADAMS LLP
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY, LLC
RICHARD A. FINNIGAN, ESQ.
RICHARDS LAYTON & FINGER
ROBINSON BRADSHAW & HINSON PA
RUTLEDGE, ECENIA, PURNELL & HOFFMAN, P.A.
RYAN, SMITH & CARBINE
SEYFARTH SHAW LLP – ARTHUR TELEGEN
SHEEHEY FURLONG & BEHM PC
SOLOMON & SOLOMON PC
SUTHERLAND ASBILL & BRENNAN LLP
TCA INC.
THOMAS, LONG, NIESEN & KENNARD
THOMPSON & BOWIE
THOMPSON HINE LLP
Wilkerson & Bryan, P.C.
Woods & Aiken LLP

## Significant Lessors and Lessees

356 WTH FUNDING LLC
985 ASSOCIATES LTD.
ATLANTIC MANCHESTER REALTY
BERNARD GILPIN
BROWNELL MT CORP.
BURLINGTON TOWN CENTER LLC
C & I INVESTMENT ASSOCIATES
CECILE DOUMOULIN
CHAMPLAIN HOUSING TRUST
COLCHESTER CENTER VOLUNTEER FIRE COMPANY INC.
DARREN PROUT
DAVID D. HORN
DEPT RESOURCES & ECON DEVELOPMENT (New Hampshire)
DICENZO REALTY
E.J. O'LEARY & R. M. VINICUS
EASTBROOK DEVELOPMENT, LLC
ECA, INC.
ETNA ROAD REALTY TRUST
GLOBAL TOWER, LLC
HAROLD & BARBARA LONEY
IPC LOUISVILLE PROPERTIES
ISLAND INN
J.D. BROWN & SONS, INC
JAY PEAK SKI RESORT
JOHN C. HEINS
JUNIPER HOLDINGS
JUNIPER HOULTON, LLC
JUNIPER KENNEBUNK
KERMIT E. & DIANE D. LACLAIR
KIEFFER INSURANCE & REAL ESTATE
KILLINGTON LIMITED
MARELD COMPANY, INC.
MARGAR LLC HSBC BANK USA
MGK INVESTMENTS
MIDDLESEX ASSOCIATES, LP
ML HOLDINGS C/O MULKIN CO
MMSTV ASSOCIATES
MOREHEAD PLACE, LLC
NEW HAMPSHIRE DISTRIBUTORS, INC.
NORRIS ST LLC
O'BRIEN BROTHERS
ONE CITY CENTER ASSOCIATES
PACIFIC & SOUTHERN CO.
PEASE DEVELOPMENT AUTHORITY

PIZZAGALLI PROPERTIES LLC
RICHARD BROWNELL
RINKERS COMMUNICATIONS
ROBERT C. DAVISON REVOCABLE TRUST
ROBERT T. MOSCONE
SAK FRANSWAY REALTY CO.
SBA PROPERTIES INC.
SIEGLINDE G RUSKAUP
STATE OF VERMONT / BGS PROPERTY MGT.
SUMMIT COMMUNICATIONS LLC
THE ALBACADO GREENLAND LTD
THE CARTHUSIAN FOUNDATION IN AMERICA
THURSTON DEMICK PROPERTIES
TIME WARNER CABLE
TOWN OF GREENVILLE, ME
TURNPIKE VENTURE PARTNERS
UNIVERSITY OF NEW HAMPSHIRE
UNIVERSITY OF VERMONT
VERMONT TECHNICAL COLLEGE
VGS PROPANE LLC
WALTER R. MCDONOUGH
WINTHROP REALTY TRUST
WP CAREY & CO. LLC
YORK WATER DISTRICT

**Litigation Parties**

Adnil Services
Allan C. Page
Biddeford Internet Corporation d/b/a Great Works Internet
Caleidoscope Communications Corp.
Cathleen Adams
City of Claremont, NH
City of Concord, NH
City of Dover, NH
City of Lebanon, NH
Darrell Zantow
Deutsche Bank, N.A.
Diana Prokocimer
Finest Painting LLC
Florida Department of Environmental Protection
Freedom Ring Communications LLC (BayRing)
IBEW Local 2320
IBEW Local 2320
IBEW Local 2320 (NH)
IBEW Local 2320, 1280-07, 23638-840

IBEW Local 2326
IBEW Local 2327
IBEW Local 2327 (Maine)
Inesta Hunter
Isidoro M. Flores
JEFFERY KOESTER
JP MORGAN SBIC LLC
KEVIN O'HARE
MELLON INVESTOR SERVICES, LLC
Michael Poto
ONE COMMUNICATIONS CORP.
Pacita DiVasta as Executrix of the Estate of Paul DiVasta
Palmer Development Corp.
Pennsylvania Department of Environmental Protection
Perry E. Parker
Rack and Stack
Robert v. Renander
Scott Ablett
SIXTY WALL STREET SBIC FUND, L.P.
State of New Hampshire Department of Environmental Services
State of Vermont Department of Environmental Conservations
Synergent
THE MEGUNTICOOK FUND II, L.P.
THE MEGUNTICOOK SIDE FUND, II, L.P.
The National Exchange Carrier Association, Inc.
Thomasina Howard
Todd Gardner
Town of Conway, NH
Town of Hinsdale, NH
Town of Hudson, NH
Town of Kingston, NH
Town of Plaistow, NH
Town of Raymond, NH
Town of Salem, NH
Town of Seabrook, NH
VERIZON NEW ENGLAND INC
Wendy Kile

