**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
In re: : Chapter 11
:
FAIRPOINT COMMUNICATIONS, INC. *et al.*, : Case No. 09-16335 (BRL)
:
Debtors. : (Jointly Administered)
:
-------------------------------------------------------------x

**AGREED ORDER REGARDING CLAIMS FILED BY**
**STATE OF MAINE BUREAU OF REVENUE SERVICES**

This agreed order (the "Agreed Order") is entered into by and among Northern New England Telephone Operations LLC ("NNETO"), as debtor in possession, and the State of Maine Bureau of Revenue Services (the "MRS" or the "State of Maine"), and together with NNETO, the "Parties"), each by and through their respective attorneys.

**RECITALS**

**WHEREAS**, on October 26, 2009 (the "Petition Date"), NNETO and its affiliated debtors (collectively, "FairPoint") filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court");

**WHEREAS**, these chapter 11 cases have been procedurally consolidated, and NNETO continues to manage its properties and operate its businesses as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108;

**WHEREAS**, the State of Maine has imposed a service provider tax (the "Service Provider Tax") on telecommunication services in Maine, and alleges that the Service Provider Tax may be assessed against a line charge that the Federal Communications Commission allows

NNETO to collect from its customers as compensation for the cost of completing interstate telephone calls on a local telephone network (the "Subscriber Line Charge").

**WHEREAS**, NNETO has disputed that the Subscriber Line Charge is subject to the Service Provider Tax under the terms of the applicable tax statute in the State of Maine.[1]

**WHEREAS**, on February 2, 2010, the Court entered the *Order Establishing Deadline and Procedures for Filing Proofs of Claim and Approving Manner of Notice Thereof* (Docket No. 568), which established March 18, 2010 at 5:00 p.m. as the last date and time by which proofs of claim must be received by the official claims agent in NNETO's chapter 11 case.

**WHEREAS**, on or about March 2, 2010, MRS filed (i) proof of claim no. 2848 ("Claim 2848") against NNETO in the total amount of $1,564,608.04 for prepetition taxes owed, and (ii) proof of claim no. 3267 ("Claim 3267") against NNETO in the total amount of $1,564,608.04 for prepetition taxes owed.

**WHEREAS**, on March 23, 2010, FairPoint filed its *First Omnibus Objection to Claims (Duplicate Claims)* (Docket No. 902) seeking to, among other things, disallow and expunge Claim 3267 as being duplicative of Claim 2848, and on April 27, 2010, the Court entered its *Order Granting FairPoint's First Omnibus Objection to Claims (Duplicate Claims)* (Docket No. 1117) disallowing and expunging Claim 3267.

**WHEREAS**, on March 27, 2010, FairPoint filed its *Objection to Proof of Claim No. 2848 Filed by State of Maine Bureau of Revenue Services* (Docket No. 920) (the "Claim 2848 Objection") objecting to Claim 2848. The Claim 2848 Objection seeks to, among other things, disallow claims for Service Provider Tax that MRS assessed against Subscriber Line Charges.

---

[1] A detailed description of the Parties' dispute is contained in the Claim 2848 Objection (as defined herein) and the Claim 2848 Response (as defined herein).

**WHEREAS**, on April 20, 2010, MRS filed the *State of Maine's Response to FairPoint's Objection to Proof of Claim No. 2848 Filed by State of Maine Bureau of Revenue Services* (Docket No. 1063) (the "Claim 2848 Response").

**WHEREAS**, on or about June 14, 2010, MRS filed (i) proof of claim no. 8052 ("Claim 8052") amending Claim 2848, and asserting a reduced claim in the amount of $1,221,356.48 against NNETO for prepetition taxes owed, and (ii) proof of claim no. 8053 ("Claim 8053", together with Claim 2848 and Claim 8052, the "MRS Claims") asserting a claim for postpetition administrative priority tax expenses against NNETO in the total amount of $287,672.81.

**WHEREAS**, prior to the Petition Date, NNETO pre-paid a portion of the MRS Claims in the aggregate amount of $440,488.73, and MRS has been holding such funds in escrow (the "Escrowed Funds") pending resolution of a prepetition tax audit.

**WHEREAS,** FairPoint has proposed its *Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated March 10, 2010 (as it may be further amended or modified, the "Plan").[2]

**WHEREAS**, the Parties have negotiated this Agreed Order in good faith and at arms' length and, therefore, desire that it shall be binding upon each of them, their successors, heirs, and assigns;

**NOW THEREFORE**, **THE PARTIES HEREBY STIPULATE AND AGREE, AND UPON THE COURT'S APPROVAL, IT SHALL BE ORDERED AND BINDING ON ALL PARTIES IN INTEREST AS FOLLOWS**:

---

[2] Capitalized terms that are not otherwise defined herein have the meanings ascribed to them in the Plan.

