PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222
Jeanette L. Thomas

and

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger

Attorneys for segTEL, Inc. and segNET
Technologies, Inc.

**UNITED STATES BANKRUPTCY COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
| In re: | : | |
| | : | **Chapter 11** |
| **FAIRPOINT COMMUNICATIONS** | : | |
| **INC.,** *et al.*, | : | No. 09-16335 (BRL) |
| | : | **(Jointly Administered)** |
| | : | |
| Debtors. | : | |
------------------------------------------------------x

**MOTION OF segTEL, INC. AND segNET TECHNOLOGIES, INC.
PURSUANT TO BANKRUPTCY RULE 2004 FOR ENTRY OF ORDER
AUTHORIZING DISCOVERY FROM FAIRPOINT COMMUNICATIONS,
INC., NORTHERN NEW ENGLAND TELEPHONE OPERATIONS LLC
<u>AND TELEPHONE OPERATING COMPANY OF VERMONT</u>**

segTEL, Inc. ("STI") and segNET Technologies, Inc. ("segNET" and together with STI,

"segTEL"), by and through its attorneys, files this Motion Pursuant to Bankruptcy Rule 2004 for

Entry of an Order, substantially in the form attached hereto as Exhibit A, Authorizing Discovery,

as described in greater detail in <u>Exhibit B</u> attached hereto (the "<u>Documents</u>"), from FairPoint Communications, Inc. ("<u>FCI</u>"), Northern New England Telephone Operations LLC ("<u>NNETO</u>") and Telephone Operating Company of Vermont LLC ("<u>TOCV</u>" and collectively with FCI and NNETO, "<u>FairPoint</u>") (the "<u>Motion</u>").  In support thereof, segTEL respectfully represents as follows:

## BACKGROUND

**A.    <u>Business Relationship Between the Parties</u>**

1.    Prior to the Petition Date, STI, a competitive local exchange carrier and public utility, purchased and provided services from and to Verizon New England, Inc. ("<u>Verizon</u>").  In January 2007, Verizon and certain of its affiliates sold a portion of their business (*i.e.* certain landline operations in Maine, New Hampshire and Vermont) to FCI.  STI operates in Maine, New Hampshire and Vermont and subsequently began providing services to TOCV and NNETO, the FCI entities providing service in those jurisdictions, and also began purchasing services from NNETO and TOCV pursuant to numerous executory contracts, including, without limitation, interconnection agreements, pole attachment agreements, conduit agreements and a settlement agreement.

2.    Prior to the Petition Date, segNET, an Internet service provider, purchased services from Verizon.  segNET operates in Maine, New Hampshire and Vermont and subsequently began purchasing services from NNETO and TOCV pursuant to numerous executory contracts and tariffs.

**B.    <u>STI and segNET Claims</u>**

3.    STI and segNET timely filed proof of claim against NNETO and TOCV on or before the bar date (the "<u>Claims</u>").  STI's and segNET's claims against NNETO relate to activities in New Hampshire and Maine and arise under federal law and the laws and agreements applicable to those states.  STI's and segNET's claims against TOCV relate to activities in

Vermont and arise under federal law and the laws and agreements applicable to that state. ILECs such as FairPoint have historically had difficulty rendering accurate bills to its business partners; FairPoint has previously acknowledged that there have also been substantial and endemic operational problems in its industry. Moreover, parties in the Debtors' industry have had difficulty resolving billing disputes. As a result, and in light of the multiple claimants and debtors, segTEL filed four Claims (two by each of STI and segNET against each of NNETO and TOCV). In addition, the Claims assert (a) amounts that are due and owing by the relevant FairPoint debtor entity and (b) amounts that the relevant FairPoint entity mistakenly asserted against STI and segNET. The Claims are summarized in the following table:

| Creditor | Debtor | Amounts Owed | Incorrect Debtor Charges |
|---|---|---|---|
| segTEL, Inc. | Telephone Operating Company of Vermont, LLC | $129,098.18 | $72,024.99 |
| segTEL, Inc. | Northern New England Telephone Operations LLC | $3,431,169.26 | $1,329,089.60 |
| segNET Technologies | Telephone Operating Company of Vermont, LLC | $21,440.18 | $14,161.68 |
| segNET Technologies | Northern New England Telephone Operations LLC | $127,865.04 | $36,126.32 |
| | Totals: | $3,709,572.66 | $1,451,402.59 |

4. The Claims can be broken down further into categories. The amounts asserted by STI fall into one or more of the following categories: (a) refunds for credit balances; (b) prepetition penalty interest owing; (c) unpaid bills; (d) performance assurance plan charges; (e) competitive violation claims; and (vi) anti-competitive and tortious conduct claims. Similarly, segNET's claims fall under the following categories: (a) refunds for credit balances; (b) outage credits under FCC and state tariffs; (c) disputed credits; and (d) competitive violation claims.

## C. FairPoint Plan and Claim Objections

5. FairPoint filed its Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") on March 11, 2010. (Doc. No. 813). Both STI and segNET are classified under the Plan as holding Class 6 Claims (NNE Subsidiary Unsecured Claims) because their claims are against one or more NNE Subsidiary. NNETO and TOCV are included in the Plan's definition of NNE Subsidiary. Under Section 5.6.2 of the Plan, holders of Class 6 Claims will "be paid an amount in Cash equal to one hundred percent (100%) of such holder's Allowed NNE Subsidiary Unsecured Claim." Plan § 5.6.2.

6. FairPoint has asserted, in a variety of pleadings and in argument to the Court, that it disputes the Claims. FairPoint 2004 Motion, at ¶5. (Doc. No. 1789). FairPoint filed its own motion under Rule 2004 seeking discovery from segTEL on September 29, 2010. (Doc. No. 1789). An order granting FairPoint's Rule 2004 motion was entered on October 20, 2010. (Doc. No. 1833). FairPoint served a Request for Production of Documents on segTEL on October 29, 2010 with a return date of November 29, 2010.

7. In addition to disputing the Claims filed by segTEL, FairPoint has also alleged that it is owed in excess of $1 million from segTEL. FairPoint Reply to 2004 Objection at ¶6 (Doc. No. 1816). However, FairPoint has not provided segTEL with any information in support of its claims against segTEL.

8. Attempts to discuss a consensual production of documents by FairPoint have been unsuccessful.

9. By this Motion, STI and segTEL seeks entry of any order pursuant to Bankruptcy Rule 2004 (a) directing FairPoint to produce on or before January 14, 2011 all of Documents requested herein as set forth on Exhibit B attached hereto at the offices of Perkins Coie LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97212, or such other location as may be mutually agreed on by the parties, and (b) authorizing the oral examination of FairPoint, in each

4

case concerning the allegations set forth in the Claims and any claims that FairPoint may assert against either STI or segNET.

**Basis for Relief Requested**

10. Rule 2004(a) provides that on the motion of any party in interest, the Court, pursuant to Rule 2004(b), may order the examination of an entity to allow an inquiry into the debtor's acts, conduct, financial affairs, or any matter that may affect the administration of the estate or any other matter relevant to the case. 9 COLLIER ON BANKRUPTCY ¶ 2004.02[1], p. 2004-6 (15th ed. Revised 2005) (citations omitted); see also In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (scope of 2004 examination is very broad) (citations omitted). The scope of an examination under Rule 2004 is "unfettered and broad," and an examination pursuant to this rule may extend to third parties who have had dealings with the debtor. In re Dinubilo, 177 B.R. 932, 939 (E.D. Cal. 1993); see also In re Financial Corp. of America, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990); In re International Fibercom, Inc., 283 B.R. 290, 292-93 (Bankr. D. Ariz. 2002) (Rule 2004 permits interested parties to conduct wide ranging examinations of the debtor and non-debtor parties within a broad scope of subjects.)

11. The examination of an entity under Rule 2004(c) includes the power to compel the production of documents and the attendance of an entity for an examination. Fed. Bankr. R. 2004.

12. In ruling on a request for a Rule 2004 examination, the court has broad discretion to manage the process "in a fashion that will implement the philosophy of full disclosure of relevant information and at the same time afford the participants maximum protection against harmful side effects." In re Mittco, 44 B.R. 35, 38 (Bankr. E.D. Wis. 1984); See also, Drexel Burnham, 123 B.R. at 712 ("Rule 2004 requires that we balance the competing interests of the parties, weighing the relevance and necessity of the information sought by examination.").

13. The only basis for an objection to a Rule 2004 examination by the affected party may be a claim of abuse or harassment, or that the matters that are the subject of the examination are unrelated to the affairs of the Debtor.  See In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984);  Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 42 B.R. 362, 364 (S.D.N.Y. 1984).  Such an objection is not appropriate in the case at bar.

14. segTEL seeks information from FairPoint to assist it in proving the underlying merits of the Claims asserted against NNETO and TOCV.  As set forth above, the Claims fall under a variety of categories.  Under certain categories, the actions of FairPoint in connection with the operation of its businesses form the principal bases of the underlying Claims.  In other categories, including the competitive violation claims and anti-competitive and tortious conduct claims[1], the affirmative actions of FairPoint are directly at issue.  Those claims are based directly on the actions taken or not taken, as the case may be, by FairPoint.  segTEL has the right to discovery to further develop and quantify those claims.

15. As FairPoint itself has stated, resolution of the Claims will affect the administration of the estate.  FairPoint 2004 Motion at ¶ 10.  segTEL's examination requests, which are set forth on the attached Exhibit B, are tailored to address the facts supporting the Claims as well as FairPoint's assertion that segTEL owes it in excess of a $1 million.  Accordingly, the relief requested is appropriate under Rule 2004.

16. STI and segNET further request that FairPoint be directed to appoint a knowledgeable representative to appear for oral examination under oath, on such date(s) and time(s) as may be designated STI and segNET in writing not less than ten (10) days prior to such examination to respond to questions, if any, concerning the Documents.

---

[1] STI and segNET have proposed a form of confidentiality agreement to FairPoint to protect against the dissemination of confidential information, and is awaiting a response concerning that agreement.

6

17. Bankruptcy Rule 2004(c) provides that the attendance of a witness for examination and the production of documents may be compelled by a subpoena. STI and segNET request that they be authorized to enforce the provisions of the Order, once signed, by the issuance and service of a subpoena(s), if necessary.

**NOTICE**

18. segTEL has served notice of this Motion upon: (a) FairPoint Communications, Inc., 521 East Morehead Street, Suite 500, Charlotte, NC 28202 (Attn: Susan Sowell, Esq.); (b) Paul, Hastings, Janofsky & Walker LLP, Park Avenue Tower, 75 East 55th Street, First Floor, New York, NY 10022, attorneys to FairPoint Communications, Inc., (Attn: James T. Grogan, Esq. and Luc A. Despins, Esq.); (c) Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Andrew D. Velez- Rivera, Esq.); (d) Andrews Kurth LLP, 450 Lexington Avenue, 15th Floor, New York, NY 10017, attorneys to the Official Committee of Unsecured Creditors (Attn: Paul Silverstein); (e) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, attorneys to Bank of America, N.A. as administrative agent for FairPoint's prepetition secured lenders (Attn: Margot B. Schonholtz, Esq.); (f) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, attorneys to the ad hoc committee of FairPoint's senior noteholders (Attn: Kristopher M. Hansen, Esq. and Brett Lawrence, Esq.); (g) Arnall Golden Gregory LLP, 171 17th Street NW, Suite 2100, Atlanta, GA 30363, attorneys to the Affiliates of Verizon Communications, Inc. (Attn: Darryl S. Laddin, Esq.); and (h) via ECF, to all parties on the Master Service List filed with the Court. segTEL submits that no other or further notice need be provided.

**NO PREVIOUS REQUEST**

19. No previous request for the relief sought herein has been made by segTEL to this or any other court.

WHEREFORE, segTEL respectfully request that this Court enter an order consistent with

the foregoing and grant segTEL such other and further relief as the Court deems just and proper.

Dated: November 30, 2010

Respectfully submitted,

/s/ Jeanette L. Thomas
Jeanette L. Thomas
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
   Telephone: 503.727.2000
   Facsimile: 503.727.2222
   Email: JThomas@perkinscoie.com
        and

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger

Attorneys for segTEL, Inc. and segNET Technologies, Inc.