**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                         :

**In re:**                                 :      **Chapter 11**
                                           :

**FAIRPOINT COMMUNICATIONS, INC.,** *et al.***,**:     **Case No. 09-16335 (BRL)**
                                         :

              **Debtors.**                :      **(Jointly Administered)**
                                         :
------------------------------------------------------------ x

### ORDER CONFIRMING DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 29, 2010

The Bankruptcy Court having approved (i) the *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated as of December 29, 2010, a copy of which is annexed hereto as <u>Exhibit A</u>, including the modifications described herein (the "<u>Plan</u>") and (ii) the *Amended Plan Supplement to Debtors' Plan of Reorganization*, dated December 29, 2010 (the "<u>Plan Supplement</u>"), proposed and filed by FairPoint Communications, Inc. ("<u>FairPoint Communications</u>") and its affiliated debtors, as Debtors-in-Possession[1] (collectively, "<u>FairPoint</u>"); and the Disclosure Statement having been approved by the Bankruptcy Court and duly transmitted to holders of Claims against FairPoint and other parties in interest in accordance with the Disclosure Statement Approval Order, dated March 11, 2010 [Docket No. 825], in which the Bankruptcy Court, among other things, approved solicitation and vote tabulation procedures, established the form of notice of the hearing and objection procedures in respect of confirmation of the Plan, and set the date for the hearing on confirmation of the Plan; and the Bankruptcy Court having entered its *Order Under Bankruptcy Code Sections 105(a) and 1129 and Bankruptcy Rules 3019(a) and 9014 Regarding Plan*

---

[1]        Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

*Confirmation Process* [Docket No. 1373] (the "Phase I Order"); and the Bankruptcy Court having entered its *Order (I) Approving Form and Manner of Notice of (A) Continued Hearing on Confirmation of Plan; and (B) Supplemental Disclosure to Creditors; and (II) Fixing Date and Time For Continued Confirmation Hearing* [Docket No. 2042] (the "Supplemental Disclosure Order") pursuant to which the Bankruptcy Court approved, among other things, certain supplemental disclosures under sections 105 and 1125 of the Bankruptcy Code (the "Supplemental Disclosure Notice"); and hearings having been held before the Bankruptcy Court on May 11, 2010 (the "Phase I Confirmation Hearing") and January 13, 2011 (the "Phase II Confirmation Hearing", and together with the Phase I Confirmation Hearing, the "Confirmation Hearing") to consider confirmation of the Plan; and due notice of the Confirmation Hearing having been provided to holders of Claims against and Equity Interests in FairPoint and other parties in interest, as established by the certificates of service and mailing filed with the Bankruptcy Court, and such notice being sufficient, and no further notice being required; and based upon and after full consideration of the entire record of the Confirmation Hearing, including (A) the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Approval Order, the Supplemental Disclosure Order, and the Supplemental Disclosure Notice, (B) FairPoint's memorandum of law, dated May 7, 2010 (the "First Memorandum of Law") and FairPoint's supplemental memorandum of law, dated January 11, 2011 (the "Supplemental Memorandum of Law", together with the First Memorandum of Law, the "Memorandum of Law"), in support of confirmation of the Plan, and (C) evidence adduced at the Confirmation Hearing including the (1) *Declaration Of Lisa R. Hood In Support Of Confirmation Of The Debtors' Modified Second Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Dated March 10, 2010*; (2) *Declaration Of Meade Monger In Support Of*

*Confirmation Of The Debtors' Modified Second Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Dated March 10, 2010*; (3) *Declaration Of Neil Augustine In Support Of Confirmation Of The Debtors' Modified Second Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Dated March 10, 2010*; (4) *Declaration Of Balloting Agent Certifying The Tabulation Of Votes On, And The Results Of Voting With Respect To, The Second Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code* [Docket No. 1271]; (5) *Supplemental Declaration Of Neil Augustine In Support Of Confirmation Of Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Dated December 29, 2010* (the "Supplemental Augustine Declaration"); (6) *Declaration Of Peter Nixon In Support Of Confirmation Of Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Dated December 29, 2010*; and (7) *Declaration Of Ajay Sabherwal In Support Of Confirmation Of The Debtors' Third  Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Dated December 29, 2010*; and the Bankruptcy Court having considered all objections to confirmation of the Plan (the "Objections"); and all Objections having been withdrawn, overruled, resolved by stipulation or otherwise addressed as set forth in the record of the Confirmation Hearing, which record is incorporated herein; and all other conditions to confirmation having been satisfied; and the Bankruptcy Court being familiar with the Plan and other relevant factors affecting FairPoint's Chapter 11 Cases; and the Bankruptcy Court being fully familiar with, and having taken judicial notice of, the entire record of FairPoint's Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered and adduced at the Confirmation Hearing; and upon consideration of FairPoint's Motion for Approval of Labor Memorandum of Understanding Pursuant to Bankruptcy Code Sections 105(a) and 363(b) and

Bankruptcy Rule 9019 (Docket No. 1713) (the "Labor MOU Motion"); and upon all of the proceedings had before the Bankruptcy Court; and the Bankruptcy Court having entered the *Findings Of Fact And Conclusions Of Law Regarding The Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Dated As of December 29, 2010* (the "Findings of Facts and Conclusions of Law"); and after due deliberation and consideration and sufficient cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY ADJUDGED, DECREED AND ORDERED THAT:**

1.      All requirements for confirmation of the Plan have been satisfied.  Accordingly, pursuant to section 1129 of the Bankruptcy Code, the Plan is hereby CONFIRMED.  A copy of the confirmed Plan (without the Plan Supplement) is attached as Exhibit A to this Confirmation Order.

2.      The Findings of Fact and Conclusions of Law entered in conjunction herewith are expressly incorporated into, and form an integral part of, this Confirmation Order.[2]

3.      The terms of the Plan, the documents contained in the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications thereof (collectively, the "Plan Documents") are expressly incorporated into, and form an integral part of, this Confirmation Order.

4.      The failure to specifically include any particular provision of the Plan, the Plan Supplement, or any related Plan Documents in this Confirmation Order shall not diminish or impair the efficacy of such provision, and such provision shall have the same validity, binding

---

[2]      Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

effect and enforceability as every other provision of the Plan, the Plan Supplement and the Plan Documents.

5.     All objections to confirmation of the Plan that have not been withdrawn or resolved prior to the entry of this Confirmation Order are overruled in all respects for the reasons set forth in the record of the Confirmation Hearing, which record is incorporated herein by reference, and all withdrawn objections, if any, are deemed withdrawn with prejudice.

6.     To the extent that this Confirmation Order sets forth any modifications to the Plan, such modifications constitute technical changes and/or changes with respect to particular Claims by agreement with the holders of such Claims, and do not adversely affect or change the treatment of any Claims.  Accordingly, pursuant to Bankruptcy Rule 3019, such modifications, if any, do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

7.     FairPoint and Reorganized FairPoint are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, agreements or other documents created or executed in connection with the Plan or the Plan Supplement.

8.     The Bankruptcy Court hereby ratifies, confirms, authorizes and approves in all respects any actions previously taken by any of the officers or directors of FairPoint, in connection with contracts, instruments, releases, leases, agreements or other documents created or executed in connection with the Plan or the Plan Supplement and all other action taken incidental thereto.

9.      The definitive documents contained in the Plan Supplement, including the form of Warrant Agreement for the New Warrants, the form of Registration Rights Agreement, the Success Bonus Plan, the Long Term Incentive Plan, the form of the New Credit Agreement, and the New Organizational Documents consisting of the Amended Certificate of Incorporation and Amended Bylaws for FairPoint Communications, and any amendments, modifications and supplements thereto, and all documents and agreements introduced into evidence by FairPoint at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein) (collectively, the "Transaction Documents"), and the execution, delivery and performance thereof by Reorganized FairPoint, are authorized and approved when they are finalized, executed and delivered.

10.      Following the execution and delivery of the Transaction Documents, the appropriate officers of Reorganized FairPoint, any one of whom may act without the joinder of any of the others, be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of Reorganized FairPoint, to consummate the transactions contemplated by, and to perform and fulfill Reorganized FairPoint's agreements, undertakings and obligations contained in, the Transaction Documents.

11.      Without further order or authorization of the Bankruptcy Court, FairPoint, Reorganized FairPoint and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan, subject to the consent of the Lender Steering Committee, which consent shall not be unreasonably withheld.  Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding and authorized obligations of the respective parties thereto,

enforceable in accordance with their terms and shall create, as of the Effective Date, all Liens and security interests created thereby.

12.     On the Effective Date, Reorganized FairPoint is authorized to satisfy its obligations under the DIP Facility and the DIP Order, if any, in full in Cash.  To the extent that any letters of credit issued pursuant to the DIP Order are outstanding on the Effective Date, such letters of credit will be deemed to have been issued pursuant to the New Credit Agreement, and from and after the Effective Date shall be subject to and governed by the terms and conditions thereof.  Upon payment and satisfaction in full of all Claims arising under the DIP Facility and the DIP Order, if any, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect. Notwithstanding the foregoing, all obligations of FairPoint under the DIP Order and the DIP Facility and the other related loan documents which by their terms are intended to survive termination of the DIP Order and DIP Facility or payment of the Claims thereunder shall continue in full force and effect.

13.     Subject to, and upon the occurrence of, the Effective Date, and without further notice to any party, or further order or other approval of the Bankruptcy Court, or further act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person or Entity (including any holders of Claims or Equity Interests or the New Board), Reorganized FairPoint shall, and is hereby authorized to, enter into, perform under and receive the proceeds of the New Credit Agreement and to execute and deliver the New Credit Agreement and related documentation, including but not limited to any documents necessary to grant the requisite Liens, guarantees and security interests, in each case consistent with the terms of the Plan and the New Credit Agreement.  This Confirmation Order shall be (a) an approval of

the loans described in the New Credit Agreement, including any guarantees and security documents (together, the "Financing Documents"), and all transactions contemplated thereby, including, without limitation, any supplemental or additional syndication of the New Credit Agreement, and all actions to be taken, undertakings to be made, and obligations to be incurred by Reorganized FairPoint in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and (b) authorization for Reorganized FairPoint to enter into and execute the New Credit Agreement, the other Financing Documents and such other documents as may be required to effectuate the financial accommodation issued, provide guarantees and grant the security interests pursuant to the New Credit Agreement and the other Financing Documents.

14.     Executed versions of the New Credit Agreement and other Financing Documents shall constitute legal, valid, binding and authorized obligations of Reorganized FairPoint, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the New Credit Agreement and the other Financing Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable nonbankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Credit Agreement and the other Financing Documents (a) shall be deemed to be authorized and approved, (b) shall be legal, binding and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Credit Agreement and the other Financing Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may

be permitted under the New Credit Agreement and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law. Reorganized FairPoint and the Persons and Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain any governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, but subject to the occurrence of the Effective Date, and any such filings, recordings, approvals and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. In accordance with the provisions of the New Credit Agreement, the Administrative Agent (as defined therein), shall not be obligated to make any payments to any lender, whether of principal, interest or otherwise, until such time as such lender has delivered to the Administrative Agent a signature page to the New Credit Agreement, duly executed by an authorized officer of such lender, and shall hold all such funds on behalf of such lender until the earlier of (x) such time as such lender has delivered to the Administrative Agent a signature page to the New Credit Agreement duly executed by an authorized officer of such lender and (y) the date that the Term Loans (as defined in the New Credit Agreement) of all Term Lenders (as defined in the New Credit Agreement) other than the Unsigned Lenders (as defined in the New Credit Agreement) shall have been repaid in full in cash. Each Lender (as defined in the New Credit Agreement) shall be bound by and subject to the terms and conditions

of the New Credit Agreement and the other Financing Documents (including, without limitation, any indemnification obligations set forth therein) regardless of whether such Lender constitutes an Unsigned Lender at any time.

15.     All transfers of property of FairPoint's Estates, including without limitation, the transfer and assignment of the Litigation Trust Assets, shall be free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Plan or this Confirmation Order.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation, modification, assignment, consolidation, filing, or recording of any mortgage, deed of trust, Lien, financing statement, or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the issuance of New Common Stock, the New Credit Agreement, the New Warrants, the New Common Stock issuable upon the exercise of the New Warrants, the Litigation Trust Interests, and any security agreements, notes, any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

16.     Subject to the occurrence of the Effective Date, Reorganized FairPoint shall take all actions necessary or reasonably required to effectuate the Regulatory Settlements and such Regulatory Settlements shall be binding on Reorganized FairPoint and the respective parties to each Regulatory Settlement.

17.     The Labor MOU Motion is granted and the Labor MOU is approved in its entirety.  On the Effective Date, the collective bargaining agreements by and between Northern

New England Telephone Operations LLC and Telephone Operating Company of Vermont LLC (the two companies doing business as FairPoint Communications) and International Brotherhood of Electrical Workers, AFL-CIO Locals 2320, 2326, and 2327 and Communications Workers of America, AFL-CIO shall be deemed automatically assumed, as amended by the Labor MOU.

18.     Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, FairPoint and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

19.     The vesting, on the Effective Date, of the property of FairPoint's Estates:  (i) vests Reorganized FairPoint or its successors or assigns, as the case may be, with good title to such property, free and clear of all Liens, charges, Claims, encumbrances and other interests, except as expressly provided in the Plan, this Confirmation Order or the Financing Documents; and (ii) does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

20.     Any licenses or rights to use software, firmware and other intellectual property that were property of FairPoint's Estates, or that were licensed to FairPoint on a fully paid basis, shall continue to vest in Reorganized FairPoint on the Effective Date.

21.     To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the New Common Stock, the Litigation Trust Interests and the New Warrants pursuant to the Plan, the New Common Stock issuable upon exercise of the New Warrants, and any subsequent sales, resales, transfers, or other distributions of such New Common Stock, Litigation Trust Interests or New Warrants shall be

exempt from registration under the Securities Act, any other federal or state securities law registration requirements, and all rules and regulations promulgated thereunder.  Any such Securities issued to an "affiliate" of Reorganized FairPoint within the meaning of the Securities Act or any Person Reorganized FairPoint reasonably determines to be an "underwriter", and which does not agree to resell such securities only in "ordinary trading transactions," within the meaning of section 1145(b)(1) of the Bankruptcy Code shall be subject to such transfer restrictions and bear such legends as shall be appropriate to ensure compliance with the Securities Act.

22.     On the Effective Date, FairPoint or Reorganized FairPoint, as the case may be, shall execute the Litigation Trust Agreement and shall take all other steps necessary to establish the Litigation Trust in accordance with and pursuant to the terms of the Litigation Trust Agreement.  FairPoint or Reorganized FairPoint shall transfer the Litigation Trust Assets to the Litigation Trust.  Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  Upon delivery of the Litigation Trust Assets to the Litigation Trust, Reorganized FairPoint shall be released from all liability with respect to the delivery of such distributions.  Any recoveries on account of the Litigation Trust Claims shall be distributed to holders of the Litigation Trust Interests in accordance with the Plan and the Litigation Trust Agreement.  In connection with the transfer of the Litigation Trust Claims, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) shall be transferred to the Litigation Trust and shall vest in the Litigation Trustee and its representatives.  FairPoint or Reorganized FairPoint, as the case may be, the Creditors' Committee and the Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges.  The Litigation Trustee's

receipt of transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of FairPoint's Estates. The Litigation Trust shall be established for the sole purpose of liquidating the Litigation Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The terms of the Litigation Trust Agreement, including those provisions barring certain claims, are hereby approved and any Person against who a Litigation Trust Claim has been brought (a "<u>Litigation Trust Defendant</u>") shall be permanently barred, enjoined and restrained from commencing, prosecuting or asserting any Claim for contribution, reimbursement or indemnification or any Claim related thereto (a "<u>Covered Claim</u>") based upon, related to, or arising out of the prosecution of Litigation Trust Claims against that Litigation Trust Defendant, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner, if the Covered Claim is against FairPoint or Reorganized FairPoint, or if against a third party would, in turn, be entitled to be paid in full and in cash under the Plan or applicable law; *provided, however*, that the Litigation Trust shall reduce and credit against any judgment it may obtain against the Litigation Trust Defendant the amount of any Covered Claim which is determined by a court of competent jurisdiction in any action involving the prosecution of Litigation Trust Claims against that Litigation Trust Defendant.

23. This Confirmation Order shall be (a) an approval of the appointment of Mark E. Holliday as the Litigation Trustee, (b) authorization to file the compensation arrangement with the Litigation Trustee under seal and such compensation arrangement shall not become part of the public record, and (c) authorization for FairPoint, Reorganized FairPoint, the Litigation Trustee and the Creditors' Committee, as applicable, to enter into and execute the Litigation

Trust Agreement, and such other documents as may be required to effectuate the grant of the security interest, Lien, pledge, collateral assignment and right of setoff granted under Section 13.1 of the Litigation Trust Agreement, or to enable the holders of Allowed Prepetition Credit Agreement Claims or the Prepetition Credit Agreement Agent or Reorganized FairPoint, as applicable, to exercise and enforce their respective rights and remedies under the Litigation Trust Agreement. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Litigation Trust Agreement (a) shall be deemed to be authorized and approved, (b) shall be legal, binding and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Litigation Trust Agreement, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Litigation Trust Agreement and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law. Reorganized FairPoint and the Persons and Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain any governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, but subject to the occurrence of the Effective Date, and any such filings, recordings, approvals and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

24.     Upon the effectiveness of the Amended Certificate of Incorporation on the Effective Date, Reorganized FairPoint Communications is hereby authorized to issue, register and deliver up to 37,500,000 shares of New Common Stock as provided in the Plan.  The New Common Stock when issued by Reorganized FairPoint Communications shall be deemed duly authorized, validly issued, fully paid and non-assessable.

25.     The appropriate officers and directors of Reorganized FairPoint Communications, any one of whom may act without the joinder of any of the others, be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of Reorganized FairPoint Communications, to do and perform all acts and deliver all instruments deemed by such officers or directors to be necessary or appropriate for the proper issuance of the New Common Stock and to deliver the shares of New Common Stock pursuant to the Plan.

26.     Upon the effectiveness of the Amended Certificate of Incorporation on the Effective Date, Reorganized FairPoint Communications is hereby approved, authorized and directed to issue, register and deliver up to 3,582,402 New Warrants and to reserve 3,582,402 shares of New Common Stock for issuance in connection with the New Warrants pursuant to the Plan and the Warrant Agreement for the New Warrants.  The New Warrants shall be deemed duly authorized and validly issued by Reorganized FairPoint Communications and any shares of New Common Stock issued in connection therewith shall be deemed duly authorized, validly issued, fully paid and non-assessable when issued by Reorganized FairPoint Communications upon receipt of the exercise price therefor in accordance with the terms of the New Warrants.

27.     The appropriate officers and directors of Reorganized FairPoint Communications, any one of whom may act without the joinder of any of the others, be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of Reorganized FairPoint

Communications, to do and perform all acts and deliver all instruments deemed by such officers or directors to be necessary or appropriate for the proper issuance of the New Warrants and any shares of New Common Stock issued in connection therewith and to deliver the New Warrants and any shares of New Common Stock issued in connection therewith pursuant to the Plan and the Warrant Agreement for the New Warrants.

28.     Upon the effectiveness of the Amended Certificate of Incorporation on the Effective Date, Reorganized FairPoint Communications is hereby approved, authorized and directed to reserve 3,197,106 shares of New Common Stock for issuance pursuant to the Long Term Incentive Plan.

29.     The granting of awards by the compensation committee of the New Board of Reorganized FairPoint Communications with a grant date of the Effective Date, as contemplated by the Long Term Incentive Plan, is hereby approved.

30.     The appropriate officers and directors of Reorganized FairPoint Communications, any one of whom may act without the joinder of any of the others, be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of Reorganized FairPoint Communications, to take, or cause to be taken, all actions necessary and advisable to arrange for the book-entry transfer of any or all of the New Common Stock and/or New Warrants through such depository or depositories as any appropriate officer or director of Reorganized FairPoint Communications shall select, including the preparation, execution and filing of all necessary applications, documents, forms and agreements and the payment by Reorganized FairPoint Communications of any filing, listing and/or application fees.

31.     The appropriate officers and directors of Reorganized FairPoint Communications, any one of whom may act without the joinder of any of the others, be, and each of them hereby

is, authorized empowered and directed, in the name and on behalf of Reorganized FairPoint Communications, to take, or cause to be taken, all actions necessary and advisable to obtain corporate CUSIP numbers from Standard & Poor's CUSIP Service Bureau in respect of the New Common Stock and the New Warrants.

32.     All actions taken by the appropriate officers and directors of Reorganized FairPoint Communications, in the name and on behalf of Reorganized FairPoint Communications, to determine whether to list and trade the New Common Stock and New Warrants on either the New York Stock Exchange (the "NYSE") or the Nasdaq Global Stock Market ("Nasdaq"), and to effect the listing and trading of the New Common Stock and New Warrants on either the NYSE or Nasdaq, including, but not limited to, the preparation, execution (personally or by attorney), delivery and filing of all necessary applications, documents, forms, instruments, certificates and agreements with the NYSE or Nasdaq, as applicable, and the Securities and Exchange Commission, are hereby ratified, adopted, confirmed and approved in all respects as the authorized acts of Reorganized FairPoint Communications.

33.     The appropriate officers and directors of Reorganized FairPoint Communications are authorized and empowered in the name and on behalf of Reorganized FairPoint Communications, to take, or cause to be taken, all additional actions necessary or advisable to effect the listing and trading of the New Common Stock and New Warrants on the NYSE or Nasdaq, as applicable, including, but not limited to, the preparation, execution (personally or by attorney), delivery and filing of all necessary applications, documents, forms, instruments, certificates and agreements with the NYSE or Nasdaq, as applicable, and the Securities and Exchange Commission, all in such forms as appropriate officers or directors of Reorganized FairPoint Communications executing the same shall approve, such approval to be conclusively

evidenced by the execution and filing thereof, the payment by Reorganized FairPoint Communications of filing, listing or application fees, the preparation of temporary and permanent certificates for the New Common Stock and New Warrants and the appearance of any such appropriate officer or director of Reorganized FairPoint Communications before NYSE or Nasdaq officials, as applicable.

34.     Reorganized FairPoint Communications is hereby authorized to perform its obligations under the original listing application to the NYSE or Nasdaq, as applicable, and the original listing application listing fee agreement, including any supplements and amendments thereto, and consummate the transactions contemplated thereby.

35.     The appropriate officers and directors of Reorganized FairPoint Communications are authorized and empowered, in the name and on behalf of Reorganized FairPoint Communications, to do, or cause to be done, from time to time, all such other acts and things and to execute and deliver all such instruments and documents, as each such officer or director shall deem necessary or appropriate to cause Reorganized FairPoint Communications to become listed and admitted to trade on the NYSE or Nasdaq, as applicable, and otherwise to carry out the purpose and intent of the foregoing.

36.     All Plan Distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be in full and final satisfaction of FairPoint's obligations under the Plan. The classifications of Claims and Equity Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by FairPoint's creditors and interest holders in connection with voting on the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent and in no event shall be deemed to modify or

otherwise affect the actual classification of such Claims and Equity Interests under the Plan for Distribution purposes; and (c) shall not be binding on FairPoint, Reorganized FairPoint, the Litigation Trust or any holder of a Claim against FairPoint for purposes other than voting on the Plan.

37.     Notwithstanding anything to the contrary contained in the Plan, (i) the Distribution Record Date for any Claim other than a Class 4 Prepetition Credit Agreement Claim shall mean the date that is one Business Day after the Confirmation Date, and (ii) the Distribution Record Date with respect to Class 4 Prepetition Credit Agreement Claims shall be the Confirmation Date.

38.     In furtherance of the rights and powers of the Disbursing Agent set forth in the Plan, the Disbursing Agent shall have no duty or obligation to make Distributions to any holder of an Allowed Claim unless and until such holder executes and delivers, in a form acceptable to the Disbursing Agent, any documents applicable to such Distributions.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date, including reasonable fees and expenses of counsel, shall be paid in Cash by Reorganized FairPoint without further order of the Bankruptcy Court within twenty (20) days of receipt of an invoice by Reorganized FairPoint.  In the event that Reorganized FairPoint objects to the payment of such invoice for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after good faith negotiations, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by Reorganized FairPoint.

39.     All Distributions under the Plan shall be made in accordance with Section IX of the Plan.  The Prepetition Credit Agreement Agent shall be the Disbursing Agent for the holders

of all Prepetition Credit Agreement Claims. Accordingly, Distributions for the benefit of the holders of Prepetition Credit Agreement Claims (other than Distributions on account of Litigation Trust Interests) shall be made to the Prepetition Credit Agreement Agent. The Prepetition Credit Agreement Agent shall, in turn, promptly administer the Distributions to the holders of Allowed Prepetition Credit Agreement Claims, in accordance with the Plan. The issuance and Distribution of the New Common Stock, the Litigation Trust Interests, the Cash Payment (if any) and Cash Distributions out of the Reserves (if any) to the Prepetition Credit Agreement Agent, and the issuance and execution of the New Credit Agreement and delivery of the New Term Loan shall be deemed Distributions to the respective holders of Allowed Prepetition Credit Agreement Claims. Upon delivery to the Prepetition Credit Agreement Agent of the Distributions required under the Plan as provided in Section 9.6.2 of the Plan, Reorganized FairPoint shall be released of all Liability with respect to the delivery of such Distributions. The Prepetition Credit Agreement Agent shall be exculpated by all Persons from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon it as Disbursing Agent under the Plan or any order of the Bankruptcy Court pursuant to or in furtherance of the Plan. No holder of a Claim or an Equity Interest or other party in interest shall have or pursue any Claim or Cause of Action against the Prepetition Credit Agreement Agent for making payments in accordance with the Plan or for implementing provisions of the Plan in its capacity as Disbursing Agent.

40.     Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between FairPoint and any Person shall be deemed assumed by FairPoint as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered

prior to the Effective Date, (b) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, or (c) that is specifically designated as a contract or lease to be rejected on Schedules 11.1(A) (executory contracts) or 11.1(B) (unexpired leases), which schedules shall be contained in the Plan Supplement; *provided, however*, that FairPoint shall have the right, on or prior to the Effective Date, to amend Schedules 11.1(A) and 11.1(B) to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be either assumed or rejected, respectively, as provided in such amended schedules, as of the Effective Date. FairPoint shall provide notice of any amendments to Schedules 11.1(A) and/or 11.1(B) to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on Schedules 11.1(A) or 11.1(B) shall not constitute an admission by FairPoint that such document is an executory contract or an unexpired lease or that FairPoint has any liability thereunder.

41.     All proofs of Claims arising from the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Bankruptcy Court and served upon FairPoint or Reorganized FairPoint, as applicable, no later than thirty (30) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order and (c) notice of an amendment to the schedule of rejected contracts (solely with respect to Claims arising from contracts added to such schedule pursuant to the amendment). Any Person that is required to file a proof of Claim arising from the rejection of an executory contract or an unexpired lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall

not be enforceable against FairPoint or Reorganized FairPoint or the Estates and their respective properties, and FairPoint and Reorganized FairPoint and the Estates and their respective properties shall be forever discharged from any and all Liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to permanent injunction pursuant to section 14.4 of the Plan.

42.     FairPoint has satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption of executory contracts and unexpired leases pursuant to the Plan. To that end, and as described on the record at the Confirmation Hearing, FairPoint has reached agreements ("Cure Agreements") with certain counterparties to executory contracts and unexpired leases regarding assumption and, as the case may be, amendment of such contracts and leases, in the form attached as Exhibit B to this Confirmation Order. The Cure Agreements reflect a reasonable and good faith exercise of FairPoint's business judgment under the circumstances. Accordingly, the Cure Agreements should be and hereby are approved. The execution, delivery, or performance by FairPoint or Reorganized FairPoint, as the case may be, of any documents in connection with the Cure Agreements, and compliance by FairPoint or Reorganized FairPoint, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or the Confirmation Order.

43.     All parties to executory contracts or unexpired leases to be assumed pursuant to the Plan were afforded with good and sufficient notice of such assumption and an opportunity to object and be heard. Except to the extent that different treatment has been agreed to by the parties, on the Effective Date or as soon thereafter is practicable, Reorganized FairPoint shall pay the Cure amount, if any, identified in any notice of proposed assumption and proposed Cure

amount that FairPoint served with respect to executory contracts or unexpired leases to be assumed pursuant to Section XI of the Plan. In the event that FairPoint has not proposed a Cure amount to be sent to any applicable third party, the Cure amount for such third party's executory contract or unexpired lease shall be deemed to be zero dollars ($0.00). Any objection by a counterparty to an executory contract or unexpired lease to a proposed assumption or related Cure amount must have been filed, served, and actually received by FairPoint at least ten (10) days prior to the commencement of the Confirmation Hearing. Any counterparty to an executory contract and unexpired lease that failed to object timely to the proposed assumption or Cure amount is deemed to have assented to such matters.

44.     With respect to objections that were timely filed regarding (1) the amount of any payments to cure a default under an executory contract or unexpired lease that is to be assumed under the Plan, (2) the ability of Reorganized FairPoint or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the Bankruptcy Court shall hold a hearing on a date to be set by the Bankruptcy Court upon the request of Reorganized FairPoint. Notwithstanding any other provisions of this Confirmation Order, all objections that were timely filed as described in the preceding sentence are specifically preserved pending further order of the Bankruptcy Court, subject to all of FairPoint's rights and defenses. Unless otherwise resolved by the parties, the Bankruptcy Court shall determine whether any disputed defaults require Cure and any applicable Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption, unless otherwise agreed between FairPoint or Reorganized FairPoint, as the case may be, and the counterparty to such executory

contract or unexpired lease.  If any objection to Cure is sustained by the Bankruptcy Court, FairPoint, in its sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

45.     To the extent (A) FairPoint is a party to any contract, lease or other agreement providing for the purchase, by a third party, of access to FairPoint's facilities or services, (B) any such agreement constitutes an executory contract or unexpired lease and (C) such agreement (1) has not been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (2) is not subject to a pending motion for reconsideration or appeal of an order authorizing the assumption or rejection of such executory contract or unexpired lease, (3) is not subject to a motion to assume or reject such executory contract or unexpired lease filed on or prior to the Effective Date, or (4) is not identified for rejection on Schedules 11.1(A) or 11.1(B) of the Plan Supplement, then such agreement will be assumed as of the Effective Date by FairPoint, in accordance with the provisions and requirements of sections 365 of the Bankruptcy Code.  No Cure shall be paid and no other form of refund or billing credit shall be given in connection with the assumption of such an agreement.

46.     Except as specifically set forth in Sections 8.13 and 8.16 of the Plan, or as required by the Order Pursuant to Bankruptcy Code Sections 105(a), 363 and 365 and Bankruptcy Rules 6006 and 9014 Authorizing Debtors to Assume Certain Agreements and Settle Certain Related Claims Concerning Capgemini U.S. LLC entered by this Bankruptcy Court on May 4, 2010, as of the Effective Date, FairPoint and Reorganized FairPoint shall have no continuing indemnification obligations under any of its executory contracts.

47.     Unless specifically rejected by order of the Bankruptcy Court, all of FairPoint's insurance policies which are executory, if any, and any agreements, documents or instruments

relating thereto, shall be assumed under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that FairPoint or Reorganized FairPoint may hold against any entity, including, without limitation, the insurer, under any of FairPoint's policies of insurance.

48.     Except as provided in Section 3.4 of the Plan, if any Administrative Expense Claim, including an ordinary course expense, is not billed or a request for payment is not made within sixty (60) days after the Effective Date, claims for payment of such Administrative Expense Claims shall be barred; *provided however*, the foregoing deadline shall not apply to the Persons referred to in decretal paragraph 4(viii) of the Bankruptcy Court's order establishing the Bar Date (Docket No. 568).

49.     Notwithstanding anything contained in the Plan to the contrary, unless rejected by order of the Bankruptcy Court, Reorganized FairPoint shall continue to honor, in the ordinary course of business, the Benefit Plans of FairPoint entered into before or after the Petition Date and not since terminated. On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, Reorganized FairPoint shall continue to pay all retiree benefits of FairPoint (within the meaning of and subject to section 1114 of the Bankruptcy Code) for the duration of the period for which the FairPoint entities had obligated themselves to provide such benefits and subject to the right of Reorganized FairPoint to modify or terminate such retiree benefits in accordance with the terms thereof.

50.     Upon the Effective Date, Reorganized FairPoint will assume the FairPoint Communications Northern New England Pension Plan for Management Employees and the FairPoint Communications Northern New England Pension Plan for Represented Employees (together, the "Pension Plans"), and contribute to the Pension Plans the amount necessary to

satisfy the minimum funding standards under sections 302 and 303 of ERISA, 29 U.S.C. §§ 1082 and 1083, and sections 412 and 430 of the Internal Revenue Code, 26 U.S.C. §§ 412 and 430. Nothing in the Plan will be construed as discharging, releasing, or relieving FairPoint, or its successors, including Reorganized FairPoint, or any party, in any capacity, from any liability imposed under any law or legally valid regulatory provision with respect to the Pension Plans or the Pension Benefit Guaranty Corporation (the "PBGC"). The PBGC and the Pension Plans will not be enjoined or precluded from enforcing such liability as a result of any provision of the Plan or this Confirmation Order.

51.     As to the United States, its agencies or departments, nothing in the Plan or Confirmation Order shall discharge, release, or otherwise preclude: (1) any liability of FairPoint or Reorganized FairPoint arising on or after the Confirmation Date; (2) any liability that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (3) any valid right of setoff or recoupment.

52.     Notwithstanding anything to the contrary in Section 3.3 of the Plan, if FairPoint or Reorganized FairPoint elects to make Cash installment payments on account of an Allowed Priority Tax Claim held by the Internal Revenue Service of the United States ("IRS"), then such payments shall be made on a quarterly basis.

53.     Notwithstanding Section 9.16 of the Plan, any interest payable to the IRS on account of an Allowed Priority Tax Claim shall not be tolled during any period where such Allowed Priority Tax Claim is a Disputed Claim.

54.     The effect of confirmation of the Plan, the results thereof, and the transactions resulting therefrom or any other effect of the Chapter 11 Cases, including specifically the changes to FairPoint Communications' board of directors and Equity Interests, shall not be and

are not a "change of control" and shall not trigger any such or similar provision of any of the executory contracts and unexpired leases, including Benefit Plans, assumed by FairPoint.

55. Pursuant to Section 8.6 of the Plan, effective as of the Effective Date, the property, business and affairs of Reorganized FairPoint Communications shall become the general responsibility of the New Board. Pursuant to Section 8.6.2 of the Plan, effective as of the Effective Date, the persons identified in the Plan Supplement as initial members of the New Board shall constitute the members of the Board of Directors of Reorganized FairPoint Communications.

56. Pursuant to Section 8.7.1 of the Plan, the executive officers of FairPoint immediately prior to the Effective Date shall serve as the initial officers of Reorganized FairPoint on and after the Effective Date. Such officers shall serve in accordance with applicable nonbankruptcy law, any employment agreement with Reorganized FairPoint and, as appropriate, the New Organizational Documents or, with respect to Persons other than Reorganized FairPoint Communications, its existing articles of incorporation and bylaws.

57. Pursuant to Section 8.13 of the Plan, on the Effective Date, except as otherwise provided for in the Plan or the Regulatory Settlements, (a) all securities, equity interests, notes, bonds, indentures and other instruments or documents evidencing or creating any indebtedness, or obligation of FairPoint, including without limitation, the Prepetition Credit Agreement, the Senior Notes and the Old FairPoint Equity Interests (except such equity interests, notes or other instruments evidencing indebtedness or obligations of FairPoint that are Reinstated under the Plan, including, without limitation, the Subsidiary Equity Interests) shall be as against FairPoint and its successors cancelled and extinguished, and (b) the obligations of FairPoint under any agreements, indentures, or certificates of designation governing any securities, equity interests,

notes, bonds, indentures and other instruments or documents evidencing or creating any

indebtedness, or obligation of FairPoint, including, without limitation, the Prepetition Credit

Agreement, the Senior Notes and the Old FairPoint Equity Interests (except such equity interests,

notes or other instruments evidencing indebtedness or obligations of FairPoint that are Reinstated

under the Plan, including, without limitation, the Subsidiary Equity Interests), as the case may

be, shall be fully released, terminated, extinguished and discharged; provided, however, that

notwithstanding anything to the contrary in the Plan, the provisions of the Prepetition Credit

Agreement and the DIP Facility governing the relationship between the Prepetition Credit

Agreement Agent, the DIP Agent, FairPoint Communications, the Prepetition Credit Agreement

Lenders and the DIP Lenders, as applicable, including but not limited to those provisions relating

to the rights of the Prepetition Credit Agreement Agent and the DIP Agent to expense

reimbursement, indemnification and other similar amounts (either from FairPoint

Communications, the Prepetition Credit Agreement Lenders or the DIP Lenders), shall not be

affected by and shall survive the Plan, the entry of the Confirmation Order and the occurrence of

the Effective Date.

       58.     Pursuant to Section 8.14 of the Plan, on the Effective Date, Reorganized FairPoint

shall be deemed to have adopted the Long Term Incentive Plan without any further action by

FairPoint, Reorganized FairPoint, Reorganized FairPoint's shareholders or the New Board.

       59.     Pursuant to Section 8.15 of the Plan, on the Effective Date, Reorganized FairPoint

shall be deemed to have adopted and authorized the Success Bonuses without any further action

by FairPoint, Reorganized FairPoint, Reorganized FairPoint's shareholders or the New Board.

       60.     Pursuant to section 1141(b) and (c) of the Bankruptcy Code, except as otherwise

provided in the Plan, the property of the Estate and FairPoint shall revest in Reorganized

FairPoint on the Effective Date of the Plan. From and after the Effective Date, Reorganized FairPoint may operate its respective businesses and may use, acquire and dispose of property free of any restrictions imposed under the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court. As of the Effective Date, all property of FairPoint and Reorganized FairPoint shall be free and clear of all Claims, Liens and interests, except as specifically provided herein, in the Plan, or in the New Credit Agreement and the other Financing Documents. Without limiting the foregoing, Reorganized FairPoint may, without application to or approval by the Bankruptcy Court, pay any reasonable fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) that Reorganized FairPoint may incur after the Effective Date.

61. On the Effective Date, in consideration of the Distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Old FairPoint Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged FairPoint, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Old FairPoint Equity Interests, rights and Liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or terminated Old FairPoint Equity Interest in, FairPoint.

62. Subject to the reservations of rights contained in the Regulatory Settlements and the terms of Section 16.18 of the Plan, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date,

*provided*, *however*, that no such injunction or stay shall preclude enforcement of any and all parties' rights under the Plan and Plan Documents.

63.     None of FairPoint, the Debtors-in-Possession, Reorganized FairPoint, and the other Released Parties or the Litigation Trustee shall have or incur any liability for any Claim, Cause of Action or other assertion of Liability whatsoever for any act taken or omitted to be taken in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, dissemination, implementation, approval, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with, relating to or arising out of the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided, however*, that the foregoing shall not affect the Liability of any Person resulting from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, fraud, gross negligence, criminal conduct, breach of fiduciary duty (to the extent applicable) and *ultra vires* acts.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges and any other applicable law or rules protecting such Persons from liability.  Furthermore, this exculpation is not intended to violate any requirement of the New York Rules of Professional Conduct.

64.     Pursuant to, and subject to, Section 14.2 of the Plan, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services of the Released Parties, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, FairPoint, their respective Estates, Reorganized FairPoint and each Person who, directly or indirectly, has held, holds, or may hold Claims or Old FairPoint Equity Interests shall release, waive and discharge

unconditionally and forever each of the Released Parties from any and all Claims, Causes of Action and Liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence: (a) taking place before the Petition Date in connection with or relating to FairPoint; and (b) in connection with, related to, or arising out of FairPoint's Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; *provided*, that the foregoing shall not operate as a waiver of or release from any Causes of Action resulting from the willful misconduct, fraud, gross negligence, criminal conduct, breach of fiduciary duty (to the extent applicable) and ultra vires acts of any Released Party; *provided further*, that (i) the foregoing releases will not release obligations arising under the Plan, and (ii) the foregoing releases will not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan. Furthermore, the foregoing releases are not intended to violate any requirement of the New York Rules of Professional Conduct.

65. Pursuant to, and subject to, Section 14.4 of the Plan, except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons shall be permanently enjoined from commencing or continuing in any manner against FairPoint or Reorganized FairPoint, their successors and assigns, or the Litigation Trust, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, Liability, Cause of Action, interest or remedy released or to be released pursuant to the Plan, the Confirmation Order, or by any other Final Order of the Bankruptcy Court. Except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons shall be permanently enjoined from asserting against FairPoint, the Debtors-in-Possession,

FairPoint's Estates, Reorganized FairPoint, the Released Parties, the Litigation Trust and their respective assets and properties, any other Claims or Equity Interests in connection with, relating to or arising out of any documents, instruments, or any act or omission, transaction or other activity of any kind or nature relating to FairPoint that occurred before the Effective Date. The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, including, without limitation, any interest accrued on Claims from and after the Petition Date, against FairPoint or any of their respective assets, properties or Estates. On the Effective Date, all such Claims against, and Equity Interests in, FairPoint shall be fully released and discharged.

66.     This Bankruptcy Court shall have jurisdiction of all matters in connection with, arising out of, or related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code to the extent provided and as set forth in the Plan, including Section 16.18 of the Plan.

67.     On or before the Effective Date, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid in Cash. Following the Effective Date, all such fees shall be paid by the applicable entity included in the definition of "Reorganized FairPoint" until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

68.     On the Effective Date, except as provided in Section 8.10 of the Plan, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to,

arising from or in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate, except for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

69.     Except as otherwise provided in Section 3.4 of the Plan, all Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is forty five (45) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or allowing any such Administrative Expense Claim.  Reorganized FairPoint is authorized to pay reasonable compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

70.     Except as otherwise provided in the Plan and the Litigation Trust Agreement, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized FairPoint, as successors-in-interest to FairPoint and its Estates, will retain and may enforce FairPoint's Causes of Action that are property of FairPoint and its Estates (including Avoidance Actions); the Litigation Trust may enforce all rights to commence and pursue, as appropriate, any and all Litigation Trust Claims, and as of the Effective Date, FairPoint and Reorganized FairPoint shall have assigned the Litigation Trust Claims to the Litigation Trust.  Reorganized FairPoint shall retain and enforce all defenses and counterclaims to all Claims asserted against FairPoint and its Estates,

including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code. Reorganized FairPoint may pursue such Causes of Action (other than the Litigation Trust Claims), counterclaims and defenses, as appropriate, in accordance with its best interests, as determined by Reorganized FairPoint. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, FairPoint and Reorganized FairPoint expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action by reason of entry of this Confirmation Order.

71.     Notwithstanding anything in the Plan or this Confirmation Order to the contrary, AT&T[3] reserves the right to assert rights of setoff under section 553 of the Bankruptcy Code or applicable non-bankruptcy law, and FairPoint reserves the right to oppose such rights of setoff on any and all grounds, other than any specific provisions in the Plan or this Confirmation Order that may bar such rights of setoff. For the avoidance of doubt, FairPoint reserves its right to oppose such rights of setoff based upon confirmation of the Plan and the discharge of claims pursuant to section 1141 of the Bankruptcy Code as provided for in Section 13.2 of the Plan.

---

[3]     For purposes hereof, the definition of "AT&T" includes the following entities: AT&T Corp.; Teleport Communications of Boston, Teleport Communications Group Inc.; SBC Long Distance, LLC, SBC Global Services, Inc.; AT&T Accounts Receivable Bankruptcy Center; Southwestern Bell Telephone Company, New Cingular Wireless PCS, LLC; AT&T Services, Inc.; Illinois Bell Telephone Company, Indiana Bell Telephone Company Incorporated; Michigan Bell Telephone Company; The Ohio Bell Telephone Company; and Wisconsin Bell, Inc.

72.     Notwithstanding anything in the Plan or this Order to the contrary, Verizon[4] reserves the right to assert rights of setoff under section 553 of the Bankruptcy Code or applicable non-bankruptcy law, and FairPoint or the Litigation Trustee reserves the right to oppose such rights of setoff on any and all grounds, other than any specific provisions in the Plan or this Order that may bar such rights of setoff.  For the avoidance of doubt, FairPoint and the Litigation Trustee reserve the right to oppose such rights of setoff based upon confirmation of the Plan and the discharge of claims pursuant to section 1141 of the Bankruptcy Code as provided for in Section 13.2 of the Plan.

73.     All Distributions under the Plan that are unclaimed for a period of one (1) year after Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in Reorganized FairPoint and any entitlement of any holder of any Claims to such Distributions shall be extinguished, discharged and forever barred.

74.     Subject to the occurrence of the Effective Date, Reorganized FairPoint shall assume all existing indemnification obligations of FairPoint in favor of the directors of FairPoint who held such position on June 1, 2009 and thereafter, and the officers of FairPoint listed on Exhibit G to the Plan (collectively, the "Indemnified Persons"), and the directors, officers and employees of Reorganized FairPoint on and following the Effective Date (whether such indemnification obligations are in FairPoint's charter, bylaws, contracts or otherwise); *provided that* Reorganized FairPoint's indemnification obligation to and for the benefit of the Indemnified Persons shall be limited in the aggregate to twenty million dollars ($20,000,000.00) with respect

---

[4]     For purposes hereof, the definition of "Verizon" includes, without limitation, all wholly-owned subsidiaries of Verizon Communications Inc. (including, without limitation, Verizon Services Corp., Verizon Network Integration Corp., Verizon Information Technologies LLC, Verizon Business Network Services Inc., Verizon Corporate Services Group Inc., Verizon Select Services Inc., MCI Communications, Inc. d/b/a Verizon Business Services and MCI Network Services, Inc., and the operating telephone company subsidiaries of Verizon Communications Inc.) and Cellco Partnership d/b/a Verizon Wireless and its affiliates.

to all Claims asserted against such Indemnified Persons that arose prior to the Petition Date.  In addition, following the Effective Date, Reorganized FairPoint shall purchase director and officer liability insurance for the directors and officers of Reorganized FairPoint on a going-forward basis (in the form and substance satisfactory to the New Board).  Nothing herein shall be deemed to affect any applicable insurance coverage.

75.     FairPoint has made a sufficient and uncontroverted showing of substantial cost and harm that would result if the Plan is not consummated as soon as practicable after entry of this Confirmation Order. Accordingly, pursuant to Bankruptcy Rule 3020(e), this Confirmation Order is immediately effective and shall not be stayed following its entry.

76.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

77.     Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), Reorganized FairPoint shall file and serve notice of entry of this Confirmation Order in substantially the form annexed hereto as Exhibit C (the "Notice of Confirmation Order") on all creditors and interest holders, the United States Trustee for the Southern District of New York, and all other parties in interest entitled to receive notice under the Bankruptcy Court's Order, dated November 18, 2009, implementing notice procedures in the Chapter 11 Cases (the "Case Management Order") [Docket No. 162], by causing the Notice of Confirmation Order to be delivered to such parties by first-Class mail, postage prepaid, within 10 business days after entry of this Confirmation Order. The Notice of Confirmation Order shall also be posted on the website of FairPoint's Bankruptcy

Court-appointed voting and tabulation agent, BMC Group Inc., at: www. bmcgroup.com/fairpoint.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.  The form of Notice of Confirmation Order substantially in the form annexed hereto as <u>Exhibit C</u> is approved.

78.     As soon as practicable after the occurrence of the Effective Date, Reorganized FairPoint shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all other parties in interest entitled to receive notice under the Case Management Order.  The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in this Confirmation Order and the Plan, and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements and bills of sale) or the taking of such other actions as are necessary to effectuate the transactions contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

79.     On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

80.     FairPoint's right to revoke or withdraw the Plan prior to the Effective Date, after consultation with the Prepetition Credit Agreement Agent and the Lender Steering Committee, shall be reserved.  Subject to the foregoing sentence, if FairPoint revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein or therein shall constitute or be deemed a waiver or release of any Claims or

Equity Interests by or against FairPoint or any other Person or to prejudice in any manner the rights of FairPoint or any Person in any further proceedings involving FairPoint.

81.     If any of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by FairPoint. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

82.     The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.  The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent.

83.     The absence of an express reference in the Plan or Plan Supplement documents shall not be deemed to be an amendment, modification, or waiver of the Regulatory Settlements or any of the obligations and undertakings required thereunder.

84.     The Plan is hereby modified to provide that the New Board of directors will appoint a "regulatory subcommittee" (the "Regulatory Subcommittee") which shall be charged with monitoring compliance with the 2008 Merger Order, as modified by the Regulatory Settlements, and all other regulatory matters involving the State of Vermont, New Hampshire and Maine.

85.     For the avoidance of doubt, pursuant to the Regulatory Settlements, any management bonuses shall be based on a combination of EBITDAR (EBITDA plus restructuring costs) and service quality metrics goals, and the weighting for each of these categories shall be computed and clearly stated for the incentive and bonus plan for each individual and for the company in total.

Dated:  January 13, 2011
        New York, New York

                                        /s/Burton R. Lifland_____
                                        HONORABLE BURTON R. LIFLAND
                                        UNITED STATES BANKRUPTCY JUDGE