**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X          **FOR PUBLICATION**

In re:                                                                                    Chapter 11

FAIRPOINT COMMUNICATIONS, INC., *et al.,*          Case No. 09-16335 (BRL)

                                                                                                                 (Jointly Administered)

                                 Debtors.
----------------------------------------------------------X
APPEARANCES**:**

PAUL HASTINGS JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, New York 10022
Telephone:   (212) 318-6000
Facsimile:   (212) 319-4090
<u>By</u>:     Luc A. Despins
        James T. Grogan

*Attorneys for Debtors and Debtors in Possession*

WIGGIN & NOURIE, P.A
670 North Commercial Street, Suite 305
P.O. Box 808
Manchester, New Hampshire 03105
Telephone:   (603) 629-4528
Facsimile:   (603) 623-8442
<u>By</u>:     Donna-Marie Cote

WAYNE GREENWALD, PC
475 Park Avenue South, 26th Floor
New York, New York 10016
Telephone:   (212) 983-1922
Facsimile:   (212) 983-1965
<u>By</u>:     Wayne Greenwald

*Attorneys for Creditor Isidoro M. Flores*

1

Before: Hon. Burton R. Lifland
        United States Bankruptcy Judge

**MEMORANDUM AND ORDER SUSTAINING FAIRPOINT'S OBJECTION
PURSUANT TO SECTION 502(b)(7) OF THE BANKRUPTCY CODE REGARDING
PROOF OF CLAIM NO. 306 FILED BY ISIDORO FLORES AND IMPOSING
SANCTIONS**

Before this Court is the objection (the "Objection") of FairPoint Communications, Inc., *et al.* ("FairPoint" or "Debtors") pursuant to section 502(b)(7) of the Bankruptcy Code (the "Code") to proof of claim number 306 (the "Claim") filed by Isidoro M. Flores ("Flores") asserting a $1 million unsecured claim for wrongful termination on the basis of age discrimination under the Age Discrimination in Employment Act of 1967 (the "ADEA") and New Hampshire Revised Statutes Annotated Chapter 354-A (the "NH Statute"). On February 7, 2011, FairPoint filed an objection to the Claim arguing that section 502(b)(7) of the Code caps the Claim at $100,000. On March 9, 2011, Flores filed, albeit tardily, an opposition to the Objection. Upon review of the papers and after oral argument, FairPoint's Objection to the Claim is hereby SUSTAINED.

**DISCUSSION**

Section 502(b)(7) of the Code caps claims of employees against debtors for damages resulting from the termination of an "employment contract" to the lesser of one year's salary or the salary that accrues from the date of the employee's termination to the petition date.[1] This section 502 limitation applies when two conditions are met—the claim is by an employee, and the damages sought are for the termination of an employment contract. *See In re WorldCom, Inc.*, 361 B.R. 675, 681 (Bankr. S.D.N.Y. 2007). A writing is considered an "employment contract" under this section if it "establishes the terms and conditions of an employment

---

[1] Although the accrued salary from Flores's termination through the petition date was $58,333, Debtors nevertheless seek to cap the Claim at $100,000.

2

relationship." *In re The Charter Co.*, 82 B.R. 144, 146 (Bankr. M.D. Fla. 1998). In capping claims arising from the termination of employment, section 502(b)(7) of the Code reflects Congress's intent to protect a debtor's estate, and in particular, other creditors of a debtor, from being burdened by exorbitant breach of employment claims. *In re Murray Indus., Inc.*, 114 B.R. 749, 752 (Bankr. M.D. Fla. 1990). In this light, courts have broadly interpreted section 502(b)(7) of the Code to cap claims arising from the termination of an employee contract whether the claim was based on contractual damages or violation of another act, like the National Labor Relations Act (the "NLRA"). *In re Wheeling-Pittsburgh Steel Corp.*, 113 B.R. 187, 193 (Bankr. W.D. Pa. 1990), *revs'd* on other grounds.

On its face, section 502(b)(7) of the Code applies to the current Claim, which should be capped based on the plain language of the statute. Flores was an employee of FairPoint subject to an employment agreement and his claim for damages results from his termination—facts that Flores does not dispute. Thus, the age discrimination Claim falls within those claims that section 502(b)(7) of the Code intends to limit. However, Flores presents several unavailing arguments to explain why section 502(b)(7) of the Code is inapplicable to his Claim. Flores argues that the ADEA is remedial legislation that should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment. Allowing an ADEA claim to be capped by section 502(b)(7) of the Code undermines Congress's intent behind the ADEA legislation. Further, Flores proposes that section 502(b)(7) of the Code applies only to claims stemming from the actual termination. According to Flores, his claim is not for damages for the termination but for the discriminatory motive behind the termination—a claim that Congress never intended to limit through section 502(b)(7) of the Code.

This argument is incorrect, however, because, as noted above, section 502(b)(7) of the Code applies to any claim stemming from the termination of an employment arrangement provided the claim is by an employee and the damages stem from termination of an employment contract. Indeed, section 502(b)(7) of the Code has been applied to cap an NLRA violation despite the fact that it is a remedial statute. *In re Wheeling-Pittsburgh Steel Corp.*, 113 B.R. at 193. Moreover, similar arguments that tried to incorporate motive-based exceptions into the Code were rejected by the Supreme Court on the grounds that if Congress meant to include such exceptions they would have explicitly done so. *See FCC v. Next Wave Pers. Commc'n, Inc.,* 537 U.S. 293, 301-02 (2003) (rejecting argument attempting to allow a motive-based exception to section 525 of the Code). This case provides that motivation behind the termination, a theme not mentioned in the plain language of section 502(b)(7) of the Code, is not in the calculus of the statute.

Next Flores argues that the NH Statute claim is more akin to a tort claim than a contract claim, and that section 502(b)(7) of the Code does not cap such claims. However, this argument is incorrect for many reasons. First, section 502(b)(7) of the Code may cap tort claims. The case that Flores cites, *In re Holm*, does not stand for the proposition that this section is inapplicable to torts claims. 931 F.2d 620, 623 (9th Cir. 1991). In that case, the court did not cap the asserted claims of abuse of corporate control and tortious interference with contracts, holding that "the relationship between the parties was that of shareholders of a corporation rather than an employer-employee relationship." *Id.* Thus, the court found section 502(b)(7) of the Code inappropriate because the case did not stem from an "employment contract" and not because section 502(b)(7) of the Code does not apply to tort claims. By contrast, Flores's claims are all based on the employer-employee relationship, and fall squarely within the ambit of section

4

502(b)(7) of the Code.

Second, no court has ever held that violations of the NH Statute gives rise to a tort claim. Courts have consistently held that the analysis of age discrimination cases under the NH Statute is the same as the ADEA, and even Flores admits that the ADEA is a contractually-based claim. Flores misconstrues an advisory opinion from the New Hampshire Human Rights Commission *Merrill v. Fall Mountain Sch. Dist.*, to support his idea that the NH Statute is dissimilar to the ADEA and, consequently, not capped by section 502(b)(7) of the Code. EA 0313-06, 16D-2006-01191 (New Hampshire Human Rights Commission). However, *Merrill* only discussed how liability must be established under the NH Statute. The court concluded that the ADEA requirement of showing that age was the "but for" cause of the adverse employment decision is not the applicable causational standard in the NH Statute. This decision is irrelevant for purposes of the cap under section 502(b)(7) of the Code because the cap only matters if the claimant has already proven liability and established damages. The decision has nothing to do with defining the underlying claim of the NH Statute, and only concerns evidentiary standards and burden shifting.

Flores cannot argue that he has suffered some type of personal injury from his termination in order to evade the cap of section 502(b)(7) of the Code. It is settled law in New Hampshire that workers cannot assert claims against employers for emotional distress and other tort claims for personal injuries arising out of the employment relationship. *See, e.g., Censullo v. Brenka Video, Inc.*, 989 F.2d 40, 43 (1st Cir. 1993) (applying New Hampshire law and citing *O'Keefe v. Associated Grocers of N.E., Inc.*, 424 A.2d 199, 201 (N.H. 1980)).

Flores's final argument is that insurance will cover his claim and, therefore, section 502(b)(7) of the Code is not implicated because the Claim will not burden FairPoint. Flores may

5

be correct, and in cases where a debtor is unaffected by the payment of employment claims, such payments will not necessarily be capped. *See Hall v. Goforth (In re Goforth),* 179 F.3d 390, 395 (5th Cir. 1999) (holding third party jointly and severally liable for damages from breach of employment agreement is not protected by section 502(b)(7) of the Code). However, insurance is not such a case. Allowing Flores's exorbitant claim to be paid from insurance will potentially burden FairPoint with higher insurance premiums and impair its ability to maintain continuous insurance coverage—precisely the type of matters that section 502(b)(7) of the Code intends to limit.

## SANCTIONS

Finally, notwithstanding all of the porosity of Flores's arguments discussed above, Flores's response is stricken because it was filed late without excuse. Pursuant to Local Rule 9006-1, all answering papers in non-discovery matters must be filed "so as to ensure actual receipt not later than seven days before the return date." This deadline was also incorporated into the Debtors' Motion for Interim and Final Orders, Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rules 1015(c) and 9007, Implementing Certain Notice and Case Management Procedures, Docket #8 at ¶ 26 ("the "Case Management Order"). Instead of following theses timelines, counsel for Flores, Wayne Greenwald ("Counsel"), cavalierly filed the response on the eve of the originally scheduled hearing without requesting an extension of the time to respond to the Objection. Counsel has failed to explain why the response was late-filed and whether the lateness should be excused under the applicable standard of excusable neglect. Accordingly, the response is hereby stricken.

In light of Counsel's late-filed response to the Objection, the Court hereby imposes sanctions on two counts: one for violating this Court's Case Management Order, and the second,

6

for violating the Local Rules.

Federal Rule of Civil Procedure 16(f)(1)(C) ("Rule 16(f)"), incorporated herein through Bankruptcy Rule 7016, allows a court to impose sanctions for failure to comply with a scheduling or other pretrial order. In the case of violation of Local Rules, sanctions are appropriate if the rule itself provides for sanctions. Even where a local rule of bankruptcy courts does not prescribe sanctions for failure to follow, sanctions can be imposed through the inherent power of the court. *In re Chase*, 372 B.R. 142, 155 (Bankr. S.D.N.Y. 2007). The applicable standard in imposing sanctions on an attorney pursuant to a court's inherent power depends on the nature of the conduct in question. A fairly recent case clarified the applicable standard in the Second Circuit when a court's inherent powers are used. *U.S. v. Seltzer*, 227 F.3d 36 (2d Cir. 2000). Prior to the *Seltzer* decision, case law in this Circuit seemed to imply that a finding of bad faith was a prerequisite to imposing sanctions pursuant to a court's inherent authority. The *Seltzer* court clarified that bad faith is necessary only when sanctions are imposed for a lawyer exceeding "conduct of the sort that is normally part of the attorney's legitimate efforts at zealous advocacy for the client." *Id.* at 40. However, in cases where sanctions are imposed for conduct that impacts the orderly running of the court system and is not undertaken for the client's benefit, bad faith need not be shown. As the *Seltzer* court explained: "Under circumstances such as these, sanctions may be justified absent a finding of bad faith given the court's inherent power to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *In re Chase*, 372 B.R at 154 (quoting *U.S. v. Seltzer*, 227 F.3d at 41). Even though bad faith is not required, subsequent cases appear to apply a negligence or recklessness standard in these circumstances. *See id.* (citing *In re Pennie Edmonds LLP*, 323 F.3d 86, 93 (2d Cir. 2003); *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001)).

In the current case, Counsel may be sanctioned for violating Rule 16(f) and Local Rule 9006-1. This Court's Case Management Order is clearly a "scheduling or other pretrial order," subject to sanctions under Rule 16(f). The Case Management Order requires Counsel to give seven days notice; instead, Counsel filed his opposition the night before the scheduled hearing. Counsel has failed to adequately explain his tardiness, and sanctions are appropriate.

Sanctions pursuant to this Court's inherent powers are also justified. Even assuming that a reckless or negligent standard is necessary to impose sanctions pursuant to a court's inherent power, the standards are met here. Both the Local Rules and the Case Management Order unmistakably require seven days notice for the filing of opposition papers. Had Counsel been notified of the applicable time limits through only one rule, perhaps this Court would permit Counsel to claim his tardy filing was an accidental oversight. But where a local rule and an order of the court notify Counsel of the time limits to filing opposition papers, noncompliance certainly rises to recklessness and warrants the imposition of sanctions. Because Counsel's conduct here falls somewhat short of outright bad faith, a token disincentive sanction of $400 is imposed on Counsel for Flores.

**IT IS SO ORDERED**.

Dated: New York, New York                          /s/ Burton R. Lifland
       March 17, 2011                                  United States Bankruptcy Judge