**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:

FAIRPOINT COMMUNICATIONS, INC., *et al.,*

                        Reorganized Debtors.

-----------------------------------------------------------------X

**FOR PUBLICATION**

Chapter 11

Case No. 09-16335 (BRL)

(Jointly Administered)

APPEARANCES**:**


PAUL HASTINGS JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, New York 10022
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
<u>By</u>:    Luc A. Despins
        James T. Grogan

*Attorneys for Reorganized Debtors*


DEPUTY CITY SOLICITOR
41 Green Street
Concord, New Hampshire 03301
Telephone:    (603) 225-8505
Facsimile:    (603) 225-8558
<u>By</u>:    James W. Kennedy (Admitted *Pro Hac Vice*)

*Attorneys for City of Concord*


KRAVET & VOGEL, LLP
1040 Avenue of the Americas, Suite 1101
New York, New York 10018
Telephone:    (212) 997-7634
Facsimile:    (212) 997-7686
<u>By</u>:    Donald J. Kravet

*Attorneys for City of Claremont*

Before: Hon. Burton R. Lifland
    United States Bankruptcy Judge

**MEMORANDUM DECISION (I) GRANTING THE CITY OF CLAREMONT'S
MOTION TO RECONSIDER AND VACATE PURSUANT TO 11 U.S.C. §§ 105, 502(j)
AND BANKRUPTCY RULE 9024 AND (II) DENYING FAIRPOINT'S FIRST OMNIBUS
MOTION TO ESTIMATE THE MAXIMUM ALLOWED AMOUNT OF PROOFS OF
CLAIM PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 502(c) WITH
<u>REGARD TO THE CITIES OF CLAREMONT AND CONCORD</u>**

Before the Court is (i) the City of Claremont's Motion to Reconsider and Vacate the

Court's First Estimation Order as to Claremont Pursuant to 11 U.S.C. §§ 105, 502(j) and

Bankruptcy Rule 9024 (the "Motion for Reconsideration") and (ii) FairPoint's First Omnibus

Motion to Estimate the Maximum Allowed Amount of Proofs of Claim Pursuant to Bankruptcy

Code Sections 105(a) and 502(c) (the "First Estimation Motion") with regard to the City of

Concord ("Concord") and the City of Claremont ("Claremont," and together with Concord, the

"Cities").  Upon consideration of the parties' submissions and oral arguments, the Motion for

Reconsideration is GRANTED and the First Estimation Motion is DENIED with regard to the

Cities.

## I.    <u>CLAREMONT'S MOTION FOR RECONSIDERATION</u>

### a.  Factual History

Claremont acknowledges that on November 6, 2009, it received timely notice of

FairPoint Communications, Inc.'s ("FairPoint") chapter 11 filing, as well as instructions for

filing a proof of claim.  *See* Declaration of Jane F. Taylor in Support of Creditor City of

Claremont's Motion for Reconsideration and Vacate ("Taylor Declaration") (Dkt. No. 1701), Ex.

1, ¶ 4.  On December 7, 2009, Claremont timely filed a proof of claim against FairPoint in the

amount of $423,066.18.[1]  Claremont asserts that $422,003.88 of this total amount represented a priority claim for taxes or penalties owed to a governmental unit, of which $381,156.24 is secured by a property tax lien.  The remaining $1,062.30 represented an unsecured claim against FairPoint for property damage to city-owned property.  *See id.*, ¶¶ 5-6.

On June 15, 2010, FairPoint filed its First Estimation Motion seeking to, among other things, estimate the claims filed by certain New Hampshire municipalities for property taxes allegedly owed on account of FairPoint's use and occupation of public right-of-ways.  With regard to Claremont, FairPoint objected to its proof of claim in the full amount of $423,066.18, arguing that it should be estimated only at $1,062.30, the unsecured amount based on property damage.  Specifically, FairPoint argues that Claremont's secured tax claim in the amount of $422,003.88 should be estimated at zero on the basis of, *inter alia*, equal protection issues pursuant to the New Hampshire State Constitution.

FairPoint's claims agent, BMC Group, Inc. ("BMC"), filed an affidavit of service dated June 16, 2010 ("BMC Affidavit of Service") (Dkt. No. 1486), indicating that the First Estimation Motion was served on all of the relevant New Hampshire municipalities, including Claremont. While the towns of Hinsdale, Newmarket, Raymond, Salem, Seabrook (collectively, the "Five Towns"), Conway and Concord all filed timely objections to FairPoint's First Estimation Motion, Claremont failed to file a response before the July 8, 2010 deadline.  On July 15, 2010, the Court held a hearing on the First Estimation Motion[2] and on July 21, 2010, the Court entered an order that, *inter alia*, estimated Claremont's claim in the unsecured amount of $1,062.30.  *See* Order Granting FairPoint's First Omnibus Motion to Estimate the Maximum Allowed Amount of

[1] It appears that the total amount of Claremont's proof of claim is $423,066.18 and not "$423,096.186," as stated in the Taylor Declaration, as the sum of $422,003.88 and $1,062.30 is $423,066.18.  *See* Taylor Decl., ¶ 6.

[2] At the hearing, the Court did not address the objections to FairPoint's First Estimation Motion submitted by the Five Towns, Conway or Concord.

Proofs of Claim Pursuant to Bankruptcy Code Sections 105(a) and 502(c) [hereinafter the "First Estimation Order"] (Dkt. No. 1679).

Claremont submits that it never received notice of the First Estimation Motion.  *See* Taylor Decl., ¶ 10.  The City Attorney for Claremont, Jane F. Taylor ("Taylor") allegedly became aware of the First Estimation Motion only after counsel for another New Hampshire municipality forwarded a copy of the First Estimation Order to her by email on July 22, 2010, the day after the First Estimation Order was entered.  *See id.*, ¶ 11.  Taylor declared that:

> Upon receiving a copy of the [First Estimation Order], [she] undertook a diligent search of the files within Claremont's possession related to the FairPoint bankruptcy. . . . and made inquiry of Ms. Pam Dyer, the city employee who sorts and distributes all mail received by Claremont. . . . and discovered no evidence of FairPoint's First [Estimation] Motion having been received by Claremont.

*Id.*, ¶ 12.  In addition, Donald J. Kravet, Esq. of Kravet & Vogel, LLP, counsel for Claremont, declared that he promptly contacted counsel for FairPoint in order to reach an agreement to permit Claremont to submit its objection to FairPoint's First Estimation Motion, though apparently such an agreement could not be reached.  *See* Declaration of Donald J. Kravet, Esq. in Support of Creditor City of Claremont's Motion for Reconsideration and Vacate ("Kravet Declaration") (Dkt. No. 1701), Ex. 4, ¶ 2.

Therefore, on August 2, 2010, just 11 days after receiving notice of FairPoint's First Estimation Motion and Order, Claremont filed its Motion for Reconsideration in the form of three declarations: (i) the Taylor Declaration; (ii) a declaration from Pamela Dyer,[3] a clerk for the city of Claremont responsible for handling incoming mail; and the Kravet Declaration.

---

[3] Declaration of Pamela Dyer in Support of Creditor City of Claremont's Motion to Reconsider and Vacate (Dkt. No. 1701), Ex. 3.

Claremont attached its objection[4] to the First Estimation Motion as Exhibit 1 to the Taylor Declaration.   At the time that Claremont filed its objection, FairPoint had not yet filed its Omnibus Reply[5] to timely-filed objections from other similarly situated New Hampshire municipalities, and a hearing on these objections had not been scheduled.   In fact, FairPoint only filed its Omnibus Reply addressing the various objections of the New Hampshire municipalities on October 13, 2010, almost two and a half months after receiving the Claremont Objection.

On October 20, 2010, the Court held a hearing to consider the New Hampshire municipalities' objections to FairPoint's First Estimation Motion, as well as Claremont's Motion for Reconsideration.  Since the hearing, the dispute between Conway and FairPoint was resolved by stipulation dated January 3, 2011, as was the dispute between the Five Towns and FairPoint in a stipulation dated August 30, 2011.  *See* Stipulation and Agreed Order Between FairPoint and Town of Conway, New Hampshire Regarding Certain Tax Claims (Dkt. No. 2048); Agreed Order Resolving FairPoint's First Omnibus Motion to Estimate the Maximum Allowed Amount of Proofs of Claim Pursuant to Bankruptcy Code Sections 105(a) and 502(c), Solely as it Relates to Proofs of Claim 4798, 5897, 5889, 5891 and 6603 (Dkt. No. 2422).

In light of the aforementioned stipulations, only FairPoint's disputes with Claremont and Concord remain outstanding.  The Court will address Claremont's Motion for Reconsideration first, as it deals with the threshold question of whether Claremont's objection may be entertained.

---

[4] Objection of the City of Claremont to FairPoint's First Omnibus Motion to Estimate the Maximum Allowed Amount of Proofs of Claim Pursuant to Bankruptcy Code Sections 105(a) and 502(c) [hereinafter the "Claremont Objection"] (Dkt. No. 1701).

[5] FairPoint's Omnibus Reply to (I) Objections to FairPoint's First Ominbus Motion to Estimate the Maximum Allowed Amount of Proofs of Claim Pursuant to Bankruptcy Code Sections 105(a) and 502(c) Filed by the Towns of Seabrook, Salem, Raymond, Hinsdale, Newmarket and the City of Concord; and (II) City of Claremont's Motion to Reconsider and Vacate Pursuant to 11 U.S.C. §§ 105, 502(j) and Bankruptcy Rule 9024 [hereinafter the "Omnibus Reply"] (Dkt. No. 1804).

### b.  Discussion

Claremont seeks relief from the First Estimation Order pursuant to section 502(j) of the Bankruptcy Code, which permits a court to reconsider a previously disallowed claim based on the "equities of the case."  11 U.S.C. § 502(j); *see In re Enron, Inc., et al.*, 325 B.R. 114, 117 (Bankr. S.D.N.Y. 2005).  Motions for reconsideration are reviewed under Federal Rule of Civil Procedure ("Rule") 60(b), which is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024.  In relevant part, Rule 60(b) states: "[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect."  FED. R. CIV. P. 60(b), (b)(1).  Claremont argues that, pursuant to Rule 60(b)(1)'s "excusable neglect" standard, the Court should vacate the First Estimation Order with regard to Claremont and permit it to be heard on its objection to the First Estimation Motion.

Although the Bankruptcy Code has not defined excusable neglect, the Second Circuit in *American Alliance Insurance Co. v. Eagle Insurance Co.* has promulgated a three factor test to determine whether excusable neglect is present in the context of a Rule 60(b) motion.[6] 92 F.3d 57 (2d Cir. 1996); *see also In re Journal Register Co.*, No. 09-10769, 2010 WL 5376278, at * 2 (Bankr. S.D.N.Y. Dec. 23, 2010) (applying the *American Alliance* test where claimant moved to vacate a court order expunging a bankruptcy claim based on excusable neglect); *Enron*, 325 B.R. at 118 (applying the *American Alliance* test in deciding a motion for reconsideration under Rule 60(b)); *In re Coxeter*, No. 05-19146, 2009 WL 4893170, at * 4 (Bankr. N.D.N.Y. Dec. 10, 2009) ("The Southern District of New York has embraced the

---

[6] Although it is appropriate to construe excusable neglect under the *American Alliance* test, it is also fitting to do so under the less lenient *Pioneer* test.  *See In re JWP Info. Servs., Inc.*, 231 B.R. 209, 211-12 (Bankr. S.D.N.Y. 1999) (noting the potential application of the less lenient *Pioneer* test but ultimately applying the *American Alliance* test).  However, given that briefing before this Court has involved argumentation only under *American Alliance*, the Court will apply that standard to determine the issue.

*American Alliance* standard in evaluating excusable neglect in the context of reconsidering claims under § 502(j)").  The factors are: (1) whether the failure to respond was willful; (2) the existence of a meritorious defense; and (3) the degree of prejudice that the non-movant would suffer if the court granted the motion.  *Am. Alliance*, 92 F.3d at 59.

In applying the *American Alliance* test, the Court finds that Claremont has satisfied its burden to establish that its failure to respond to FairPoint's First Estimation Motion constitutes excusable neglect.

### 1.  Willfulness

The first factor in the Second Circuit's three-prong test is whether the movant's default was willful.  *American Alliance*, 92 F.3d at 59.  In determining willfulness, the Second Circuit has indicated that "it will look for bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or litigant's error."  *Id.* at 60; *see also Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) (contrasting "defaults caused by negligence, which may in some cases be excusable, with defaults resulting from deliberate conduct, which are not excusable.").  In *American Alliance*, for example, the court did not find a mail clerk's conduct willful where the clerk mistakenly failed to relay two notices to claimant's counsel; the Court noted that the mail clerk's "conduct, though grossly negligent . . . was not willful, deliberate or evidence of bad faith, though it weighs somewhat against granting relief."  *Id*. at 61-62.  At bottom, the "key issue" in this district is "whether the claimant made a conscious decision to allow a hearing to go forward without a response."  *In re Worldcom, Inc.*, No. 02–13533, 2006 WL 2400094, at * 3 (Bankr. S.D.N.Y. Aug. 16, 2006).

FairPoint argues that Claremont has failed to rebut the presumption of receipt[7] of the First Estimation Motion, as Claremont provides "no excuse for its failure to file a timely response." Omnibus Reply, ¶ 26. FairPoint posits that "[s]uch failure rises to a level of 'willfulness' sufficient to find a lack of excusable neglect" under *American Alliance*. *Id*. In support, FairPoint relies on *In re STN Enterprises*, 94 B.R. 329 (Bankr. D. Vt. 1988), for the proposition that when adequate notice has been provided and the presumption of receipt has not been rebutted, there can be no finding of excusable neglect under *American Alliance* due to the presence of willfulness. Omnibus Reply, ¶ 26, n.25. Yet, *STN Enterprises*, a case that predated *American Alliance* by eight years, does not support Fairpoint's argument. In fact, *STN Enterprises* did not analyze willfulness; instead, it evaluated only "(i) the adequacy of the notice provided [and] (ii) the source of the delay" in determining whether excusable neglect existed. *STN Enters.*, 94 B.R. at 333. Accordingly, *STN Enterprises* is inapposite.

More importantly, however, FairPoint's argument is fallacious. In the instant case, even if notice was adequate and Claremont failed to rebut the presumption of receipt, there can be a finding of excusable neglect, as the Court finds that Claremont's actions were not willful. Specifically, Claremont responded quickly after discovering the First Estimation Order, filing its Motion for Reconsideration just eleven days later. *See Journal Register*, 2010 WL 5376278 at * 1, * 3 (finding that even though claimant's delay in responding was due to her attorney's tardily discovering a "previously unreviewed Claim Objection" that was in his possession, the claimant did not act willfully "because she did not have actual knowledge [of the] proceeding *and*

---

[7] The presumption of receipt or the common law "mailbox rule" states that a properly directed letter proven to have been delivered to either the post office or the mail carrier, and not returned to the sender, is presumed to have reached its destination at the regular time and been received by the person to whom it was addressed. *Hagner v. U.S.*, 285 U.S. 427, 430 (1932) (citations omitted). This presumption of receipt is "very strong" and "can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary. . . . Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary." *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 1577763, at * 4 (Bankr. S.D.N.Y. May 30, 2007) (citations omitted).

*promptly sought relief*") (emphasis added); *see also JWP*, 231 B.R. at 210, 212-213 (holding an

"internal error that caused [the movant] to receive the Trustee's notice of motion twenty-six days

after [the court] heard the Trustee's motion . . . may have constituted 'excusable neglect' had [the

movant] made a prompt motion for reconsideration," and pointing out, "[i]t is [the movant's]

actions *after* he became aware of the existence of the Trustee's motion . . . that reaches the level

of willfulness") (emphasis added).   In addition, there is no evidence, nor any assertion that

Claremont was attempting in any way to delay the claims process or that entry of the First

Estimation Order without opposition "was intended as part of some strategy or plan to advance

its interests." *In re Enron, Inc.*, 326 B.R. 46, 52 (Bankr. S.D.N.Y. 2005).   Finally, it appears that

had Claremont been aware of the pendency of the First Estimation Motion, it would have

objected rather than allow the Court to enter an order reducing its claim by nearly half a million

dollars, a large sum for a self-proclaimed small municipality.   *See* Taylor Decl., ¶ 18; *Enron*, 326

B.R. at 52 (finding that "had the University been aware of the pendency of the Objection to the

Claim, it would have responded to the Objection rather than allow the Court to enter the Order

expunging the Claim without opposition.").   At worst, therefore, Claremont's conduct may have

been the product of some carelessness, even gross negligence, but it does not rise to the level of

willfulness, as it was not deliberate or carried out in bad faith.

### 2.  Meritorious Defense

The second factor in the Second Circuit's three-prong test is whether the movant has a

legally supportable defense or position within the underlying litigation.   *Am. Alliance*,

92 F.3d at 61.   In determining whether a defense is meritorious, the Second Circuit has held that

such defense "need not be ultimately persuasive at this stage." *JWP Info. Servs.*, 231 B.R. at 213

(citing *Am. Alliance*, 92 F.3d at 61).  Rather, "[a] defense is meritorious if it is good law so as to give the factfinder some determination to make."  *Id.*

In the instant case, there is adequate evidence to support the idea that Claremont has a viable claim.  FairPoint argues that Claremont's tax claims should be estimated at zero because it has violated the New Hampshire State Constitution by imposing property taxes only against FairPoint and not against other similarly-situated utilities.  In support, FairPoint relies on the case of *Verizon New England, Inc. v. City of Rochester*, 156 N.H. 624 (2007) and argues that it is clear and settled New Hampshire Supreme Court precedent.  It is unclear, however, whether *Rochester* is applicable here.  For example, while in *Rochester* the town of Rochester only imposed taxes on Verizon for its use of the municipal right-of-way but did not impose taxes on all utilities for their use of the same, Claremont posits that it taxes *all* utilities that use its public ways.  In support of this argument, Claremont submitted the tax cards for each utility that uses public right-of-ways in Claremont and the corresponding assessment value for the right-of-way use tax.  *See* Claremont Objection, Ex. B.  If true, FairPoint's equal protection argument against Claremont would likely fail.  Therefore, under *American Alliance*, Claremont has a meritorious defense to FairPoint's First Estimation Motion and this factor weighs in favor of Claremont.

### 3.  Prejudice

The third and final factor in the Second Circuit's three-prong test is the amount of prejudice that granting the Motion for Reconsideration would cause the debtor.  *Am. Alliance*, 92 F.3d at 59.  As a general rule, "mere delay is not sufficient to demonstrate a sufficient level of prejudice."  *Enron*, 326 B.R. at 53 (citations omitted).  The Bankruptcy Court for the Southern District has broadened the definition of prejudice to include consideration of prejudice to the bankruptcy estate, as well as the debtor.  *Id.* ("[A] court should consider the impact that the

10

granting of relief may have on the administration of the bankruptcy case, specifically, on the claims adjudication process.").

In the instant case, all things considered, granting the Motion for Reconsideration would cause only a minimal amount of prejudice to FairPoint. FairPoint had the opportunity to litigate Claremont's Objection to its First Estimation Motion before this Court: FairPoint filed its Omnibus Reply only *after* Claremont filed its Motion for Reconsideration (and its accompanying objection) and a hearing addressing *all* of the New Hampshire municipalities' objections, including the Claremont Objection, was held on October 20, 2010. Further, FairPoint is not prejudiced because (i) it can still litigate Claremont's tax claims in the Claremont state court, an obligation it faced before Claremont's claim was estimated at $1,062.30, and (ii) FairPoint has not established that any additional obligation or harm would arise from granting Claremont's Motion for Reconsideration. The prejudice here could be the ramifications to the efficiency and finality of the claims adjudication process if Claremont is excused for not responding to a document that was timely served upon it. The Court finds, however, that this policy concern is lessened by, *inter alia*, the timing of Claremont's reaction to correct its mistake, its attempts to reach out to FairPoint to reach an agreement to allow Claremont to file its objection, and the absence of demonstrated specific prejudice to FairPoint regarding the Claremont tax claims.

If the Motion for Reconsideration were not granted, on the other hand, there would be great prejudice to Claremont since it would lose the opportunity to litigate its half a million dollar claim against FairPoint, a substantial sum for a self-described small municipality. *See* Taylor Decl., ¶ 18. The Court finds that denying the Motion for Reconsideration would significantly prejudice Claremont. Thus, this element weighs in favor of Claremont.

At bottom, the Court generally disfavors defaults and prefers to have matters resolved on their merits.  *See Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995).  Indeed, courts resolve any doubts in favor of the movant to increase the chances that disputes will be adjudicated on their merits.  *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) (citations omitted).  The equities in this case and the application of the Second Circuit's *American Alliance* factors weigh in favor of Claremont.  In light of the foregoing, Claremont's Motion for Reconsideration of the First Estimation Order is GRANTED.  Accordingly, the First Estimation Order with regard to Claremont should be vacated and Claremont's claim should be restored to the claims registry.

## II.    FAIRPOINT'S FIRST ESTIMATION MOTION

As Claremont's Motion for Reconsideration is granted, the objections of both Concord and Claremont to FairPoint's First Estimation Motion are currently before the Court.

### a.  Factual History

#### i.  State Court Litigations

Concord and Claremont timely filed proofs of claim[8] in this Court for assessed real property taxes (the "Taxes" or "Tax Claims") on FairPoint's use and occupancy of the right-of-way pursuant to New Hampshire statute RSA 72:6 ("All real estate, whether improved or unimproved, shall be taxed except as otherwise provided") and RSA 72:23, I(b), which provides:

> All leases and other agreements, the terms of which provide for the use or occupation by others of real or personal property owned by . . . a city [or] town . . . shall provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property . . . .

RSA 72:23, I(b).

---

[8] Concord asserts that it filed proofs of claims totaling $205,682.38 (claim numbers 362-382).  *See* City of Concord New Hampshire's Objection to FairPoint's First Omnibus Motion to Estimate the Maximum Allowed Amount of Proofs of Claim Pursuant to Bankruptcy Code Sections 105(a) and 502(c) [hereinafter "Concord Objection"] (Dkt. No. 1616), ¶ 2.

With regard to Concord, the Tax Claims are the subject of a series of tax abatement actions (the "Concord State Court Litigation") between FairPoint (and its predecessor in interest, Northern New England Telephone Operations, LLC and other predecessors in interest where applicable) and Concord dating back over ten years to May 2000, and which are currently pending in the Merrimack County Superior Court in Concord, New Hampshire (the "Concord State Court"). In the Concord State Court Litigation, FairPoint challenges its duty to pay the taxes based upon, *inter alia*, alleged violations of the Equal Protection Clause of the New Hampshire State Constitution. On April 15, 2010, the Concord State Court set a trial date for November 15, 2010 and, at the request of FairPoint and Concord, continued the Concord State Court Litigation until July 30, 2010.

With regard to Claremont, FairPoint filed two petitions for abatement of the Tax Claims against Claremont in the New Hampshire Superior Court, Sullivan County (the "Claremont State Court") titled *Northern New England Telephone Operations LLC, d/b/a FairPoint Communications v. City of Claremont*, Dkt. Nos. 08-E-0036 and 07-E-0058 (the "Claremont State Court Litigation"), which were consolidated on December 15, 2008. In the Claremont State Court Litigation, as in the Concord State Court Litigation, FairPoint challenges its duty to pay the taxes based upon, among other things, alleged violations of the Equal Protection Clause of the New Hampshire State Constitution.

Both the Concord and the Claremont State Court Litigations have been consensually stayed pending resolution of FairPoint's First Estimation Motion. Specifically, on January 7, 2011, FairPoint and Concord mutually agreed to continue the Concord State Court Litigation, "pending notification from the parties regarding resolution of the pleadings pending before the bankruptcy court." *See* Assented-To Motion To Continue Action And Vacate Structuring

Conference Scheduled For January 18, 2011 (the "Consensual Motion"), ¶ 3 (Merrimack Superior Court, Dkt. No. 217-2010-CV-00578); Notice of Decision, dated January 10, 2011, Judge McNamara (granting the Consensual Motion).  Likewise, on September 9, 2009, the Claremont State Court Litigation was stayed by motion on consent pending resolution of FairPoint's First Estimation Motion before this Court.  *See* Claremont Objection, ¶ 29, n.4.

### ii.  FairPoint's First Estimation Motion

On June 15, 2010, FairPoint filed its First Estimation Motion requesting that this Court assert jurisdiction over the Cities' Tax Claims, which are already the subject of state court litigations, by finding that (i) Concord's proofs of claim for the underlying Taxes should be estimated at $0 and (ii) Claremont's proof of claim should be estimated only at $1,062.30. FairPoint argues for such an estimation because the Cities allegedly violated FairPoint's equal protection rights under the New Hampshire State Constitution through disparate taxation.  In support of this argument, FairPoint looks to precedent from the highest state court in New Hampshire involving its predecessor-in-interest, Verizon.  *See Rochester*, 156 N.H. at 630-32.

In opposition, the Cities request, *inter alia*,[9] that the Court permissively abstain from asserting jurisdiction over their respective Tax Claims, as the merits should be determined in the state court litigations currently pending in the New Hampshire state courts.[10]

---

[9] The Cities make a number of other arguments in opposition to FairPoint's First Estimation Motion, including that (i) *Rochester* is inapposite and distinguishable on its facts; (ii) pursuant to section 502(c) of the Bankruptcy Code, estimation is inappropriate because their Tax Claims are not contingent, as they were assessed and due and not dependent on the occurrence of any future event; (iii) FairPoint is judicially estopped from requesting that this Court make a determination on the merits of FairPoint's action against Concord in the Concord State Court; and (iv) the automatic stay is inapplicable to the claims asserted by FairPoint against it in the state court litigations.  As discussed below, this Court will permissively abstain from adjudicating the Cities' Tax Claims, thereby obviating the need to address these or any other arguments.

[10] According to Concord, as of the filing of their objection on July 8, 2010, FairPoint has challenged the taxes owed to Concord through the 2010 tax year and has not paid taxes on the assessed properties subject to these tax abatement actions.  *See* Concord Objection, ¶ 6.

### b. Discussion

Even though "core" jurisdiction was conferred on this Court when the Cities filed their proofs of claim against the estate,[11] good cause exists to permissively abstain from considering their Tax Claims to permit the state courts to conclude their adjudication of those claims. 28 U.S.C. section 1334(c)(1) refers to comity with "State courts" and respect for "State law" and provides that a court may, "in the interest of justice, or in the interest of comity" abstain from hearing a particular proceeding "arising under title 11 or arising in or related to a case under title 11." This section "demonstrates the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *Cody, Inc. v. County of Orange (In re Cody, Inc.)*, 281 B.R. 182, 190 (S.D.N.Y. 2002) (quotations and citations omitted); *see also Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002) ("Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left to the bankruptcy court's discretion.") (citations omitted).

When deciding whether to exercise discretion to permissively abstain from hearing a matter, bankruptcy courts generally consider one or more (although not necessarily all) of the following twelve factors: (1) the effect of abstention, or lack thereof, on the efficient administration of the estate; (2) the extent to which state law issues predominate; (3) the difficult or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or another non-bankruptcy forum; (5) whether there is a basis for

---

[11] *See* 28 U.S.C. § 157(b)(2)(B) (conferring on the court jurisdiction "over allowance or disallowance of claims against the estate"); *see also Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390 (2d Cir. 1990) ("The determination of the objection to and allowance of [the applicant's] claim is clearly within the traditional core jurisdiction of the bankruptcy court."); *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 349 B.R. 108, 112 (Bankr. S.D.N.Y. 2006) ("When a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim.").

federal jurisdiction apart from the debtor's bankruptcy filing; (6) the degree of relatedness or remoteness of a proceeding to the main bankruptcy case; (7) the substance, rather than form, of the asserted "core" proceeding; (8) the feasibility of severing state law claims; (9) the burden on the court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping; (11) the existence of a right to jury trial; and (12) the presence in the proceeding of non-debtor parties.  *Cody*, 281 B.R. at 190-91; *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 147 (Bankr. S.D.N.Y. 2010) (citing *In re Ephedra Prods. Liab. Litig.*, No. 04-MD-1598, 2010 WL 882988, at *2 n.2 (S.D.N.Y. Mar. 8, 2010)); *Bickerton v. Bozel, S.A. (In re Bozel S.A.),* 434 B.R. 86, 102 (Bankr. S.D.N.Y. 2010); *see also AEG Liquidation Trust v. Toobro (In re Am. Equities Group, Inc.)*, Adv. No. 11–02489 (BRL), 2011 WL 5966285 (Bankr. S.D.N.Y. Nov. 29, 2011) (using similar analysis of these factors in the context of remand).

In the instant case, the above-enumerated factors greatly militate in favor of permissive abstention, especially factors 1 through 4, 6 and 8.

### *Effect of abstention, or lack thereof, on efficient administration of estate (Factor # 1)*

One relevant factor is the effect that abstention would have on the efficient administration of the estate.  Here, the Court's abstention would not amount to abdication of any critical role in the administration of the estate.  A plan has already been confirmed and at least with regard to Concord, FairPoint has reserved the full value of Concord's priority tax claims.[12]  Accordingly, the Court finds that this factor weighs in favor of abstention.

---

[12] Counsel for FairPoint has orally represented to the Court that FairPoint has reserved the full value of Concord's priority tax claims.

**Extent to which state law issues predominate (Factor # 2)**

A second relevant factor is the extent to which state law issues predominate over bankruptcy issues with regard to the Cities' Tax Claims. Any dispute between FairPoint and the Cities relies on state taxation law and requires the application of the New Hampshire State Constitution. Moreover, the outcome of this case will have a precedential effect in New Hampshire for future equal protection challenges to a municipality's taxation of similarly situated entities. As state law issues clearly predominate, New Hampshire has a strong interest in interpreting its own laws and setting precedent in a state constitutional area of law. Adjudication of the Cities' Tax Claims is therefore more appropriately left to the New Hampshire state courts. Accordingly, this factor also weighs in favor of abstention.

**The difficult or unsettled nature of the applicable state law (Factor # 3)**

A third relevant factor is the difficulty or unsettled nature of the applicable state law. FairPoint relies on the *Rochester* case in support of its First Estimation Motion, arguing that it is clear, settled New Hampshire Supreme Court precedent that this Court can, and should, interpret. In *Rochester*, the New Hampshire Supreme Court determined that telephone companies using a right-of-way should be assessed the same tax as any other parties using the same. *Rochester*, 156 N.H. at 630-31. The court found that the city of Rochester selectively imposed the tax on Verizon without providing a legitimate state interest, and therefore the city's taxing scheme was discriminatory and in violation of the Equal Protection Clause of the New Hampshire State Constitution.

Concord, however, contends that *Rochester* is inapposite for a variety of reasons. For example, in *Rochester*, the New Hampshire Supreme Court found that the city failed to provide a "rational reason" or "any legitimate governmental interest" to justify its selective taxation of Verizon and no other public utility. *Id*. at 631. In contrast, Concord posits that it has a

legitimate governmental interest in not taxing the cable company in order to maintain the "free" services the company provides to it, including considerable monetary and multi-media benefits. Further, in *Rochester*, the court struck, in their entirety, the taxes Rochester had imposed against Verizon for the years in question because the city of Rochester erred by taxing Verizon but not any of the other public utilities for their use and occupation of the same right-of-way. *Id.* at 630-32. Here, however, Concord asserts that striking the tax of FairPoint and all the other public utilities would not be a viable remedy. Concord taxes every public utility except the cable company. To the extent a court finds that the cable company should be taxed, Concord argues that the remedy must be prospective, not retrospective. Accordingly, Concord would tax the cable company on a going forward basis, not undo the taxes imposed on FairPoint and all the other public utilities.

Claremont likewise argues that the *Rochester* case is inapplicable. For example, Claremont asserts that unlike the town of Rochester that taxed only Verizon for its use of the right-of-way and failed to tax all other utilities that used that right-of-way, Claremont taxes all utilities that use its public ways and therefore there is no disparate tax treatment. If correct, FairPoint's equal protection argument against Claremont would likely fail.

In light of the foregoing, the applicable state law is unsettled. The New Hampshire state courts are in a far better position than this Court to interpret the parameters and establish fitting remedies for violations of the Equal Protection Clause of the New Hampshire State Constitution. Accordingly, this factor likewise weighs in favor of abstention.

### Presence of a related proceeding commenced in another non-bankruptcy forum (Factor # 4)

A fourth relevant factor is whether there is a related proceeding pending in the state court or another non-bankruptcy forum. Here, the Concord and Claremont State Court Litigations have been pending for a number of years in the New Hampshire state courts, wherein the court is

trying the same taxation and constitutional issues that FairPoint seeks to have adjudicated here in the form of an estimation motion. Since an alternate, more appropriate forum exists for adjudication of the Cities' Tax Claims, this factor weighs in favor of abstention.

### *Degree of relatedness or remoteness of proceeding to main bankruptcy case (Factor # 6)*

A fifth relevant factor is the extent to which this action is related to or remote from the main bankruptcy case. As of the filing of FairPoint's Omnibus Reply, more than 8,000 claims had been filed in this case. The Cities' Tax Claims represent only a tiny fraction of the total claims in this bankruptcy and therefore proceedings regarding these claims are remote from these bankruptcy cases, which have already been confirmed. Accordingly, this factor weighs in favor of abstention.

### *Feasibility of severing state law claims (Factor # 8)*

A sixth relevant factor is whether the state law claims asserted here may be severed from the core bankruptcy matters, so that judgment may be entered in state court with enforcement to be carried out in this forum. It is feasible and appropriate to sever the state law claims from core bankruptcy matters to allow judgments to be entered in the New Hampshire state courts, especially given (i) the modest amount of the Cities' Tax Claims relative to FairPoint's billion dollar reorganization, (ii) the fact that, at least with respect to Concord, FairPoint has already reserved the necessary funds to satisfy these claims, and (iii) the Concord and Claremont State Court Litigations are pending and awaiting trial. With respect to Concord, a trial date has already been set by the New Hampshire State Court. Indeed, counsel for Concord stated at oral argument that the parties "were on schedule for summary judgment motions to be filed in Merrimack County Superior Court and on trial for a final hearing on the merits [on November 15, 2010] . . . . The court in Merrimack County is ready, willing and able to hear our case upon our notice." *See* Transcript of October 20, 2010 Hearing, p. 40, lines 6-8, 12-13. The Claremont

State Court Litigation is also awaiting adjudication pending resolution of FairPoint's First Estimation Motion.  Accordingly, this factor also weighs in favor of abstention.

For the foregoing reasons, the Court finds that the relevant factors weigh heavily in favor of this Court exercising its discretion to permissively abstain from adjudicating the Cities' Tax Claims.  At bottom, these chapter 11 cases are at an advanced stage, having already been confirmed, and adjudication of these Tax Claims will not threaten the efficient administration of the estates, especially since, at least with respect to Concord, FairPoint has already set aside the necessary reserve to cover its priority tax claims.  Indeed, there is little left for this Court to do. The only remaining issues require application of New Hampshire state laws and interpretation of the New Hampshire State Constitution.  As such, this matter is more appropriately left to the New Hampshire state courts, where proceedings regarding these claims have been pending for a number of years.  Accordingly, the Court hereby permissively abstains from considering the Cities' Tax Claims.

## CONCLUSION

In light of the foregoing, Claremont's Motion for Reconsideration is GRANTED.  The Clerk of the Court is directed to vacate the First Estimation Order with regard to Claremont (Dkt. No. 1679, Ex. C, Claim Number 355) and restore Claremont's claim to the claims registry.

In addition, FairPoint's First Estimation Motion is DENIED with regard to Concord and Claremont and the Court abstains from considering the Cities' Tax Claims.  Accordingly, the parties are free to proceed with their respective state court litigations.

**IT IS SO ORDERED.**

Dated: New York, New York
         January 4, 2012

                                                    /s/ Burton R. Lifland
                                                    United States Bankruptcy Judge