**Utilities**

AAA TRASH SERVICE
ALABAMA POWER COMPANY
ALBURGH VILLAGE WATER AND SEWER DEPT.
ALLEGHENY POWER
ALLEN & MATHEWSON ENERGY
ALLIED WASTE SERVICES 983

ALLIGATOR POINT WATER RES DIST.
AMERADA HESS CORP.
AMERENCIPS
AMERENIP
AMERENUE
AMERICAN ELECTRIC POWER
AMERICUS ENERGY LLC
AMERIGAS
AMERIGAS (NH)
AMERIGAS (VT)
AMERIGAS WALDOBORO
AQUA MAINE
ASHLAND ,TOWN OF (NH)
AUBURNDALE, CITY OF (FL)
AUGUSTA WATER DISTRICT (ME)
BANGOR HYDRO ELECTRIC COMPANY
BANGOR HYDRO-ELECTRIC
BANGOR WATER DISTRICT (ME)
BARRE, CITY OF (VT)
BARTON, VILLAGE OF (VT)
BATH WATER DISTRICT (ME)
BIDDEFORD SACO WATER CO.
BLACK HILLS ENERGY
BLUE FLAME GAS (VT)
BOOTHBAY REGION WATER DISTRICT (ME)
BOT L GAS INC.
BOURNES INC.
BRADFORD WATER & SWR COMMISSION
BRATTLEBORO, TOWN OF (VT)
BREWER, CITY OF (ME)
BURLINGTON DEPT OF PUBLIC WORKS WATER DIV.
BURLINGTON, CITY OF (VT)
CALAIS, CITY OF (ME)
CASCADE NATURAL GAS CORP
CASTINE, TOWN OF (ME)
CENTRAL HUDSON GAS & ELECTRIC
CENTRAL MAINE POWER CO.
CENTRAL MAINE POWER COMPANY
CENTRAL VERMONT PUB SERV CORP.
CENTRAL VERMONT PUBLIC SERVICE
CHELCO
CHOUTEAU PWA
CITY OF AMERICUS
CITY OF APALACHICOLA
CITY OF ASHTON
CITY OF BLOUNTSTOWN

CITY OF BRISTOL
CITY OF CARRABELLE
CITY OF CHATTAHOOCHEE
CITY OF EL PASO
CITY OF ELLENSBURG
CITY OF JETMORE
CITY OF KITTITAS
CITY OF LAMAR
CITY OF LEOTI
CITY OF MARTINSVILLE
CITY OF PECULIAR
CITY OF PERRY
CITY OF PLATTE CITY
CITY OF PORT ST JOE
CITY OF SELAH
CITY OF SHARON SPRINGS
CITY OF ST ANTHONY
CITY OF YELM
CITY TREASURER
CITY WATER DEPT
COLUMBIA GAS OF PENNSYLVANIA
COMED
CONCORD, CITY OF (NH)
CORUM DISPOSAL
COTA & COTA INC.
COVINGTON ELECTRIC COOPERATIVE
DAIGLE OIL CO.
DAIGLE OIL COMPANY
DAYTON POWER & LIGHT CO.
DEAD RIVER CO.
DEPT OF PUBLIC WORKS
DERRY, TOWN OF (MA)
DINKEL GAS COMPANY LLC
DODGE CITY UTILITIES
DOMINION EAST OHIO
DOMINION VIRGINIA POWER
DOVER & FOXCROFT WATER (ME)
DOVER, CITY OF (NH)
DOWNEAST ENERGY & BLDG SUPPLY
DOWNING PROPANE & OIL INC.
DSSN3801LI
DUKE ENERGY
DUQUESNE LIGHT
EASTERN MAINE ELECTRIC
EASTERN MAINE ELECTRIC COOP
EASTPOINT WATER & SEWER DEPT

ELLSWORTH, CITY OF (ME)
EMERALD WASTE SERVICES
EMPIRE DISTRICT
ENERSTAR POWER CORP.
ENOSBURG FALLS, VILLAGE OF (VT)
EQUITABLE GAS
FALL RIVER RURAL ELECTRIC
FARMINGTON OIL
FARMINGTON WATER DEPT (ME)
FERRELL GAS
FLINT HILLS RURAL ELECTRIC
FLORALA UTILITIES
FLORIDA PUBLIC UTILITIES CO.
FOX ISLANDS ELECTRIC COOP INC.
GLASER GAS INC.
GREATER AUGUSTA UTILITY DIST (ME)
GREEN MOUNTAIN POWER CORP.
GREEN MOUNTAIN POWER CORP.
GULF COAST ELECTRIC COOP
GULF POWER COMPANY
HANCOCK OIL CO.
HANCOCK WOOD
HARDWICK ELECTRIC DEPT (VT)
HARTFORD, TOWN OF (VT)
HOMETOWN DISPOSAL
HOULTON WATER CO.
HYDE PARK, VILLAGE OF (VT)
INTERMOUNTAIN GAS COMPANY
IRVING OIL CORP.
JACKSONVILLE ELECTRIC CO (VT)
JOHNSBURY, TOWN OF (VT)
JOHNSON, VILLAGE OF (VT)
KANSAS CITY POWER & LIGHT
KCP&L
KEENE, CITY OF (NH)
KENNEBEC WATER DISTRICT
KENNEBUNK KENNEBUNKPRT & WELLS
KENNEBUNK LIGHT & POWER DIST
KITTITAS COUNTY WATER DIST #6
KITTITAS CTY PUD DIST1
LACONIA, CITY OF (NH)
LAKE REGION ELECTRIC COOP
LAKELAND MANAGEMENT CO INC.
LANCASTER, TOWN OF (NH)
LAUBENTHAL REFUSE SERVICE
LEBANON, CITY OF (NH)

LEWISTON, CITY OF (ME)
LITTLETON WATER & LIGHT DEPT (NH)
LYNDONVILLE, VILLAGE OF (VT)
LYON CO RURAL WATER DIST #1
LYON COFFEY ELECTRIC COOP
MACHIAS WATER CO (ME)
MAC'S
MADISON, TOWN OF (ME)
MAIN CARE ENERGY
MAINE ENERGY INC.
MAINE NATURAL GAS
MAINE PUBLIC SERVICE CO.
MAINE PUBLIC SERVICE CO.
MAINGAS SERVICE
MANCHESTER WATER WORKS
MANCHESTER, CITY OF (NH)
MANSFIELD OIL CO.
MARIANNA-WEST BETHLEHEM JSA
MCBURNIE OIL CO.
MECKLENBURG ELECTRIC COOP
MERRIMACK VILLAGE DIST (NH)
MIDSTATE COOP
MIDWEST ELECTRIC INC.
MIDWEST ENERGY INC.
MILLER WILKINS INC.
MILTON, TOWN OF (VT)
MISSOURI GAS ENERGY
MORRISVILLE, VILLAGE OF (VT)
MOUNTAIN VIEW ELECTRIC ASSOC
NASHUA WASTE WATER SYSTEM
NATIONAL FUEL
NATIONAL FUEL GAS
NATIONAL GRID
NATIONAL GRID
NEW HAMPSHIRE ELEC COOP INC.
NEW HAMPTON VILLAGE PRECINCT
NICOR GAS
NORTHEAST OKLAHOMA ELEC COOP
NORTHERN UTILITIES INC.
NORWAY WATER DISTRICT (ME)
NYSEG
NYSEG SOLUTIONS INC.
O'BRIEN OIL CO.
OHIO EDISON
ORLEANS, VILLAGE OF (VT)
ORWELL NATURAL GAS COMPANY

OSAGE VALLEY ELECTRIC COOP
PACIFIC DISPOSAL
PACIFIC POWER
PATTERSON FUELS
PAULDING PUTNAM ELECTRIC
PCSA
PENNICHUCK WATER WORKS
PERRY'S OIL SERVICE INC.
PLATTE CLAY ELECTRIC COOP
PLYMOUTH VILLAGE WATER & SEWER (NH)
PORTLAND WATER DISTRICT
PORTLAND WATER DISTRICT (ME)
PORTSMOUTH, CITY OF (NH)
POWERS GENERATOR SERVICE LLC
PRESQUE ISLE WATER DISTRICT
PROGRESS ENERGY FLORIDA INC.
PROVIDENCE WATER (RI)
PUBLIC SERVICE CO OF NEW HAMPSHIRE
PUBLIC SERVICE OF NEW HAMPSHIRE
PUGET SOUND ENERGY
PYROFAX ENERGY
PYROFAX ENERGY
READSBORO, TOWN OF (VT)
ROBINSON HEATING & A/C INC.
ROCKY MOUNTAIN POWER
RUMFORD WATER DISTRICT (ME)
RURAL GARBAGE SERVICE
RYMES PROPANE & OILS INC.
SAN LUIS VALLEY RURAL ELECTRIC
SOMERSWORTH, CITY OF (NH)
SOUTH BURLINGTON WATER DEPT (VT)
SOUTHEAST COLORADO POWER
SOUTHSIDE ELECTRIC COOPERATIVE
ST JOE NATURAL GAS
STATE OF NEW HAMPSHIRE
STOWE, TOWN OF (VT)
SUBURBAN PROPANE
SUBURBAN PROPANE
SWANTON, VILLAGE OF (VT)
TALQUIN ELECTRIC COOPERATIVE
TAYLOR COASTAL WATER AND SEWER DISTRICT
THE ILLUMINATING COMPANY
THE MONHEGAN PLANTATION PWR DIST
TONAWANDA, CITY OF (NY)
TOWN & COUNTRY DISPOSAL
TOWN OF CABOT

TOWN OF GRETNA TREASURER
TOWN OF SIMLA
TRI COUNTY ELECTRIC COOP
TRI COUNTY RURAL ELECTRIC COOPERATIVE INC.
UNITIL
UNITIL EXETER & HAMPTON ELEC.
VAN BUREN LIGHT & POWER DIST.
VECTREN ENERGY DELIVERY
VERMONT ELECTRIC COOP INC.
VERMONT ELECTRIC COOP INC.
VERMONT GAS SYSTEMS
VERMONT MARBLE PWR DIV OF OMYA
VICTORY ELECTRIC COOPERATIVE
VICTORY ELECTRIC COOPERATIVE \ MKEC
VILLAGE OF BROCTON
VILLAGE OF CHATHAM
VILLAGE OF COLUMBUS
VILLAGE OF GERMANTOWN
VILLAGE OF LEIPSIC
VILLAGE OF MAYVILLE
WARE OIL SUPPLY INC
WASHBURN WATER CO.
WASHINGTON ELECTRIC COOP INC.
WASHINGTON ELECTRIC COOP INC. (VT)
WASTE MANAGEMENT
WASTE PRO OF FLORIDA
WATERVILLE SEWERAGE DISTRICT
WEBBER ENERGY FUELS
WEST BETHLEHEM WATER DISTRICT
WEST FLORIDA ELECTRIC
WESTAR ENERGY
WESTERN MASSACHUSETTS ELEC CO.
WEWAHITCHKA
WHEATLAND ELECTRIC COOP
WINDSOR, TOWN OF (VT)
WINTER HARBOR UTILITIES DIST. (ME)
WINTERPORT WATR & SEWARAGE DIST. (ME)
WINTHROP FUEL COMPANY INC.
WINTHROP UTILITIES DISTRICT
WIREGRASS ELECTRIC COOP
WOLFEBORO, TOWN OF (NH)
WOODSVILLE WATER & LIGHT DEPT (NH)
XCEL ENERGY
YORK WATER DISTRICT (ME)

## Governmental & Regulatory Agencies

Alabama Public Service Commission
Americus City Clerk, Americus, KS
Amwell Township, Marianna, PA
Bentleyville Borough, Bentleyville, PA
City Clerk, City of Apalachicola, Apalachicola
City Clerk, City of Carrabelle, Carabelle, FL
City Clerk, City of Florala, AL
City Clerk, City of Laurel Hill, Laurel Hill, FL
City Clerk, City of Leoti, KS 67861
City Clerk, City of Sharon Springs, KS 67758
City Clerk, City of Tribune, KS 67879
City Mayor & City Manager, City of Blountstown, FL
City Mayor & City Manager, City of Chattahoochee, FL
City Mayor & City Manager, City of Perry, Perry, FL
City Mayor & City Manager, City of Port St. Joe, FL
City Mayor & City Manager, City of Wewahitchka, FL
City of Kearney, Kearney, MO
City of Ranier, Rainier, WA
City of Yelm, Yelm, WA
Clerk, Village of Cornell, Cornell, IL
Clerk, Village of Ransom, Ransom, IL
Colorado Public Utilities Commission
Ellsworth Borough, Ellsworth, PA
Federal Communications Commission
Florida Department of State Cable and/or Video Franchising Division of Corporations
Florida Public Service Commission
Georgia Public Service Commission
Idaho Public Utilities Commission
Illinois Commerce Commission
Kansas Corporation Commission
Maine Public Utilities Commission
Massachusetts Department of Telecommunications and Cable
Mayor, City of Cedar Point, Cedar Point, KS
Missouri Public Service Commission
Missouri Public Service Commission, Jefferson City, MO
National Exchange Carrier Association
National Telecommunications and Information Administration U.S. Department of Commerce
New Hampshire Public Utilities Commission
New York Public Service Commission
Office of City Clerk, City of Mexico Beach, FL 32410
Office of Town Clerk, Town of Paxton, Paxton, FL
Oklahoma Corporation Commission
Pennsylvania Public Utility Commission
Pierce County, Tacoma, WA

Rural Utilities Service U.S. Department of Agriculture
The City of Platte City, Platte City, MO
The Public Utilities Commission of Ohio
Thurston County, Olympia, WA
Town Clerk, Town of Lockhart, AL
Town Manager, Town of Altha, FL 32421
Town of Kinderhook, Niverville, NY
Town of Stuyvesant, Stuyvesant Falls, NY
Universal Service Administrative Company
Vermont Public Service Board
Village Clerk, City of Oblong, Oblong, IL
Village Clerk, Martinsville, IL
Village of Columbus Grove, Columbus Grove, OH
Village of Continental, Continental, OH
Village of Gilboa, Gilboa, OH
Village of Kinderhook, Kinderhook, NY
Village of Leipsic, Leipsic, OH
Village of Melrose, Melrose, OH
Village of Miller City, Miller City, OH
Village of Oakwood, Oakwood Village, OH
Village of Orwell, Orwell, OH
Village of Pandora, Pandora, OH
Village of West Leipsic, Leipsic, OH
Virginia State Corporation Commission
Washington Utilities and Transportation Commission

**<u>Taxing Authorities</u>**

ADA COUNTY
ALABAMA DEPT OF REVENUE
ALABAMA DUAL PARTY FUND
AMERICUS CITY
BANNOCK COUNTY
BENT & KIOWA COUNTIES
BUREAU OF EMERGENCY COMMUNICATIONS, STATE OF NEW HAMPSHIRE
BONNEVILLE COUNTY
CASS COUNTY
CHASE COUNTY TREASURER
CHAUTAUQUA COUNTY
CHEROKEE COUNTY
CITIZEN'S BANK TRUST
CITY OF CLEVELAND
CITY OF DREXEL
CITY OF EAST LYNNE
CITY OF FLORALA
CITY OF GARDEN CITY

CITY OF KEARNEY
CITY OF LEOTI
CITY OF PECULIAR
CITY OF RAINIER
CITY OF SHARON SPRINGS
CITY OF TRIBUNE
CITY OF YELM
CLARK COUNTY
CLAY COUNTY
COLORADO DEPT OF REVENUE
COLORADO LOW INCOME TELEPHONE ASSISTANCE PROGRAM
COLORADO TELECOM RELAY SERVICE FUND
COLUMBIA COUNTY
COMMONWEALTH OF MASSACHUSETTS
COVINGTON COUNTY
CRAWFORD COUNTY
CREIGHTON CITY
DECATUR COUNTY
DEPT OF COMMERCE AND COMMUNITY AFFAIRS, SPRINGFIELD ILLINOIS
DUTCHESS COUNTY
EL PASO COUNTY
ELBERT CITY EMERGENCY
FAYETTE COUNTY
FLORIDA DEPARTMENT OF REVENUE
FLORIDA TELECOMMUNICATIONS RELAY INC.
FREMONT COUNTY CLERK
GENE CRAWFORD
GEORGIA DEPT OF REVENUE
GEORGIA PUBLIC SERVICES COMMISSION FUND
GEORGIA TELECOMMUNICATIONS RELAY SERVICE
GREELEY COUNTY
GREENE COUNTY EMERGENCY MGT.
GRUNDY COUNTY
HENRY COUNTY
HODGEMAN COUNTY
IDAHO TAX COMMISSION, STATE OF IDAHO
IDAHO TELECOMMUNICATIONS RELAY SERVICE FUND
IDAHO TELECOMMUNICATIONS SERVICE ASSISTANCE PROGRAM
IDAHO UNIVERSAL SERVICE FUND
ILLINOIS DEPT OF REVENUE
ILLINOIS TELECOMMUNICATIONS ACCESS CORPORATION
INTERNAL REVENUE SERVICE
JASPER COUNTY
JEFFERSON COUNTY
JOHNSON COUNTY
KANSAS DEPT OF REVENUE

KITTITAS COUNTY
LASALLE COUNTY
LIVINGSTON COUNTY
LYON COUNTY
MADISON COUNTY
MAINE CONNECTME FUND
MAINE PUBLIC UTILITIES COMMISSION
MAINE TELECOMMUNICATIONS EDUCATION ACCESS FUND
MAINE UNIVERSAL SERVICE FUND
MARION COUNTY
MASSACHUSETTS DEPT OF REVENUE
MAYES COUNTY
MCLEAN COUNTY
MIAMI COUNTY
MISSOURI DEPT OF REVENUE, STATE OF MISSOURI
MISSOURI PUBLIC SERVICE COMMISSION
MISSOURI RELAY SURCHARGE
MISSOURI UNIVERSAL SERVICE FUND
NECA
NEW YORK STATE SALES TAX PROCESSING
OKLAHOMA CORPORATION COMMISSION
OKLAHOMA TAX COMMISSION
OKLAHOMA TELEPHONE ACCESS LINE SURCHARGE
OKLAHOMA UNIVERSAL SERVICE FUND
PENNSYLVANIA DEPT OF REVENUE
PENNSYLVANIA RELAY SERVICE FUND
PENNSYLVANIA TRS FUND
PENNSYLVANIA UNIVERSAL SERVICE FUND
PIERCE COUNTY
PLATTE COUNTY
PROWERS COUNTY
RENSSELAER COUNTY
STATE OF FLORIDA
STATE OF MAINE
STATE OF NEW HAMPSHIRE
STATE OF OHIO
STATE OF VERMONT
TELECOMMUNICATIONS ASSOCIATION
THURSTON COUNTY
TOWN OF KINDERHOOK
TOWN OF LOCKHART
TOWN OF STUYVESANT
UNIVERSAL SERVICE ADMINISTRATION COMPANY
UNIVERSAL TELEPHONE ASSISTANCE CORPORATION
VERMONT PUBLIC SERVICE BOARD
VILLAGE OF CONTINENTAL

VILLAGE OF GILBOA
VILLAGE OF KINDERHOOK
VILLAGE OF LEIPSIC
VILLAGE OF MELROSE
VILLAGE OF MILLER CITY
VILLAGE OF OAKWOOD
VILLAGE OF ORWELL
VILLAGE OF PANDORA
VILLAGE OF VALATIE
VILLAGE OF WEST LEIPSIC
VIRGINIA DEPT OF TAXATION
VIRGINIA DEPT OF TRANSPORTATION
WABAUNSEE COUNTY
WAGONER COUNTY
WALLACE COUNTY
WASHINGTON COUNTY
WASHINGTON STATE DEPARTMENT OF REVENUE
WELCH LLP
WICHITA COUNTY
WOODFORD COUNTY
YAKIMA COUNTY

**Top 50 Unsecured Creditors (consolidated)**

CAPGEMINI
FUJITSU NETWORK COMMUNICATIONS
GLACIAL ENERGY OF NEW ENGLAND
HEWLETT-PACKARD CO.
NCO FINANCIAL SYSTEMS INC.
NEW HAMPSHIRE ELECTRIC COOP
NOKIA SIEMENS NETWORKS USA LLC
POWER & TELEPHONE SUPPLY CO.
RADIALPOINT
SHIELDS ENVIRONMENTAL INC.
UNISYS CORP.
OCCAM NETWORKS INC.
ZAMPELL BUILDING SERVICES
PROFESSIONAL TELECONCEPTS INC.
ALCATEL - LUCENT USA INC.
BYERS ENGINEERING CO.
VOLT DELTA RESOURCES LLC
MCFARLAND CASCADE FOR-TEK
COMMUNICATIONS DATA GROUP, INC.
MAINE PRINTING CO.
TELENETWORK PARTNERS LTD.
CRC COMMUNICATIONS OF MAINE INC.

ON TARGET UTILITY SERVICES
VERISIGN INC.
NORTEL NETWORKS INC.
VERIZON WIRELESS MESSAGING SERVICES, LLC
WISOR TELECOM
VITAL ECONOMY INC.
ZACHAU CONSTRUCTION INC.
KANSYS INC.
VERIZON BUSINESS NETWORK SERVICES, INC.
GENESYS TELECOMMUNICATIONS LABORATORIES INC.
AMERICAN CABLE ASSEMBLIES INC.
ANTHEM BLUE CROSS BLUE SHIELD
BUTLER AMERICA LLC
DIVERSIFIED INVESTMENT ADVISOR
FISC SOLUTIONS
ISPN
LOGICA NORTH AMERICA INC.
MARTIN DAWES ANALYTICS
MEDICO HEALTH SOLUTIONS
METLIFE
NATIONAL EXCHANGE CARRIERS ASSOCIATION
NYSEG
RON COMEAU & SONS INC.
U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE
UNITED HEALTHCARE INSURANCE CO.
JOHN STAURULAKIS, INCORPORATED
NEONOVA NETWORK SERVICES INC.
PAIR GAIN COMMUNICATIONS INC.

**Employees in the Office of the U.S. Trustee (NY)**

ADAMS, DIANA G.
BROOKS, CATLETHA
CATAPANO, MARIA
CHOY, DANNY A.
DAVIS, TRACY HOPE
DUB, ELIZABETH C.
FELTON, MARILYN
FIELDS, MYRNA R.
GASPARINI, ELISABETTA
GOLDEN, SUSAN
JOSEPH, NADKARNI
KHODOROVSKY, NAZAR
MARTIN, MARYLOU
MARTINEZ, ANNA M.
MASUMOTO, BRIAN S.

MENDOZA, ERCILIA A.
MORONEY, MARY V.
MORRISSEY, RICHARD C.
NAKANO, SERENE
RIFFKIN, LINDA A.
SCHWARTZ, ANDREA B.
SCHWARTZBERG, PAUL K.
SHARP, SYLVESTER
SOTO, HECTOR
VELEZ-RIVERA, ANDY
ZIPES, GREG M.

**<u>Other Parties</u>**

Verizon Communications Inc.

# **SCHEDULE 2**

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| Allegheny Power | Allegheny Energy Inc. | Client pitch by Rothschild on matters unrelated to FairPoint |
| Allied Waste Services 983 | Allied Waste Industries Inc. | Client pitch by Rothschild on matters unrelated to FairPoint |
| Amerencips; Amerenip; Amerenue | Ameren Corporation | Former Rothschild client on matters unrelated to FairPoint |
| Barclays Bank PLC; Barclays Global Investors N.A., et al. Barclay's Capital, Inc./Fixed Income | Barclays Bank PLC; Barclays Capital; Barclays PE; Barclays Private Equity; Barclays Ventures | Former clients of Rothschild affiliates on matters unrelated to Debtors. An affiliate of Rothschild is currently representing Barclays Ventures on a matter unrelated to FairPoint |
| Black Hills Energy | Black Hills Corp. | Rothschild is involved in a transaction where Black Hills Corp. is listed as a participant. The transaction is unrelated to FairPoint. |
| China Telephone | China Telecom | Rothschild affiliate represents a third party in a matter involving China Telecom |
| Citibank, N.A.; Citigroup Global Markets, Inc.; Citigroup Global Markets, Inc./Salomon Brothers | Citigroup Mezzanine III LP; Citigroup Venture Capital; Citigroup Infrastructure Fund; Citigroup; Citigroup Ventures | Client pitches by Rothschild and/or Rothschild affiliates on matters unrelated to FairPoint |
| Credit Suisse Loan Funding LLC; Credit Suisse Securities (USA) L.L.C. | CSFB; CSFB Private Equity | Client pitches by Rothschild affiliates on matters unrelated to FairPoint |
| Deutsche Bank Trust Company Americas; Deutsche Bank Securities Inc.; Deutsche Bank, N.A. | Deutsche Bank Asset Management; Deutsche Bank Trust Company Americas; Deutsche Bank | Former clients of Rothschild. Deutsche Bank is a client of Rothschild affiliate on matters unrelated to FairPoint. |
| Dominion East Ohio; Dominion Virginia Power | Dominion Resources | Client pitch by Rothschild on matters unrelated to FairPoint |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| Duke Capital Partners, LLC; Duke Energy Corporation; Duke Energy | Duke Energy | Former client of Rothschild affiliate on matters unrelated to FairPoint |
| Federal Communications Commission | Federal Communications Commission | Former client of Rothschild affiliate on matters unrelated to FairPoint |
| Fidelity Investments; Fidelity Central Inv. Portfolios LLC; Fidelity Floating Rate Central Investment Portfolio | Fidelity Investments | Rothschild is representing an Ad Hoc Committee of bondholders where Fidelity Investments is listed as a participant. The matter is unrelated to FairPoint. |
| General Electric Capital Corporation | GE Capital; GE Commercial Finance Energy; GE Frankona Reassurance Limited; GE SeaCo Services Ltd. | Rothschild was involved in separate transactions where GE Capital; GE Commercial Finance Energy; and/or GE Frankona Reassurance Limited were listed as participants. Each such transaction has been completed. GE SeaCo Services Ltd. is a client of Rothschild on a matter unrelated to FairPoint.<br><br>Rothschild is representing an Ad Hoc Committee of bondholders where GE Capital is listed as a participant. The matter is unrelated to FairPoint. |
| Goldman Sachs Credit Partners LP; Goldman, Sachs & Co. | Goldman Sachs; Goldman Sachs Private Equity | Rothschild was involved in three transactions where Goldman Sachs was listed as a participant in each case in matters unrelated to FairPoint. Each such transaction has been completed or subsequently abandoned.<br><br>Client pitch by Rothschild to Goldman Sachs Private Equity on matters unrelated to FairPoint. |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| Green Mountain Power Corp. | Green Mountain Power Corp. | Rothschild is involved in a transaction where Green Mountain Power Corp. was listed as a participant. The transaction has been abandoned. |
| HSBC Bank USA, N.A. | HSBC; HSBC Australia; HSBC Infrastructure; HSBC plc; HSBC Private Equity; HSBC Rail; HSBC-CCF | Various pitches by Rothschild and Rothschild affiliates on matters unrelated to the FairPoint |
| Invesco Liquid Leveraged Loan Fund LP | Investcorp | Client pitch by Rothschild subsequently abandoned |
| JP Morgan Whitefriars Inc.; J.P. Morgan Clearing Corp.; JP Morgan Chase Bank, National Association; JP Morgan SBC LLC | JP Morgan; JP Morgan Asset Management Infrastructure | Rothschild is involved in three transactions where JP Morgan was listed as a participant in matters unrelated to FairPoint. Each such transaction has been completed or subsequently abandoned. Client pitch by Rothschild to JP Morgan Asset Management Infrastructure on matters unrelated to FairPoint. |
| Kansas City Power & Light; KCP&L | KCP Holdings Inc. | Client pitch by Rothschild on matters unrelated to FairPoint |
| Katten Muchin Rosenman LLP | Katten Muchin Rosenman LLP | Rothschild vendor |
| Kelso & Company | Kelso & Company | Various client pitches by Rothschild on matters unrelated to FairPoint |
| Landmark III CDO Limited; Landmark IV CDO Limited; Landmark IX CDO Ltd.; Landmark V CDO Limited (f/k/a) Landmark V CDO Ltd.; Landmark VI CDO Limited; Landmark VII CDO; Landmark VIII CLO Ltd.; Landmark American | Landmark Group | Client pitch by Rothschild on matters unrelated to FairPoint |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| Latham & Watkins LLP | Latham & Watkins LLP | Rothschild vendor |
| Lehman Commercial Paper Inc.; Lehman Brothers Inc. | Lehman Brothers; Lehman Brothers Holdings; Lehman Brothers Real Estate Partners | Former clients of Rothschild affiliates on matters unrelated to FairPoint |
| Lucent Technologies Inc. Master Pension Trust; Lucent USA Inc. | Lucent Technologies | Client pitch by Rothschild on matters unrelated to FairPoint |
| Merrill Lynch Capital Corporation; Merrill Lynch | Merrill Lynch; Merrill Lynch Infrastructure | Former clients of Rothschild affiliates on matters unrelated to FairPoint |
| Metropolitan Life Insurance Company | MetLife | Rothschild is representing an Ad Hoc Committee of bondholders where MetLife is listed as a participant. The matter is unrelated to FairPoint. |
| Morgan Stanley Senior Funding Inc.; Morgan Stanley Senior Funding Inc.; Morgan Stanley & Co. Incorporated; Morgan Stanley & Co. Incorporated/Retail | Morgan Stanley & Co; Morgan Stanley; Morgan Stanley Capital; Morgan Stanley Infrastructure Fund; Morgan Stanley Real Estate; Morgan Stanley Private Equity | Various pitches by Rothschild and Rothschild affiliates on matters unrelated to FairPoint |
| National Grid | National Grid Group | Former client of Rothschild on matters unrelated to FairPoint |
| Natixis Loomis Sayles Senior Loan Fund | Natixis; Natixis Capital Partners; Natixis Investments | Client of Rothschild affiliate on matters unrelated to FairPoint |
| Nortel Networks Inc. | Nortel Networks Corporation | Client of Rothschild affiliate on matters unrelated to FairPoint |
| Oaktree Loan Fund 2X Cayman LP; Oaktree Loan Fund LP; Oaktree Senior Loan Fund LP; Oaktree TT Multi Strategy Fund LP | Oaktree Capital Management | Client pitch by Rothschild on matters unrelated to FairPoint |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| PPM Grayhawk CLO Ltd.; PPM Monarch Bay Funding LLC | PPM Energy/City of Klamath Falls | Former Rothschild client on matters unrelated to FairPoint |
| Progress Energy Florida Inc. | Progress Energy | Rothschild client on matters unrelated to FairPoint |
| Puget Sound Energy | Pugent Energy | Client pitch by Rothschild on matters unrelated to FairPoint |
| Richards Layton & Finger | Richards Layton & Finger | Rothschild vendor |
| Royal Mail Pension Plan | Royal Mail | Rothschild affiliate represents Royal Mail in matters unrelated to FairPoint |
| Seyfarth Shaw LLP – Arthur Telegen | Seyfarth Shaw LLP | Rothschild vendor |
| The Bank of New York Mellon; The Bank of New York Mellon/Mellon Trust of New England, National Association; BNY Mellon; Mellon Investor Services, LLC; Mellon Investor Services | Mellon Financial Corp. | Client pitch by Rothschild on matters unrelated to FairPoint |
| Thomas H. Lee Equity Fund; Thomas H. Lee Partners, L.P. | Thomas H. Lee Partners | Client pitch by Rothschild on matters unrelated to FairPoint |
| UBS AG Stamford Branch | UBS AG | Rothschild client on matters unrelated to FairPoint |
| Verisign Inc. | Verisign Inc. | Rothschild vendor |
| Veritas CLO I Ltd,; Veritas CLO II Ltd. | Veritas DGC Inc. | Rothschild is involved in a transaction where Veritas DGC Inc. was listed as a participant. The transaction was completed. |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| PPM Grayhawk CLO Ltd.; PPM Monarch Bay Funding LLC | PPM Energy/City of Klamath Falls | Former Rothschild client on matters unrelated to FairPoint |
| Progress Energy Florida Inc. | Progress Energy | Rothschild client on matters unrelated to FairPoint |
| Puget Sound Energy | Pugent Energy | Client pitch by Rothschild on matters unrelated to FairPoint |
| Verizon; Verizon New England Inc.; Verizon Wireless; Verizon Business; Verizon Communications Inc. | Verizon Communications; Verizon Wireless | Client pitches by Rothschild on matters unrelated to FairPoint |
| Vermont Public Service Board | Vermont Department of Public Service | Client pitches by Rothschild on matters unrelated to FairPoint |
| XL Insurance; XL Insurance America Inc.; XL Specialty Insurance Company | XL Capital Assurance Inc. | Former Rothschild client on matters unrelated to FairPoint |
| York Capital Management LP | York Capital | Rothschild is representing an Ad Hoc Committee of bondholders where York Capital is listed as a participant. The matter is unrelated to FairPoint. |