1. <u>Order Date</u>.  Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, this Agreed Order shall be immediately effective and enforceable when it is entered on the docket as "so ordered" by the Bankruptcy Court (the "<u>Order Date</u>")

2. <u>The Escrowed Funds</u>.  The Parties shall effectuate the release of the Escrowed Funds to MRS within ninety (90) days after the Order Date.

3. <u>MRS Prepetition Claims</u>.  Claim 2848 and all scheduled claims on behalf of MRS, if any, are hereby expunged and Claim 8052 is hereby reduced and allowed as a Priority Tax Claim under the Plan in the amount of $104,668.51, which is in full and final satisfaction of such claim.  Claim 8052 shall be paid and satisfied in accordance with the Plan; *provided, however*, that notwithstanding anything in the Plan to the contrary, Plan distributions to MRS on account of Claim 8052 shall be made no later than ninety (90) days following the Effective Date of the Plan.

4. <u>Allowed Administrative Expense Claims</u>.  Claim 8053 is hereby allowed as an Administrative Expense Claim under the Plan in the aggregate amount of $287,672.81, and shall be paid in full in cash by NNETO to MRS within ninety (90) days after the Order Date.  From and following the Order Date, NNETO shall pay the Service Provider Tax assessed against Subscriber Line Charges in the ordinary course of its business.

5. <u>MRS's Release of FairPoint</u>.  Upon the Order Date, except for the obligations and claims provided for herein, MRS shall be deemed to have waived, released, extinguished and discharged FairPoint from any and all claims, actions, complaints, causes of action, debts, costs and expenses (including attorneys' fees), which MRS or its affiliates may have or claim to have against FairPoint with respect to the Service Provider Tax through the Order Date.

6. <u>Audit Periods</u>.  FairPoint agrees that it will not pursue any additional tax credits or "revenue reinstatements" with respect to the period commencing on April 1, 2008 and ending on March 31, 2010.

7. <u>Customer Bills</u>.  Following the Order Date, NNETO shall remove any legend on customer invoices regarding its disagreement with or objection to the assessment of Service Provider Tax against Subscriber Line Charges.

8. <u>Due Authorization</u>.  The Parties represent that they are authorized to execute this Agreed Order, subject to the Court's approval.

9. <u>Cooperation</u>.  The Parties shall take such actions as may be reasonably required to obtain approval of this Agreed Order and to implement and effectuate this Agreed Order.

10. <u>Compromise and Settlement</u>.  The Parties agree that this Agreed Order represents a compromise and settlement of the MRS Claims and that, upon entry of an Order of the Court approving this Agreed Order, the MRS Claims shall be deemed finally adjudicated and resolved with prejudice.

11. <u>Complete Agreement</u>.  This Agreed Order shall constitute the entire agreement by and among the Parties hereto regarding the matters addressed herein.  No extrinsic or parol evidence may be used to vary any of the terms herein.  All representations, warranties, inducements, and/or statements of intention made by the Parties are embodied in this Agreed Order, and no party hereto relied upon, shall be bound by, or shall be liable for any alleged representation, warranty, inducement, or statement of intention that is not expressly set forth in this Agreed Order.

12. <u>Modifications</u>.  No modification, amendment or waiver of any of the terms or provisions of this Agreed Order shall bind any Party unless such modification, amendment or

waiver is in writing, has been approved by the Court, and has been executed by a duly authorized representative of the Party against whom such modification, amendment or waiver is sought to be enforced.

13. Counterparts. This Agreed Order may be executed in one or more counterparts, by facsimile or electronic copy, each of which, when so executed and delivered, shall be an original and all of which together shall constitute one and the same instrument.

14. Drafting and Construction. The Parties acknowledge that this Agreed Order is the joint work product of all of the Parties, and that, accordingly, in the event of ambiguities in this Agreed Order, no inferences shall be drawn against any Party on the basis of authorship of this Agreed Order.

15. Captions. The captions contained in this Agreed Order are for convenience only. They are not a part of this Agreed Order and do not in any way limit or amplify the terms and provisions hereof. The captions shall have no effect on the interpretation of this Agreed Order.

16. Retention of Jurisdiction. The Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Agreed Order.

17. Binding Effect. This Agreed Order shall be binding on the Parties from the date of its execution, but is expressly subject to and contingent upon its approval by the Court. If the Court does not approve this Agreed Order, this Agreed Order shall be null and void.

| | |
|---|---|
| **NORTHERN NEW ENGLAND TELEPHONE OPERATIONS LLC** | **STATE OF MAINE BUREAU OF REVENUE SERVICES** |
| By: /s/ Lisa R. Hood Lisa R. Hood Senior Vice President / Corporate Controller 908 W. Frontview Dodge City, KS 67801 Telephone: (620) 227-4400 | By:/s/ Pamela W. Waite Pamela W. Waite, Esq. Assistant Attorney General Office of Attorney General 6 State House Station Augusta, Maine 04333 Tel.: (207) 626-8846 |

**IT IS SO ORDERED:**

Dated: August 5, 2010

/s/ Burton R. Lifland
THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE